IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGARET T. HUNTER and<br>JOHN P. HUNTER, Wife & Husband<br>84 Latham Road<br>Deposit, NY 13754<br><br>     Plaintiffs<br><br>  vs.<br><br>RICHARD P. KENNEDY, M.D.<br>c/o Monroe Radiology Imaging, P.C.<br>411 Main Street – Suite 101-A<br>Stroudsburg, PA 18360<br>---------------<br>c/o Pocono Medical Center<br>206 East Brown Street<br>East Stroudsburg, PA 18301<br><br>  AND<br><br>MONROE RADIOLOGY IMAGING, P.C.<br>411 Main Street – Suite 101-A<br>Stroudsburg, PA 18360<br><br>  AND<br><br>POCONO HEALTH SYSTEM now known<br>as Lehigh Valley Health Network<br>206 East Brown Street<br>East Stroudsburg, PA 18301<br><br>     Defendants | CIVIL ACTION - LAW<br><br><br><br>MEDICAL NEGLIGENCE<br><br><br><br>JURY TRIAL DEMANDED<br><br><br><br><br><br><br><br><br><br><br><br><br><br>NO. _____-CV-2016 |

## COMPLAINT

AND NOW, Plaintiffs, Margaret T. Hunter and John P. Hunter, wife and husband, by and through counsel, Thomas J. Foley, Jr., Esquire, of The Foley Law Firm, hereby file the within Complaint against Defendants Richard P. Kennedy, M.D., Monroe

Radiology Imaging, P.C., and Pocono Health System, now known as Lehigh Valley Hospital-Pocono and respectfully aver as follows:

I.    Jurisdiction and Venue

1.    Jurisdiction is based upon diversity of citizenship and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

II.    Parties

2.    Plaintiffs Margaret T. Hunter and John P. Hunter, wife and husband, are adult citizens and residents of the State of New York, residing therein at 84 Latham Road, Deposit, New York 13754.

3.    Prior to and at the time of the incident giving rise to this action, Plaintiff Margaret Hunter worked as a laborer for a construction company performing medium to heavy work.

4.    Defendant Richard P. Kennedy, M.D., ["Dr. Kennedy"], is, upon information and belief, an adult citizen and resident of the Commonwealth of Pennsylvania, with professional addresses at Monroe Radiology Imaging, P.C., 411 Main Street – Suite 101-A, Stroudsburg, Pennsylvania 18360 and Pocono Medical Center, 206 East Brown Street, East Stroudsburg, Pennsylvania 18301. Dr. Kennedy is a physician and radiologist duly licensed to practice medicine in the Commonwealth of Pennsylvania and at all times relevant and material hereto was so engaged.

5.    Defendant Monroe Radiology Imaging, P.C., ["Monroe Radiology"], is, upon information and belief, a Pennsylvania professional corporation with an address for

service registered with the Pennsylvania Department of State, Corporation Bureau, at 411 Main Street – Suite 101-A, Stroudsburg, Pennsylvania 18360.

6. Defendant Pocono Health System, ["PHS"], at the time of the negligence was, upon information and belief, a Pennsylvania corporation with an address for service registered with the Pennsylvania Department of State, Corporation Bureau, at 206 East Brown Street, East Stroudsburg, Pennsylvania 18301. Upon information and belief, Defendant PHS merged with Lehigh Valley Health Network effective January 1, 2017, and is now known as Lehigh Valley Health Network ("LVHN") and Pocono Medical Center is now known as Lehigh Valley Hospital-Pocono ("PHS-LVHN").

III. Factual Allegations

7. On or about May 16, 2016, for some time prior thereto and at all times relevant and material hereto, Defendant PHS-LVHN owned, operated, possessed, and/or otherwise controlled a satellite medical facility known as PMC-LVHN-Pocono Immediate Care Center – Bartonsville, and offered medical services to the public, including Plaintiff Margaret Hunter.

8. On or about May 16, 2016, for some time prior thereto and at all times relevant and material hereto, Dr. Kennedy acted alone and/or as a servant, employee, agent, and/or ostensible agent of Monroe Radiology and/or PHS-LVHN and/or each of them.

9. On or about May 16, 2016, for some time prior thereto and at all times relevant and material hereto, Defendant PHS, through its satellite medical facility, PMC Immediate Care Center – Bartonsville, acted alone and/or by and through their servants, employees, representative, agents and/or ostensible agents, including Dr. Kennedy.

10. On or about May 16, 2016, for some time prior thereto and at all times relevant and material hereto, Monroe Radiology acted alone and/or by and through their servants, employees, representative, agents and/or ostensible agents, including Dr. Kennedy.

11. At all times material and relevant hereto, corporate defendant PHS-LVHN, through its satellite medical facility, PMC Immediate Care Center – Bartonsville, held out Dr. Peter Obeng and Dr. Kennedy to the public, including Plaintiff Margaret Hunter, as employees, servants, agents, ostensible agents, apparent agents, and/or representatives.

12. At all times material and relevant hereto, corporate defendant Monroe Radiology held out Dr. Kennedy to the public, including Plaintiff Margaret Hunter, as its employee, servant, agent, ostensible agent, apparent agent, and/or representative.

13. At all times relevant and material hereto, Plaintiff Margaret Hunter was led to reasonably believe by Defendants PHS-LVHN and Monroe Radiology, and/or each of them, and did reasonably believe that Dr. Kennedy was their employee, servant, agent, ostensible agent, apparent agent, and/or representative.

14. At all times material hereto, Dr. Kennedy held himself out to the general public, including Plaintiff Margaret Hunter, to be a competent, qualified, skilled, knowledgeable, and experienced physician, fully capable of providing safe medical treatment including, but not limited to, radiologic evaluation and treatment of orthopedic injuries.

15. At all times relevant and material hereto, corporate defendant PHS-LVHN, through its satellite medical facility PMC Immediate Care Center – Bartonsville,

expressly or implicitly held Dr. Obeng out to the general public, including Plaintiff Margaret Hunter, to be a competent, qualified, skilled, knowledgeable, and experienced physician, capable of accurately, properly, promptly, competently, skillfully and timely rendering medical care in the area of emergent care for industrial/occupational injuries and/or orthopedic injuries.

16.     At all times relevant and material hereto, the corporate defendants, PHS-LVHN and Monroe Radiology, and/or each of them, expressly or implicitly held Dr. Kennedy out to the general public, including Plaintiff Margaret Hunter, to be a competent, qualified, skilled, knowledgeable, and experienced certified physician assistant, capable of accurately, properly, promptly, competently, skillfully and timely rendering medical care in the area of radiology and orthopedic injuries.

17.     At all times relevant and material hereto, the corporate defendants, PHS-LVHN and Monroe Radiology, and/or each of them, expressly or implicitly represented to the general public, including Plaintiff Margaret Hunter, that the medical capabilities of their facilities, including PMC Immediate Care Center – Bartonsville, and employees, including Dr. Obeng and Dr. Kennedy, and other health care providers, nurses, aides, technicians, physicians assistants, or other personnel, were competent, qualified, skilled, knowledgeable and experienced in providing patient care in a safe, accurate, proper, prompt, competent, and timely manner.

18.     At all times relevant and material hereto, Plaintiff Margaret Hunter looked to Dr. Obeng and Dr. Kennedy, as well as the corporate defendants, i.e., Monroe Radiology and PHS-LVHN, by and through its satellite medical facility, PMC Immediate Care Center – Bartonsville, and/or each of them, and their employees, servants, agents,

ostensible agents, apparent agents, and/or representatives to provide proper care and treatment and relied on them, and each of them, for same.

19. At all times relevant and material hereto, the corporate defendants, i.e., PHS-LVHN and Monroe Radiology, and/or each of them, acted and/or failed to act through their employees, servants, agents, ostensible agents, and/or representatives including, Dr. Obeng, Dr. Kennedy, nurses, aides, technicians, healthcare providers, and/or other employees, servants, agents, ostensible agents, apparent agents, and/or representatives, who were acting within the course of their employment, agency, servitude and/or representation, some of whom may not be known to the Plaintiff presently.

III. Statement of Facts:

20. On May 16, 2016, Plaintiff Margaret Hunter was injured secondary to a fall from a ladder.

21. On May 16, 2016, following this fall, her employer sent Plaintiff Margaret Hunter to PMC Immediate Care Center – Bartonsville, a satellite medical facility of Defendant PHS-LVHN.

22. At PMC Immediate Care Center – Bartonsville, a satellite medical facility of Defendant PHS-LVHN, she was examined by Dr. Obeng for left ankle injury. She complained of "10/10 pain" and the left ankle was so swollen her boot had to be cut off by Dr. Obeng and/or his staff.

23. Plaintiff had no history of prior left ankle fractures and had no problems with her left ankle and foot prior to the time of this injury.

24. Upon information and belief, Defendant Dr. Obeng was the attending physician at PMC Immediate Care Center – Bartonsville and was primarily responsible for Plaintiff's care.

25. Dr. Obeng's performed a physical examination and ordered x-rays.

26. Upon information and belief, Defendant Dr. Kennedy interpreted the aforementioned x-rays ordered by Dr. Obeng (left ankle – three views) on May 16, 2016, and reported as follows: *"There is marked soft tissue swelling about the lateral malleolus.* ***No underlying fracture is identified.*** *The patients [sic] ankle mortise is normal. There is no joint effusion."*

27. Upon reviewing Dr. Kennedy's report, Dr. Obeng diagnosed Margaret Hunter with left ankle sprain, prescribed Ibuprofen, crutches, and ankle brace and advised Plaintiff to follow up with him in two to three days.

28. Dr. Obeng wrote: *"Ankle Sprain: Rehab Exercises material was printed, Ankle Sprain: Care Instructions material was printed, Ankle Sprain: Care Instructions material was printed. Patient was instructed to apply RICE therapy. Gel cold pack was dispensed Compressive dressing was applied using ACE bandage. Ankle was them place [sic] gel ankle support. She was dispensed crutches and instructed on proper technique.* ***Preliminary x-ray is negative for fracture.****"*

29. On May 20, 2016, Plaintiff returned to PMC Intermediate Care Center – Bartonsville and Dr. Obeng for follow up visit. No x-rays were obtained at this time. Dr. Obeng continued his diagnosis of ankle sprain and advised Plaintiff to **"start applying some weight with crutch use."**

30.    On May 31, 2016, fifteen (15) days after injuring her left ankle in her fall from the ladder, Plaintiff returned to PMC Intermediate Care Center – Bartonsville and Dr. Obeng for follow up visit and requested additional x-rays be taken. Additional x-rays were obtained. Defendant Dr. Kennedy interpreted those studies to show:

> *"This study is compared with previous study of 3 weeks earlier. There is less soft tissue swelling about the lateral malleolus on this study than on the earlier study. No underlying fracture is identified. I see no joint effusion.* **On today's study there is seen to be a lucent line in the os calcis, which indicates a fracture. There is a separate sclerotic line posteriorly located perpendicularly to the lucent line. This apparently represents an impacted fracture.** *Position and alignment are anatomic."*

31.    Pursuant to a Work Capability Form dated May 31, 2016 executed by Dr. Obeng, he permitted Plaintiff to return to work eight hours a day, allowing her to walk up to one hour a day, drive up to four hours a day, and lift up to ten pounds. He also noted he had referred her to physical therapy. No other consultations were noted.

32.    After the aforementioned visit with Dr. Obeng on May 31, 2016, Plaintiff Margaret Hunter returned to her jobsite where she had been released to work light duty. While at work, she got a phone call from Dr. Obeng instructing her not to put any weight on her left foot. He told her that she had a fractured ankle. Plaintiff complied with Dr. Obeng's instructions.

33.    Between May 16th and May 31st of 2016, and at all relevant times therein, Plaintiff Margaret Hunter was in full compliance with Dr. Obeng's orders and directions, particularly regarding her return to work, limitations, use of crutches, ice, medications, non-weight bearing, home exercises, and weight bearing.

34. On June 2, 2016, Plaintiff presented to the emergency department at Wilson Memorial Hospital in Binghamton, New York, due to excruciating pain and swelling in her left ankle. Physical examination revealed bruising patterns consistent with fracture. X-rays were ordered, which revealed: *"... calcaneal fracture, which is particularly seen in a sagittal plane posterior to the subtalar joint. There is some impaction indicating intra-articular component."*

35. CT Scan was then ordered and revealed:

> *"A comminuted displaced calcaneal fracture is again seen. The fracture has a component oriented in the coronal plane extending from the superior cortex of the calcaneus just posterior to the subtalar joint posterior facet and this fracture extends in an irregular manner to the plantar cortex at mid to posterior calcaneus. This fracture is comminuted, particularly at the mid to posterior calcaneus on the medial side. Towards the lateral side, the fracture gap at mid to posterior calcaneus, measures up to 8 mm. A component of the fracture also extends to the superior cortex of the calcaneus near the anterior margin of the posterior facet subtalar joint, and there is generalized flattening along the superior margin of the calcaneus. The fracture also has a component which extends close to the sustentaculum; the middle facet and anterior facet of subtalar joint otherwise appear intact."*

Plaintiff Margaret Hunter was referred to Kelly Smith, DPM, for follow up of her serious left ankle comminuted fracture.

36. On July 6, 2016, Plaintiff presented to Dr. Kelly Smith for consultation. Dr. Smith noted:

> *"Due to how long it has been since the injury, it makes surgical intervention a little more difficult. I have recommended surgical intervention, which would consist of ATTEMPTED orif (open reduction with internal fixation) left calcaneal fracture; if unable to perform this procedure due to length of time from injury to surgery, would attempt*

> *application of delta frame to draw tuber out to length and out of varus."*

37. On August 3, 2016, Plaintiff again presented to Dr. Kelly Smith, who noted, regarding earlier treatment by Dr. Obeng and Dr. Kennedy on May 16, 2016, the day of the injury:

> *"That same day she went to a walk-in, who did an x-ray and told her she just had a sprain. After one week she returned to the walk-in, she was advised at that time to start bearing weight. She had so much pain trying to bear weight, she had to go back the following week; at that time she urged the walk-in to perform another x-ray; at that time the calcaneal fracture was found. She ended up in the ER due to significant pain."* Dr. Smith also noted: *"I did have a frank discussion with the patient that she may have difficulty returning to work at the same capacity as when she left; patient understands."*

## COUNT I – NEGLIGENCE

MARGARET T. HUNTER vs. RICHARD P. KENNEDY, M.D.

38. Plaintiff hereby incorporates by reference the averments of the foregoing paragraphs as if fully set forth herein at length.

39. Dr. Kennedy owed to the Plaintiff a duty of care, breached that duty, and in so doing directly and/or proximately caused her serious injuries, damages, and losses in one or more of the following ways:

   (a) Failing to properly diagnose Plaintiff's left ankle fracture on X-rays performed on May 16, 2016;

   (b) Failing to perform adequate diagnostic tests to determine that Plaintiff had a fracture of the left ankle;

   (c) Misreading the x-ray;

   (d) Failing to notify the Plaintiff that the x-rays showed a fracture of her left ankle and to cease walking on her left leg/ankle;

   (e) Failing to recommend a CT scan;

 (f) Notifying Dr. Obeng that the x-rays were negative for fracture;

 (g) Failing to get a second opinion of the x-rays;

 (h) Failing to inform Plaintiff and/or Dr. Obeng of the true nature and seriousness of Plaintiff's condition and recommend timely treatment options, including referral to a specialist physician for evaluation and surgical intervention;

 (i) Failing to recommend Plaintiff have necessary follow-up care, resulting in substantial delay and diagnosis of Plaintiff's true condition.

40. As direct and proximate result of the carless and negligent conduct of Defendant Dr. Kennedy, Plaintiff has suffered substantial injuries including but not limited to irreparable damage to the left ankle.

41. As a direct and proximate result of the actions of Defendant Dr. Kennedy, described in the aforementioned paragraphs, Plaintiff has been and will be, for an indefinite time period in the future, required to employ the services of physicians, physical therapists, hospitals, and related health care professionals.

42. As a direct and proximate result of the aforementioned negligent and careless conduct of Defendant Dr. Kennedy, Plaintiff has suffered severe physical pain, mental anguish, discomfort, disfigurement, inconvenience, and distress, and will continue to so suffer for an indefinite time into the future.

43. As a further result of the aforementioned negligent and careless conduct of Defendant Dr. Kennedy, Plaintiff has been compelled to expend various and diverse sums of money for medicine and medical care and treatment in an effort to cure and rehabilitate herself and will be so obliged into the indefinite future.

44. By reason of the aforementioned negligent and careless conduct of Defendant Dr. Kennedy, Plaintiff has been unable to follow her usual daily duties,

labors, occupation and avocations, and will be unable to follow the same for an indefinite time into the future.

45. As a further result of the aforementioned negligent and careless conduct of Defendant Dr. Kennedy, Plaintiff has and will continue to suffer great loss of earnings and depreciation of his earnings capacity.

46. As a further result of the aforementioned negligent and careless conduct of Defendant Dr. Kennedy, Plaintiff has lost and continues to lose her ability to enjoy the pleasures of life.

47. As a further result of the aforementioned negligent and careless conduct of Defendant Dr. Kennedy, Plaintiff has or may hereafter incur other financial expenses and losses on account of the injuries caused by Defendant Dr. Kennedy.

48. The afore described injuries resulted from the negligent and careless conduct of the Defendant, Dr. Kennedy, and were in no manner due to any act or failure to act on the part of Plaintiff, Margaret Hunter.

49. Wherefore, the Plaintiff, Margaret T. Hunter, demands judgment against the Defendant, Dr. Kennedy, in an amount in excess of Seventy-Five Thousand Dollars, ($75,000.00), exclusive of interest and costs, together with interest and costs.

### COUNT II – VICARIOUS LIABILITY/OSTENSIBLE AGENCY

MARGARET T. HUNTER vs.
POCONO HEALTH SYSTEM/LEHIGH VALLEY HEALTH NETWORK
["PHS-LVHN"] and MONROE RADIOLOGY IMAGING, P.C. ["Monroe Radiology"]

50. Plaintiffs hereby incorporate by reference the averments of the foregoing paragraphs as if fully set forth herein at length.

51. Defendants PHS-LVHN and/or Monroe Radiology have a duty and responsibility to their patients and to the public to furnish appropriate and competent medical care.

52. Defendant physician, Dr. Kennedy, who acts for and on behalf of Defendants PHS-LVHN and/or Monroe Radiology is a servant, employee, agent, and/or ostensible agent of PHS-LVHN and/or Monroe Radiology and is held out as such.

53. At all times relevant hereto, Defendant physician, Dr. Kennedy was acting within the scope of his employment as agent, servant, employee, officer, director, and/or ostensible agent of Defendants PHS and/or Monroe Radiology.

54. Defendants PHS-LVHN and/or Monroe Radiology are vicariously liable for the commissions and omissions of Defendant physician, Dr. Kennedy, and their agents incorporated herein by reference as set forth in the prior paragraphs as though the aforementioned entity performed the acts and omissions itself.

55. Alternatively, Defendant physician Dr. Kennedy, was the ostensible and/or corporate agent of Defendants PHS-LVHN and/or Monroe Radiology, to wit, there was a holding-out to the public that the Defendant, Dr. Kennedy, was affiliated with corporate defendants, either as agent, servant, officer, director, or employee or in a joint venture.

Wherefore, the Plaintiff, Margaret T. Hunter, demands judgment against Defendants PHS-LVHN and Monroe Radiology in an amount in excess of Seventy-Five Thousand Dollars, ($75,000.00), exclusive of interest and costs, together with interest and costs.

### COUNT III

### JOHN P. HUNTER v. ALL DEFENDANTS

56.　Plaintiffs incorporate by reference the averments of the preceding paragraphs as if the same were set forth fully at length herein.

57.　As a direct and proximate result of the aforementioned incident and the negligence of the Defendants, and each of them, in causing the serious injuries to the Plaintiff-Wife, Margaret T. Hunter, the Plaintiff-Husband, John P. Hunter, has been deprived of the assistance, society, comfort, services and consortium of his wife and will continue to be so deprived for an indefinite period of time into the future.

WHEREFORE, Plaintiff John P. Hunter demands judgment in his favor and against Defendants in an amount in excess of Seventy-five Thousand Dollars ($75,000.00), exclusive of interest and costs, together with interest and costs and such other relief as the Court deems appropriate.

Respectfully submitted,

FOLEY LAW FIRM

By: _____
　　　Thomas J. Foley, Jr., Esquire

　　　_____
　　　Michael J. Foley, Esquire