# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGARET T. HUNTER and JOHN P. HUNTER, | CIVIL ACTION NO. 3:17-cv-00007 |
| Plaintiffs, | (MUNLEY, J.) |
| v. | (SAPORITO, M.J.) |
| RICHARD P. KENNEDY, et al., | |
| Defendants. | |

## MEMORANDUM

This medical negligence matter is before the court on two discovery disputes involving the apportionment of expert witness fees. The case arises out of a fall from a ladder where the plaintiff, Margaret Hunter, injured her left ankle, which resulted in allegedly negligent subsequent medical treatment by her healthcare providers. Generally, the plaintiff alleged that her healthcare providers failed to diagnose her injury and properly interpret x-rays performed on May 16, 2016. (Doc. 32). Counsel for the parties have taken some depositions of expert witnesses and a dispute has arisen over the allocation of expert witness fees.

The defendants have filed a joint motion for the apportionment of

expert deposition costs. (Doc. 75). Counsel and the court have conferred by telephone on October 3, 2018, and oral argument was conducted on October 16, 2018. Counsel having supplemented their submissions, the matter is ripe for a decision.

The issues involve (1) whether the plaintiff's treating physician, Kelly Smith, DPM, was also to be treated as an expert witness, and what, if any, apportionment of her deposition fees should be made; and (2) whether the deposition fees of the remaining expert witnesses should be apportioned.

### *1. Dr. Smith, treating physician and expert witness*

Dr. Smith treated Margaret Hunter, and she is also serving as an expert witness on the plaintiffs' behalf. Plaintiffs' counsel designated Dr. Smith as an expert witness by letter dated March 30, 2018. (Doc. 81-1, at 11). Together with the letter designating Dr. Smith as an expert witness, plaintiffs' counsel provided defense counsel with copies of two brief reports prepared and signed by Dr. Smith on March 27, 2017, and January 15, 2018. (*Id.* at 13–15). Dr. Smith's deposition was taken by the defendants, upon notice, on April 30, 2018. Due to the late production of certain medical records, her deposition was continued and

reconvened by the defendants on October 7, 2018. We are asked to decide whether Dr. Smith was deposed as an expert witness or a fact witness and, if an expert witness, whether the defendants are obligated to pay her a reasonable expert witness fee or the statutory witness fee due under 28 U.S.C. § 1821.

The defendants argue that, as a treating physician, Dr. Smith is a fact witness, rather than an expert witness, and thus they are obligated only to pay the statutory $40 witness fee due under § 1821. In support, they argue that Dr. Smith's two one-page reports do not satisfy the extensive reporting requirements of Rule 26(b)(2)(B). The defendants do not argue that Dr. Smith's deposition fees are unreasonable, and the plaintiffs appear to contend (or concede) that the fee charged by each of the various expert witnesses—for both sides—is reasonable. Ultimately, it is within the court's discretion to set an amount that it finds reasonable. *Fisher-Price, Inc. v. Safety 1st, Inc.*, 217 F.R.D. 329, 333 (D. Del. 2003); *Delgado v. Sweeney*, No. Civ.A. 01-3092, 2004 WL 228962, at *3 (E.D. Pa. Jan. 6, 2004).

"The Federal Rules of Evidence do not distinguish between lay and expert witnesses, but 'rather between expert and lay testimony.' It

is clear that in the Third Circuit treating physicians may testify as lay witnesses regarding diagnosis and treatment under some circumstances. . . . [But] treating physicians' testimony on prognosis and causation will inherently be based on scientific, technical, or specialized knowledge within the scope of Rule 702 [of the Federal Rules of Evidence]." *Pease v. Lycoming Engines*, 2012 WL 162551, at *12 (M.D. Pa. Jan. 19, 2012) (citations and footnote omitted). Therefore, to the extent a party intends to offer the testimony of a treating physician on issues of prognosis or causation, the party is required to disclose the treating physician as an expert witness under Rule 26(a)(2)(A).

Rule 26(a)(2)(A) requires a party to disclose the identity of any witnesses it intends to use to present expert opinion evidence at trial. *See* Fed. R. Civ. P. 26(a)(2)(A). Generally, the time for these disclosures is prescribed in a case management order issued under Rule 16(b). *See* Fed. R. Civ. P. 26(a)(2) advisory committee note (1993). In the absence of a stipulation or court order to the contrary, expert disclosures must be made at least 90 days before trial.[1] Fed. R. Civ. P. 26(a)(2)(D).

---

[1] In this case, the most recent court order set a March 15, 2018,

The nature and content of this disclosure depends on whether the expert is a "retained" expert. An expert who is "retained or specially employed to provide expert testimony in the case" must prepare and sign a detailed, often highly technical, written report. *See* Fed. R. Civ. P. 26(a)(2)(B). But an expert witness who is not "retained or specially employed to provide expert testimony" is not required to produce the detailed written report required by Rule 26(a)(2)(B); instead, the party is simply required to disclose "the subject matter on which the witness is expected to present [expert] evidence" *and* "a summary of the facts and opinions to which the witness is expected to testify." *See* Fed. R. Civ. P. 26(a)(2)(C); *see also Longo v. Hanger Prosthetics & Orthotics, Inc.*, Civil Action No. 3:12-cv-02445, 2015 WL 915479, at *2 (M.D. Pa. Mar. 3, 2015).

A treating physician is typically a "non-retained" expert subject to the less onerous disclosure requirements of Rule 26(a)(2)(C). *See Pease*, 2012 WL 162551, at *13 ("A treating physician is not necessarily retained or specially employed to provide expert testimony simply because he or she proffers on causation and prognosis. This conclusion

---

deadline for plaintiffs' expert disclosures. (Doc. 55). The parties appear to have extended this deadline until March 30, 2018, by stipulation.

is bolstered 'by the obvious fact that doctors may need to determine the cause of an injury in order to treat it.'"); *see also Longo*, 2015 WL 915479, at *3 (quoting *Pease*); Fed. R. Civ. P. 26(a)(2) advisory committee note (1993) ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."); Fed. R. Civ. P. 26(a)(2)(C) advisory committee note (2010) ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony . . . . Frequent examples include physicians or other health care professionals . . . . The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present."). "To determine whether a party retained or specially employed a treating physician to provide expert testimony, the relevant inquiry is 'whether the treating physician acquired his opinion as to the cause of the plaintiff's injuries directly through his treatment of the plaintiff.'" *Pease*, 2012 WL 162551, at *13 (quoting another source).

Based on our review of Dr. Smith's two one-page reports, we find that the plaintiffs have satisfied their disclosure requirements under Rule 26(a)(2)(C). The reports clearly disclose the subject matter on

which Dr. Smith is expected to present expert testimony, and they adequately summarize the facts and opinions to which she is expected to testify. Moreover, it is clear that the opinions she is expected to offer regarding prognosis and causation were acquired directly through her treatment of the plaintiff. Based on this, we find that Dr. Smith has been properly identified as a witness whom the plaintiffs intend to use to present expert evidence at trial, and that the plaintiffs have satisfied their disclosure obligations under Rule 26(a)(2)(C).

The federal rules further provide that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). Moreover, they provide that, "[u]nless manifest injustice would result, the court must require that the party seeking discovery[2] . . . pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) . . . ." Fed. R. Civ. P. 26(b)(4)(E).

The defendants availed themselves of Rule 26(b)(4)(A), taking the

---

[2] With respect to testifying experts, the "discovery" covered by this rule is limited to the deposition permitted by Rule 26(b)(4)(A). Under certain circumstances, a separate subpart of the rule permits discovery into facts and opinions held by non-testifying experts through the use of interrogatories as well as depositions. *See* Fed. R. Civ. P. 26(b)(4)(D).

deposition of Dr. Smith in two sessions on April 30, 2018, and October 4, 2018. They have proffered no reason why manifest injustice would result from requiring them to pay Dr. Smith a reasonable fee for her time spent being deposed.

We turn then to whether Dr. Smith's fee is reasonable. "[T]he court has an independent duty to determine what fees and expenses are reasonable and must adjust those that are deemed unreasonable." *Ndubizu v. Drexel Univ.*, Civ. Action No. 07-3068, 2011 WL 6046816, at *1 (E.D. Pa. Nov. 16, 2011). In determining whether a fee request pursuant to Rule 26(b)(4)(E) is reasonable:

> [C]ourts consider seven criteria: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interest implicated by Rule 26.

*Fisher-Price*, 217 F.R.D. at 333.

Here, Dr. Smith has stated that her standard deposition fee is $2,500 for the first two hours and $750 for each additional hour. She

has treated the April and October sessions of her deposition as two separate depositions, and thus she requests payment of $3,250 for three hours she spent testifying on April 30, 2018, and $2,500 for one hour she spent testifying on October 4, 2018—a total of $5,750.

We find nothing to suggest that her quoted deposition rates—$2,500 for the first two hours plus $750 for each hour thereafter—are unreasonable. We have considered her expertise in podiatric medicine, the specialized education and experience required to provide her with the expert insight she has employed in reaching her medical opinions, and the nature, quality, and complexity of the expert testimony she provided at her deposition, and we find her quoted rates consistent with these factors. We have considered rates charged by other experts in this case—particularly Dr. Daley, the defendants' podiatric expert who happens to have graduated with Dr. Smith—and find them consistent with her quoted rates as well. We find her quoted rate consistent also with the $250 fee she charged to the plaintiffs for preparation of her very brief March 2017 report summarizing her treatment findings with respect to Margaret Hunter. We note that Dr. Smith has not previously provided expert testimony in litigation, so we are unable to consider the

fees she charged in other, similar matters, and we find no other factors relevant to this consideration.

We do not, however, find her treatment of the October session as a separate deposition to be reasonable. This second session was effectively a continuation of the same deposition, adjourned for a period of months due to the late hour of the deposition, the late production of medical records, and difficulty among the parties and the witness in scheduling the deposition for resumption. *See* Fed. R. Civ. P. 30(a) advisory committee note (1993) (noting that a requirement for leave of court to depose a witness twice "does not apply when a deposition is temporarily recessed for convenience of counsel or the deponent or to enable additional materials to be gathered before resuming the deposition").

Accordingly, we will direct that the defendants, as the deposing parties, shall be responsible for payment of Dr. Smith's reasonable expert fee for time spent being deposed on April 30, 2018, and October 4, 2018, at a rate of $2,500 for the first two hours (on April 30, 2018) plus $750 per hour for the subsequent two hours (one each on April 30 and October 4, 2018)—a total of $4,000.

### *2. The apportionment of fees charged by other experts*

The defendants have also moved for an order directing the apportionment of expert fees in a different manner than that prescribed by the rules.

As noted above, the federal rules provide that reasonable expert fees may be recovered from a party taking the deposition of a testifying expert. Under Rule 26(b)(4)(E), "[u]nless manifest injustice would result, the court must require that the party seeking discovery[3] . . . pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) . . . ." Fed. R. Civ. P. 26(b)(4)(E). The purpose of this rule is both "to compensate experts for their time in participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert work free from cost." *Hurst v. United States*, 123 F.R.D. 319, 321 (D.S.D. 1988); *Ndubizu,* 2011 WL 6046816, at *1.

As the court observed in *Ndubizu*:

> The mandatory language of this rule is tempered in two ways. First, a court should not order

---

[3] With respect to testifying experts, the "discovery" covered by this rule is limited to the deposition permitted by Rule 26(b)(4)(A). Under certain circumstances, a separate subpart of the rule permits discovery into facts and opinions held by non-testifying experts through the use of interrogatories as well as depositions. *See* Fed. R. Civ. P. 26(b)(4)(D).

> payment of expert fees if manifest injustice would result. Fed. R. Civ. P. 26(b)(4)(E). Second, a court is required to compel payment of only "a reasonable fee." *Id.* The moving party—the one who seeks reimbursement—bears the burden of showing that the requested fees and expenses are reasonable. *Packer v. SN Servicing Corp.*, 243 F.R.D. 39, 42 (D. Conn. 2007); *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, 262 F.R.D. 586, 589 (D. Colo. 2009). Notwithstanding the moving party's showing of reasonableness, the court has an independent duty to determine what fees and expenses are reasonable and must adjust those that are deemed unreasonable. *See Jochims v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 496 (S.D. Iowa 1992); *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 356 (5th Cir. 2007). While the court will consider the terms that the retaining party agreed to with its experts, it will not simply award fees or expenses based upon those terms. *See Bowen v. Monahan*, 163 F.R.D. 571, 574 (D. Neb. 1995) (finding that "[w]hile [one party] may contract with any expert . . . and, by agreement, that expert may charge unusually high rates for services, the discovery process will not automatically tax such unreasonable fees" upon the other party.).

*Id.* at 1 (brackets and ellipses in original).

Here, the defendants seek for the obligation to pay expert fees to be apportioned between the parties based on their respective percentage of time each side spends examining the expert at his or her deposition. They do not address any specific witness's deposition or the

reasonability of any related fees, nor do they specifically articulate any manifest injustice that would result from applying the rule set forth in Rule 26(b)(4)(E) as written.

The plaintiffs oppose this request, noting that they have made determinations as to whether to depose the defense experts with their obligation to pay reasonable expert fees in mind—for example, they have opted to forgo the opportunity to depose Dr. Wapner based on the balance of prospective costs and the potential value of a discovery deposition. They note that they have paid the full fees incurred for the taking of the deposition of Dr. Daley, a defense expert, and the defendants similarly have paid the full fees incurred for the taking of the deposition of Dr. Medrek, a plaintiffs' expert. The only deposition remaining to be taken, they note, is the deposition of a plaintiffs' expert, Dr. Hasselman, which the defendants have delayed scheduling as they wrestle with the question of whether the value of deposing this witness would be worth the prospective fees.

The defendants have requested us to depart from the cost-shifting procedures imposed by the federal rules as "preemptive" measure to prevent an unarticulated "manifest injustice" and promote a more "fair"

apportionment of costs. But they have failed to adduce or proffer any evidence that the standard apportionment of expert-related discovery expenses under Rule 26(b)(4)(E) would cause manifest injustice or otherwise be unfair or unreasonable in any way.

The process set forth in the federal rules may fall short of ideal from the perspective of these particular defendants, but it is a reasonable means to reach a fair and equitable apportionment of expert-related discovery expenses in the hundreds of thousands of civil actions proceeding through the federal courts at any given time. The rule expressly provides for the Court to exercise its discretion on a case-by-case basis where the facts demonstrate that the general application of this rule would result in manifest injustice, and it expressly provides for the Court to exercise its discretion on a case-by-case basis where the particular fees sought by an expert witness are unreasonable. The defendants in this case have failed to demonstrate any facts to justify departure from the application of Rule 26(b)(4)(E) as written.

Accordingly, we will deny this request by the defendants—that expert-related deposition fees be apportioned by the percentage of time each party spends examining an expert witness—without prejudice to

any future motion for relief with respect to particular witnesses based on evidence of unreasonableness or manifest injustice.

An appropriate Order follows.

Dated: December 4, 2018          ***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge