IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET T. HUNTER and<br>JOHN P. HUNTER, wife and husband, | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | MEDICAL NEGLIGENCE |
| | : | |
| RICHARD P. KENNEDY, M.D.,<br>MONROE RADIOLOGY IMAGING,<br>P.C., POCONO MEDICAL CENTER,<br>PETE OBENG, M.D., FAMILY CARE<br>CENTERS, INC. t/d/b/a PMC<br>PHYSICIAN ASSOCIATES and<br>PMC IMMEDIATE CARE CENTER | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants | : | NO. 3:17-CV-00007 |

PLAINTIFFS' PRE-TRIAL MEMORANDUM

Date Conference was Held by Counsel: Tuesday, June 4, 2019

A. Brief Statement as to Federal Court Jurisdiction:

Jurisdiction is based upon diversity of citizenship with Plaintiffs being residents of the State of New York, Defendants being citizens of Pennsylvania, and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

B. A Summary Statement of Facts and Contentions as to Liability:

(1) On May 16, 2016, Plaintiff Margaret Hunter, while descending a ladder, fell 7-8 feet, landing on her left foot. She was taken to Defendant

Family Care Centers, PMC's Immediate Care Center in East Stroudsburg, where she was seen by Defendant Dr. Pete Obeng who ordered x-rays of her left ankle which were subsequently read by Defendant Dr. Richard Kennedy. The requisition form said "Workers' Compensation." Dr. Kennedy has admitted he reported that Plaintiff suffered an ankle strain/sprain. Upon getting Dr. Kennedy's report, Dr. Obeng, having only performed a superficial exam of Margaret Hunter's lower extremities, informed Plaintiff she had an ankle sprain; gave her crutches and instruction pamphlets on ankle sprain/strain and ankle therapy and told her to perform them; scheduled a follow-up appointment for May 20, 2016; and discharged her to return to work that day. (*See* Hunter D.T. P. 73-74)

Margaret Hunter returned to see Dr. Obeng on May 20, 2016, at which time Dr. Obeng instructed her to start putting pressure on her foot using her crutches, the same. Margaret Hunter followed the instructions but because of persistent pain and swelling and discoloration on the bottom of her foot, she returned to see Dr. Obeng on May 31, and insisted that there was something wrong with her foot and that Dr. Obeng order additional x-rays.

After the x-rays were taken, but before they had been read by the Radiology Department, she was discharged by Dr. Obeng, who continued

his diagnosis of ankle sprain and gave her a prescription for physical therapy.  Subsequently that day, Defendant Dr. Kennedy read the x-rays of May 31, and then re-read the May 16 x-rays.  He called Dr. Obeng and informed him that Margaret Hunter had suffered a calcaneal fracture and that upon re-reading the May 16 x-rays, realized he had missed the fracture.  Thereafter, Dr. Obeng called Margaret Hunter and advised that her foot was fractured.  Dr. Obeng then added to the existing records to indicate that Margaret Hunter had a fracture of her calcaneus and he was referring her to an orthopedist.  Dr. Obeng did not note a late entry.

   On May 16, 2016, Dr. Obeng released Mrs. Hunter to return to work with restrictions, knowing that she was required to drive 1 ½ hours to 2 hours to the Pocono worksite from her home in New York State.  Dr. Obeng failed to allow proper elevation of Mrs. Hunter's leg above her heart.  Dr. Daley, DPM, a defense podiatry expert testified in a pretrial deposition that he tells his own fracture patients to elevate their leg above the heart, which is difficult while driving.  "To age-old saying is as high as your heart or higher, on a few pillows." (Daley, N.T. P. 95 L. 15-16).  Daley, DPM testified that "swelling can cause tissue problems and wound dehiscence which can lead to infection.  (Daley N.T. P. 83 L. 6-12).  Daley, DPM testified on cross in a

deposition on 8/14/2018 that proper pre-surgical patient management includes making the correct diagnosis (Daley N.T. P. 83 L. 16-20), getting the patient off her feet and giving her the appropriate instructions regarding elevations of the leg (Daley P. 84 L. 4-9), above her heart. (Daley N.T. P. 95 L. 15-16).

Once swelling subsided, that would be the golden point to operate (Daley N.T. P. 82 L. 18-19) which normally occurs in one to two weeks. Dr. Daley, DPM testified:

> Q. You would want to make sure that she [a patient with a new calcaneal fracture] was not driving four hours a day, correct?
>
> A. I would hope not, yeah.

(Daley N.T. P. 84 L. 10-12).

Dr. Daley prefers to perform calcaneal open reduction, internal fixation surgery as soon as swelling allows (Daley N.T. P. 125 L. 18-21), for the reasons previously discussed.

Dr. Obeng required Mrs. Hunter to return to work in a situation where she was required to drive about 4 hours per day after her May 16, 2016 calcaneal fracture exacerbating the swelling while he and Dr. Kennedy

- 4 -

were misdiagnosing her calcaneal fracture. Mrs. Hunter would also sit for 8 hours a day at work on top of that.

On June 2, 2016, Margaret Hunter went to the E.R. at Wilson Memorial Hospital in Binghamton where x-rays and a CT scan were performed which confirmed the calcaneal fracture. Mrs. Hunter was then referred by the hospital resident to Dr. Kelly Smith for surgical evaluation. An appointment was scheduled for June 8th.

On June 8th, after discussion with Dr. Smith on treatment options, which included a difficult surgery or conservative treatment, because of the serious risks involved in the proposed surgery caused by the delay in treatment, Margaret Hunter chose the conservative treatment.

Dr. Smith described Mrs. Hunter's fracture as:

> CT showed a comminuted displaced intraarticular subtenial fracture." (Kelly Smith D.T. P. 44 L 10-17)

> "This is 'a fracture of the heel bone where it's in multiple pieces and it's out of alignment and it goes into the joints.'" (Kelly Smith D.T. P. 44 L. 21-23) (Referring to subtalar joint. D.T. P. 44 L. 3)

The biggest thing Dr. Smith noted "the biggest was probably the amount of time." (Kelly Smith D.T. P. 45 L. 19-20).

> "certainly the CT scan is a huge – I mean a huge part of the decision on how to treat her. But the length of time that had

b

passed was getting close to four weeks by that point.  So it makes it – it does make it challenging from a surgical standpoint.  The heel bone is really vascular.  So shortly after, you know an injury in the heel bone, it will heal.  It will heal.  Now it may not heal in the right position, but it will heal.  And it starts in everything starts getting very tricky and it mekes it more challenging the longer you wait." (Kelly Smith D.T. P. 47 L. 20-25).
Dr. Smith testified that even at 2 ½ weeks, surgery gets more difficult because of delay.

Margaret Hunter will in the future require a fusion of the subtalar joint of her left foot when her post traumatic arthritis gets worse.

(2)  Contentions as to Liability:

1.  Dr. Richard Kennedy has admitted he overlooked the calcaneal fracture that was plainly visible on the May 16, 2016, x-ray.  As a result, Plaintiff's fracture was not diagnosed and was not treated to reduce the swelling to allow surgery within 7-10 days, thereby increasing the risk of harm to Plaintiff.

2.  Dr. Pete Obeng:

- did not do a proper physical exam of Margaret Hunter's left foot on the May 16, 2016, visit.
- failed to provide proper clinical information regarding the nature of the injury to the radiologist.
- failed to perform a proper exam on the May 20th visit.
- failed to do a proper exam on May 31st, discharging Margaret Hunter with an order for physical therapy.

- failed to order a CT scan and refer Mrs. Hunter to an orthopedic doctor on May 31st upon learning her calcaneus was fractured.

(3)  Defendants Pocono Medical Center, Family Care Centers, Inc. t/d/b/a PMC Physician Associates, and PMC Immediate Care Center are vicariously liable as Dr. Kennedy and Dr. Obeng are agents, servants and employees or apparent employees of each of the above Defendants.  All the above caused a delay in diagnosis and treatment resulting in Plaintiff's calcaneus starting to heal, thereby making surgery increasingly risky when Mrs. Hunter saw Dr. Kelly Smith on June 8, 2016.

C. <u>Comprehensive Statement of Facts</u>:

On May 16, 2016, Margaret Hunter was working as a laborer for Fahl Construction Company on a bridge construction project in Tannersville, Monroe County, Pennsylvania.  While attempting to climb down a ladder from a trailer, the ladder kicked out causing her to fall some 7 to 8 feet, with her left foot landing on the ladder and the right foot on the ground. She immediately felt severe pain in her left foot.  She was taken by her job superintendent to Pocono Medical Center Intermediate Care Unit where she saw Defendant Dr. Obeng.  At that time, she was complaining of severe pain in her left foot and ankle.  She related to Dr. Obeng the information concerning her fall and he ordered an x-ray of her left ankle.

Defendant Dr. Kennedy of Radiology reviewed the x-rays and failed to make the diagnosis of a comminuted calcaneus fracture.  When the x-ray report came back, which read as negative for fracture, Dr. Obeng informed her that she just had a bad sprain, gave her ankle sprain and exercise pamphlets and crutches to utilize, wrapped up her foot, instructed her to return to work the next day, and scheduled a follow-up appointment for May 20, 2016.

Margaret Hunter returned to see Dr. Obeng on May 20, 2016, at which time he again informed her that she just had a severe sprain, told her to continue doing the exercises and, using crutches, to bear weight on the left foot for ambulation.  Margaret did perform the exercises and tried walking on her foot.

Margaret continued to experience severe pain and returned on May 31, 2016, at which time she again told Dr. Obeng that she thought that something was broken in her left foot and insisted that he perform additional x-rays.  X-rays were taken of the left ankle at which time Dr. Kennedy diagnosed that there was a comminuted fracture of Margaret's calcaneus.  He then reviewed the original x-rays of May 16 and realized

the fracture showed on the film of May 16 which, during his deposition, he identified and marked on a photocopy.

Meanwhile, Dr. Obeng, not waiting for the results of the x-ray on May 31, again told Margaret Hunter that she just had a severe sprain, ordered that she undergo physical therapy, wrote out an order for the same, and discharged her.

Between May 17 and May 31, Margaret had been going to the job site each day at the instruction of the superintendent where she would sit in the office and answer the phone with her leg elevated and an ice pack on her foot as her employer did not want to turn the claim into the workers' compensation carrier since it was "only a sprain".

Upon leaving PMC, Margaret returned to the jobsite on May 31, where she received a call from Dr. Obeng telling her that she had a fractured calcaneus and not to put any pressure on the foot.  She was then sent home from work.  Subsequently, on June 2 her employer told her to go to the Wilson Memorial Hospital where she underwent a CT scan of the left ankle/foot which showed she suffered a comminuted Sander Type IIA calcaneus fracture.  At that point, on June 2 it had been determined that due to the length of time from the injury that the fracture had started to

consolidate. She was referred to the foot specialist Dr. Kelly Smith whom she saw on June 8, 2018, who told her she could perform a difficult surgery but because of the delay from time of injury, May 16, 2016, time of potential surgery 3 ½ weeks had elapsed and that increased the risk of complications and/or no improvement if surgery was performed as Dr. Smith testified.

Mrs. Hunter elected not to undergo the belated surgery because of the risks involved including infection, more serious surgery if it failed, and no guarantee it would work.

Her initial treatment consisted of a hard cast for three weeks, then an ace wrap and CAM walker, followed by physical therapy on her left foot.

For subsequent treatment she was given an orthopedic insert for her shoe and also a compression boot to utilize to help relieve the pain which she mostly wears at night in bed and late in the day when the pain becomes severe. As a result, Margaret walks with a lump.

On August 25, 2016, Margaret went to a chiropractor for an adjustment of her low back pain because of her altered walking. On June 2, 2017, Margaret returned to the chiropractor for an adjustment because of low back pain caused by her altered gait. On January 23, 2018, she returned

for yet another adjustment because of back and right leg pain.  Being on her feet causes sharp pain in the left heel and her low back to become very sore and achy, resulting in pain radiating down her right leg.  She has received injection therapy in her foot and ankle.

Margaret has not been able to return to full-time work, nor will she ever be able to work as a laborer.  Margaret has tried to in a limited capacity doing light office work two (2) hours per day, ten (10) hours per week at approximately $9.10 per hour.  ($111.00 per week).  Even walking for short amount of time causes pain and swelling in her foot and she suffers from back pain.  She will eventually need a fusion of her left ankle which will permanently limit her ability to walk on uneven surfaces, thereby disqualifying her from a position as a laborer.  Moreover, because of the pain in her left ankle and low back, it is highly doubtful she will be able to return to work in any physical job.

D. <u>Brief Description of Damages</u>:

(1) <u>Principle injuries Sustained:</u>

Margaret Hunter sustained a comminuted impacted, displaced fracture of the calcaneus.  Her fracture subsequently went on to heal.  She has pain and swelling daily which increases when she walks or stands.

When walking, her altered gait causes low back pain.  She will eventually require fusion of the subtalar joint.  This may require periodic injections.

(2)  Hospitalization and Convalescence:

Plaintiff received outpatient evaluation on May 16, May 20, and May 31, 2016, at PMC Immediate Care Center by Dr. Obeng and on June 2, as an outpatient in the emergency room at Wilson Memorial Regional Medical Center where x-rays and a CT scan was performed, and Plaintiff was then referred to Dr. Kelly Smith for a surgical consultation.  Based on the risks of the surgery, Mrs. Hunter chose conservative treatment which has consisted of physical therapy, injections, elevation, and bracing.  Plaintiff will need a surgical fusion and extended physical therapy in the future when her post traumatic arthritis mandates the fusion becomes necessary which will result in loss of range of motion in the subtalar joint resulting in a permanent limp and inability to walk on uneven surfaces without risk of falling.

(3)  Present Disability:

Margaret Hunter experiences pain in her left foot every day, sometimes severe pain, which is worst at night which deprives her of sleep. Because of her injury, Mrs. Hunter's gait changed which has caused pain in her back, sometimes radiating into her leg.  She has received epidural

injections from time to time in her foot/ankle.  Because of her intolerance to pain medication, she has had to defer when offered by Dr. Kelly Smith. The failure diagnose her fracture and delay to early treatment has resulted in her loss of her ability to work as a laborer.

(4) <u>Special Monetary Damages - Workers' Compensation Lien</u>:

| | |
|---|---|
| Indemnity | $95,005.72 |
| Medical | <u>$ 3,731.81</u> |
| Combined Total | <u>$98,737.53</u> |

Future Medical Expense (Estimated)

  Quarterly treatments - injections

  Subtalar Fusion of left hindfoot as a result of post-traumatic arthritis    $80,000.00

Estimated Loss of Earning Capacity

| | |
|---|---|
| Return to Labor Market | $350,0302 to $402,980.00 |
| Disabled | $693,300 to $816,519.00 |

(5) <u>Estimated Value of Pain and Suffering</u> - $1,500,000.00

At the time of the injury, Margaret Hunter was 51 years and 9 months old.  As of today, she has a life expectancy of 27.3 years of foot and back pain and suffering from today's date, together with the 4 years of pain since May 16, 2016, which she has experienced to date.

(6) <u>Special Damage Claims</u>:

E. <u>Names and Addresses of Witnesses</u>:

John P. Hunter and Margaret T. Hunter

Jonathan P. Hunter

Jamie Kille (Daughter)

| | |
|---|---|
| Paul Medrek, MD | Occupational Medicine Specialist<br>Brigham and Women's Hospital<br>Harvard Medical School, Boston, MA |
| Carl Hasselman, MD | Orthopedic Surgeon<br>Three Rivers Orthopedic Associates – UPMC<br>Pittsburgh, PA |
| Kelly Smith, DPM | Podiatric Surgeon & Treating Podiatrist<br>Foot Care Specialists<br>Binghamton, NY |
| Terence Walsh, BA, MSW | Malvern, PA – Vocational Expert |
| Andrew Verzilli, MBA | Lansdale, PA – Economist |
| Guido LaPorta, DPM, MS | Podiatrist<br>Dunmore, PA – Plaintiffs' Rebuttal Witness to Defense Witnesses Kenneth Wapner, MD and Joseph Daley, DPM |
| Deana M. Kilmer, MBA MSN CRNP, FNP-BC, CCM, CLCP | 2812 Suite 102 Route 6, Blakely, PA, 18447<br>Plaintiffs' rebuttal witness to defense expert Edward Zurad, MD |
| Alberto Esquenazi, MD | Moss Rehabilitation, Einstein Healthcare Network |
| Nancy LaPorte, RN, | Practice Manager, Lehigh Valley Health Network |
| Supervisor of Pocono Medical Center IT Department | |

Brendan Delaney Designee     Works in New York City

F. <u>Summary of Testimony of Each Expert Witness</u>:

1. Dr. Carl Hasselman is an orthopedic specialist. Dr. Hasselman will testify that Margaret Hunter suffered a Sanders Type 2 calcaneal fracture which was visible on the May 16, 2016, x-ray. The fracture was comminuted and intraarticular impacted into the joint space. Due to the negligence of Defendants, Plaintiff lost the opportunity to reduce and fix the fracture at a time where Plaintiff would have the best chance at good recovery which will result in eventual post traumatic arthritis over the healed position. The delay in diagnosis compromised the overall optimal treatment which would have been surgical fixation of her fracture. He opined that if her fracture had been diagnosed and properly treated, she would have been able to return to work as a laborer. (Exhibit 1)

2. Dr. Paul Medrek is Associate Medical Director of Occupational Health Services, Clinical Instructor of Medicine at Harvard Medical School. Dr. Medrek opined that Dr. Obeng: never did a proper examination of Margaret Hunter which did not include palpation of the hindfoot, inversion, eversion, or drawer testing; ignored the probability of foot fracture; had inadequate communication with the radiologist; and, did not provide the radiologist with Margaret's mechanism of injury and clinical status. Dr. Obeng's allowing Margaret Hunter to drive to work and to sit all day with her foot in a dependent position would have increased the swelling in Mrs. Hunter's left foot and ankle. Dr. Obeng increased the risk of further damage to the calcaneus by telling her to walk on the foot and prescribing ankle sprain rehabilitation instructions to perform while placing weight on her left foot. (Exhibits 2)

3. Kelly Smith, DPM, is the treating podiatrist who first saw Margaret Hunter on June 8, 2016, upon referral by the resident at Wilson Memorial Hospital. Dr. Smith, in her records and by deposition testimony, determined that healing and consolidation of the calcaneal fracture had already started, making the surgery difficult. She explained that the risks of open surgery with plating included infection, failure, etc., and gave Margaret Hunter another option – conservative treatment - which she chose given the increase risk of poor outcome caused by the delay.

Surgical treatment of a Sanders Type 2 calcaneal fracture should be performed within 7-14 days of the occurrence which would have decreased the risk of post traumatic arthritis and have allowed Mrs. Hunter the best opportunity to return to work as a laborer. (Exhibit 3)

4. Terence Walsh – vocational expert – will testify as to Margaret Hunter's employment limitations and loss of earning capacity. (Exhibit 4)

5. Andrew Verzilli - economist - will establish Margaret Hunter's financial loss. (Exhibit 5)

6. Deana Kilmer, MBA, MSN, was present at Margaret Hunter's defense medical examination performed by Edward Zurad, MD. She will rebut certain parts of Dr. Zurad's expected rendition of his examination. (Exhibit 6)

7. Albert Esquenazi, MD, will testify about the video gait analysis he performed of Margaret Hunter and its effect on her walking. (Exhibit 7)

8. Guido LaPorta, DPM is an expert witness and may rebut to the expected testimony of defense witness Kenneth Wapner, MD and Joseph Daley, DPM. (Exhibits 8)

G. Special Comments About Pleadings and Discovery

Expert reports have been exchanged. Defendants PMC and Dr. Obeng have produced what was represented on November 9, 2018 as an "audit trail" which is somewhat misleading. Plaintiff's were not advised of any issue with the audit trail. Plaintiff subsequently obtained an affidavit in another case from Nancy LaPorte, RN, Practice Manager Lehigh Valley Health Network that states in pertinent part "Per our IT Department, the system we used during the time (eClinical Works) is not capable of producing an "audit trail." Audit trails are necessary to verify the authenticity of the Pocono Medical Records. *See* 45 C.F.R. §164.312(b) entitled Standard: Audit Controls. Dr. Obeng confirmed in his deposition that his group utilized an EHR sold by eClinical Works. *See* United States of America, *ex rel.* Brendan Delaney v. EClinical Works, LLC, (Case No, 2015-CV-00095-WKS) (United States Complaint in Intervention). The US

Attorney's office has confirmed that in 2017 eClinical Works does not produce an audit trail capable of authenticating EHR records and eClinical works paid a substantial fine to the Department of Health and Human Services and entered into a May 2017 Corporate Integrity Agreement because eCW's's software did not have an accurate audit log for accurate recording of user actions. (*See* U.S. Department of Justice Office of Public Affairs May 31, 2017 Release entitled "Electronic Health Records Vendor to Pay $155 Million to Settle False Claims Act Violation."

Federal regulations require audit controls to establish the security and integrity of electronic health records. 45 C.F.R. Sec. 164.312(b), 45 C.F.R. §170.210(e-h).

Picco v. Glen, 2015 U.S. Dist. LEXIS 58703 (U.S. Dist. Ct. CO 2015); Hall v. Flannery, 2015 WL 2008345 (S.D. Ill. 2015)

H. Summary of Legal Issues Involved and Legal Authorities

Negligence of the defendants, and damages.

*See* Motion in Limine(s) which are incorporated by reference.

I. Stipulations Desired: Authenticity of non-Pocono Medical Center Medical Records.

If diagnosis had been made on May 16, 2016, the appropriate treatment that would have improved Mrs. Hunter's long term prognosis and provided her the optimum chance of an anatomic reduction of her fracture without arthritis, was surgery for an open reduction and internal fixation of Mrs. Hunter's fracture. (*See* Defense Expert Dr. Wapner Report May 15, 2018 P. 5) and testimony of defense expert Dr. Daley.

J. Estimated Number of Trial Days: 5

K. Other Matters Pertinent to the Case: None

L. <u>Exhibit List</u>: To be provided.

M. <u>Special Verdict Questions</u>: To be provided

N. Defendants only.

O. <u>Certificate of Meeting of Counsel</u>: Plaintiffs intend to have each expert and witness testify live however should there be a conflict in scheduling said testimony, Plaintiffs will submit said expert's testimony via video. Counsel will confer with all other Counsel to eliminate any objections, irrelevancies, and other matters not necessary for consideration by the jury

                                            Respectfully submitted,

                                            FOLEY LAW FIRM

                            By:   /s/ *Michael J. Foley*
                                            Michael J. Foley.
                                            I.D. No. 39855