# PA ADVOCATES INC.

Sean C. Hanahue, MA, CDMS, CRC, LPC, BCPC, ABVE/D
President-Director of Vocational Services

Certified Expert Case Management:
  \*Civil Litigation
  \*Medical Malpractice
  \*Workers Compensation
  \*Social Security Disability

**November 26, 2018**

**Attorney Thomas Foley**
**Foley Law Firm**
**538 Spruce St.**
**Suite 200**
**Scranton, PA 18501**

| | |
|---|---|
| **Re:** | **Hunter v. Kennedy et al** |
| **Plaintiff DOB:** | **8-19-64** |
| **Date of Loss:** | **5-16-16** |

## VOCATIONAL ASSESSMENT

Thank you for the referral of the above captioned matter.

This file was referred to Vocational Expert Mr. Terence H. Walsh BA MSW CRC of PA Advocates on 1-16-18 by Attorney Thomas Foley for the purpose of conducting a Vocational Assessment and Lost Wage Assessment regarding Ms. Margaret Hunter. The file was received and reviewed and contact was made with Attorney Foley's office to confirm the assignment.

Upon receipt of the case I immediately attempted to arrange to conduct a Vocational Interview with Ms. Margaret Hunter. This assessment was arranged to take place on 2-23-18. I traveled to Attorney Foley's office and interviewed Ms. Margaret Hunter on that date. I explained to Ms. Hunter that I would not have an ongoing client/counselor relationship with her, but that I would be conducting an assessment of her vocational and economic capabilities and a Lost Wage Assessment. She stated that she understood this. I presented her with my Professional Disclosure form and she read and did sign this form.

The assignment was to complete a vocational assessment, transferable skills analysis and to evaluate the impact of Ms. Hunter's physical abilities with regard to her current and future occupational and economic capabilities in the fields in which she was employed as well as related fields of work.

Accordingly, I was able to review available medical, financial and vocational documentation.

**Attorney Thomas Foley**
**November 26, 2018**
**Page - 2**
**Re:  Hunter v. Kennedy et al**

In addition to my reviewing all available documentation during the course of my in person vocational assessment of Ms. Hunter, appropriate government resources and vocational materials have been utilized in developing this expert vocational opinion. Specifically, material utilized includes but is not limited to the PA Labor Force, the U.S. Dept. of Labor-Bureau of Wage Statistics, The Dictionary of Occupational Titles (DOT) and the O*Net.

**REVIEW OF RECORDS:**

The following were records provided to me and reviewed by me in this case:

1. Plaintiff's Tax Records 2011-2015
2. Margaret Hunter's deposition 10-23-17
3. Medical Timeline notes
4. Medical Records and letters of Dr. Kelly Smith
5. Dr. Paul Medrek's Occupational Medicine Expert Opinion 5-22-17
6. Plaintiff's Workers Compensation Records
7. Plaintiff's Employment Records
8. Three Rivers Orthopedic Associates, Dr. Carl Hasselman's report of January 16, 2018
9. Moss Rehabilitation Records 2-2018
10. Health Source Chiropractic and Progressive Rehabilitation Records 2014, 2017
11. Dr. Grob's Evaluative Records
12. Ms. Hunter's 2016 Tax Records
13. Ms. Hunter's W-2 forms 2011 thru 2016
14. IME Report and Physical Capacities of Dr. Michael Wolk dated 3-20-2018.

**VOCATIONAL METHODOLOGY:**

In developing my opinions within this assessment, I have utilized accepted vocational methodology which includes an in person vocational assessment, the completion of a Transferable Skills Analysis, utilization of vocational research material and my extensive review and evaluation of all available medical, vocational and financial documentation.

Documentation reviewed and resources utilized in developing this assessment are considered reliable and relevant information.

Vocational factors that are included in the assessment are an individual's education, work history, earnings history, general learning ability, transferable skills, and permanent employment status and labor market access.

Attorney Thomas Foley
November 26, 2018
Page - 3
Re:  Hunter v. Kennedy et al

**MECHANISM OF INJURY:**

Ms. Hunter was an employee of Fahs Construction when she was involved in a fall from a ladder that kicked out from underneath her and she fell to the ground roughly 7-8 feet. She injured her right foot and also fractured her left foot. She was transported after her fall to a walk in clinic associated with Pocono Medical Center and was seen by Dr. Obeng. X-rays showed that she suffered a left foot sprain. She was given crutches and an air cast and told not to weight bear on the left foot and advised to follow up in one week. She followed up in one week and no x-rays were taken. Dr. Obeng advised her to start weight bearing. Ms. Hunter noticed a bruise down the bottom of her left foot, from the ball of the foot to the heel. Walking was extremely painful for Ms. Hunter.

Subsequent follow up with Dr. Obeng led to x-rays. The x-rays were not immediately reviewed and physical therapy was arranged. Ms. Hunter left the clinic and was called later that day and advised that she did in fact have a fracture and that she should perform no weight bearing. Given the distance from her home to the clinic she then went to Wilson Hospital Emergency Room in Binghamton, New York, which is closer to her home. The physician there knew immediately that there was a fracture based on the bruising pattern at the bottom of her foot. Podiatry was consulted and a CT scan was performed. Ms. Hunter followed up with the Podiatrist, Dr. Kelly Smith of the Foot Care Center and her foot was eventually casted. She was told it was too late for the usual fracture reduction procedure and that she would likely need rods and an external fixator in the foot.

**CURRENT MEDICAL HISTORY/MEDICAL STATUS:**

Currently, she experiences extreme pain in the bottom of the left foot and up into her leg. Ms. Hunter "tires out" due to her injuries. She experiences numbness in both legs and feet bilaterally. She experiences this numbness "almost all of the time" in both legs. The pain that she experiences each day is up to a level "10" on its worst day. She takes Ibuprofen for pain. Walking and standing on her feet causes swelling and Ms. Hunter needs to elevate her feet until her feet "feel better."

Ms. Hunter can walk about 15 minutes before she needs to rest and elevate her legs. She thinks that after 5-10 minutes she can resume her walking activities. Ms. Hunter cannot run currently. She cannot crouch, bending is difficult and crawling is limited to "very little" if any. Ms. Hunter has trouble being on her feet for cooking and being on her feet for cleaning at her house.

Ms. Hunter has trouble attempting to play golf and volleyball due to her condition. Ms. Hunter also has difficulty playing with her grandchildren.

**Attorney Thomas Foley**
**November 26, 2018**
**Page - 4**
**Re: Hunter v. Kennedy et al**

Her work in her yard is limited to how long Ms. Hunter can stand to perform yardwork and how much she can do physically. Ms. Hunter can do laundry but needs help with grocery shopping at present.

Ms. Hunter currently does not see a physician for the injury. She has seen a chiropractor for back pain. She last saw Dr. Kelly Smith in November of 2017 and she was released from this doctor's care at that time.

**OVERVIEW:**

Ms. Hunter is a married, 53 year old Caucasian female and a United States citizen born on 8-19-64. She has 2 children and 7 grandchildren. Currently, she is covered by Fidelis Health/State of New York Insurance.

Ms. Hunter's cell phone number is 607 765-4889 and her house phone number she can be reached at is 607 467-2541. She lives at 84 Latham Rd., Deposit, NY 13754. She lives with her husband and her son.

Ms. Hunter is in possession of a valid New York Driver's License, which is a Class D license with glasses restrictions, and with no endorsements, and it is valid through 2025.

**EDUCATIONAL/TRAINING HISTORY**

1. **Deposit Central High School, Deposit, NY.** She attended but did not graduate from this school, having left school in the 9th grade in 1980. She left this school as she was engaged to be married to her current husband and had to move to North Carolina. She played field hockey, volleyball, softball and basketball in high school. She was not involved in any other extracurriculars while in high school. She was a "C" student there.

She is a certified Concrete Field Testing Technician in Pennsylvania. She is also certified by the state of New York to be a flagger and is certified to certify others in flagging. Ms. Hunter is also certified to train others in work zone traffic control competency, and to be a Supervisor in this field.

Ms. Hunter described no other formal education/training.

**Attorney Thomas Foley**
**November 26, 2018**
**Page - 5**
**Re: Hunter v. Kennedy et al**

Ms. Hunter described her reading abilities as "fair", writing as "good", spelling abilities as "terrible" and her math as "good." She does not speak, read or write any other languages.

**MILITARY HISTORY:**

She described no military service history.

**VOCATIONAL HISTORY:**

1. **FAHS Construction Group,** Binghamton, NY, 1993-2016-Job, Title: Laborer/Traffic/Concrete Field Tester-she ran equipment such as a Backhoe, Dump Truck, Loader, Roller, Yuke Truck and Track Loader. She cannot drive these clutch vehicles currently due to her injury. She is certified to perform Concrete Field Testing. As of 11-21-2015 Ms. Hunter is certified by the State of Pennsylvania Department of Transportation as a certified Concrete Field Testing Technician. This certification is still intact as of the date of this evaluation. This work involves filling up containers with concrete and testing them. She needs to be able to lift and carry 50-70 lbs. in this work. She is capable of lifting and carrying up to 20 lbs. currently in her own mind. She was provided shares in the company as part of her income. She was employed for 3 weeks prior to the accident and her duties involved laying out a work chart for concrete cylinders. She ran a machine that broke up the concrete compression. She never used a computer in any of the work for FAHS. She was non-unionized for this company. She had dental insurance but no medical insurance in this company. She had a 401(k) with this company. She was paid for and she worked up to 50 hours per week. She thinks her wage was $38.00 per hour and 1.5 times this amount for overtime. She never used a computer in any of the work for FAHS. She had to take the money out of her 401(k) after her injury to live on. She thinks it was worth $9,000.

2. **Landcaster Development,** Deposit, NY 1989-92, Job Title; Flagger-She was a road flagger. She stood for up to 12 hours at one time in this job.

In her past work history, Ms. Hunter was a factory worker-book assembler. This was a heavy duty type of job.

Ms. Hunter described no other types of employment in the past.

**Attorney Thomas Foley**
**November 26, 2018**
**Page - 6**
**Re: Hunter v. Kennedy et al**

**TRANSFERABLE SKILLS ANALYSIS:**

As is customary with each vocational assessment, a transferable skills analysis was completed on behalf of Ms. Hunter. A Vocational Assessment of Residual Employability (VDARE) was utilized in developing the transferable skills analysis.

Resource materials utilized included the Dictionary of Occupational Titles and ONET. The following findings were developed during the course of the transferable skills analysis.

The transferable skills analysis was produced through an evaluation of Ms. Hunter. Her position of a Heavy Equipment Operator most closely be defined by the Dictionary of Occupational Titles as:

CODE: **859.683-010**
TITLE(s): **OPERATING ENGINEER (construction; mine & quarry) alternate titles: heavy-equipment** operator Operates several types of power construction equipment, such as compressors, pumps, hoists, derricks, cranes, shovels, tractors, scrapers, or motor graders, to excavate, move, and grade earth, erect structural and reinforcing steel, and pour concrete or other hard surface paving materials: Turns valves to control air and water output of compressors and pumps. Adjusts hand wheels and depresses pedals to drive machines and control attachments, such as blades, buckets, scrapers, and swing booms. Repairs and maintains equipment. May operate machinery on sales lot or customer's property to demonstrate saleable features of construction equipment and be designated Demonstrator, Construction Equipment (wholesale tr.).
**GOE: 05.11.01 STRENGTH: M GED: R3 M1 L2 SVP: 6 DLU: 82**

Her position of a Construction Flagger is most closely be defined by the Dictionary of Occupational Titles as:

CODE: **372.667-022**
TITLE(s): **FLAGGER (construction) alternate titles: traffic control signaler**

Controls movement of vehicular traffic through construction projects: Discusses traffic routing plans, and type and location of control points with superior. Distributes traffic control signs and markers along site in designated pattern. Directs movement of traffic through site, using sign, hand, and flag signals. Warns construction workers when approaching vehicle fails to heed signals to prevent accident and injury to workers. Informs drivers of detour routes through construction sites. Records license number of traffic control violators for police. May give hand marker to last driver in line up of one-way traffic for

**Attorney Thomas Foley**
**November 26, 2018**
**Page - 7**
**Re:  Hunter v. Kennedy et al**

FLAGGER (construction) at opposite end of site, signaling clearance for reverse flow of traffic.
**GOE: 05.12.20 STRENGTH: L GED: R2 M1 L2 SVP: 2 DLU: 77**

Ms. Hunter's general education development (GED) was also evaluated within the transferable skills analysis. The GED level embraces those aspects of education both formal and informal, which are required of a worker for satisfactory performance. The GED scale is composed of three divisions including reasoning development, mathematical development, and language development. Ms. Hunter has experienced a level GED development which is considered medium at level 3 with regard to reasoning and a medium/low GED level with regard to language and math at level 2 and 1 respectively.

An SVP Level of 6 requires more than 12 months and up to 2 years of experience to achieve average knowledge, to learn the techniques, acquire the information and develop the ability to perform the position at an average level.

I have also evaluated Ms. Hunter's work history with regard to physical demands. Ms. Hunter's work history involves medium duty work involving lifting and carrying, walking, standing, driving and sitting.

Ms. Hunter's past work experience has also involved occasional to frequent reaching and handling.

**SKILLS/HOBBIES:**

Currently, Ms. Hunter is able to sew. She makes blankets on a sewing machine. She cannot do many of the hobbies she did previously such as sports with the kids and grandkids both.

She has a computer at her house and she gets on the Internet and she does e-mail. She can text and she gets the Internet on her phone. She is not capable of doing Excel, PowerPoint, Photoshop or any other types of computer programs.

**FINANCIAL:**

Ms. Hunter has Workers Comp benefits in New York state and she receives $978 weekly income. Mr. Hunter is a full time logger and he has his own business. He cuts trees and sells them to saw mills.

Ms. Hunter described no other personal forms of income at all.

Attorney Thomas Foley
November 26, 2018
Page - 8
Re:  Hunter v. Kennedy et al

**IMPRESSIONS:**

Ms. Hunter was pleasant and cooperative throughout the interview. She was communicative and engaging.

**EARNING CAPACITY:**

Earning Capacity is defined as the level of income which an individual may reasonably be expected to earn from work given one's level of education, vocational history, transferable skills, attributes and abilities, physical ability, age and the availability of work in a given labor market relative to an individual's talents and abilities, etc. So earning capacity is both economic and non-economic in its scope.

**CONCLUSIONS:**

I have recently been provided another medical opinion from Dr. Carl Hasselman regarding Ms. Hunter's injury and surgery on her left foot. Dr. Hasselman states that if Ms. Hunter's surgery was performed in a timely fashion, she would have been off of work (meaning her construction job at the time of injury) for 3 months. After 2 months post op Ms. Hunter would be released to weight bearing status and physical therapy. Thus, Ms. Hunter would be able to perform alternate sedentary duty positions cited below 2 months post injury from the day of the fracture and surgery. With a loss of full pay of $4,327 monthly in her construction position at the time of injury and subtracting her possible alternate sedentary duty work possibilities cited below of $2,186, the monthly difference is $2,140. Multiplying this figure x 2 months = $4,282. This additional loss is reflected in my new conclusion calculations below.

Ms. Hunter earned an average of $51,926 over her last 4 full years of employment with the FAHS company (2011, 2012, 2013 and 2015). She also had the benefit of dental insurance with this company that she lost due to her injury of 5-16-16. Ms. Hunter also had to cash in her 401(k) valued at $9,000 to support herself after her injury.

I believe that the injury and associated medical conditions cited above would result in a loss of these above referenced wages since Ms. Hunter will not be able to pursue the career she has chosen.

The Social Security Administration United States Statistics show that as of 2013, a female of Ms. Hunter's age of 51 years 9 months at the time of her injury would expect to live 31.24 more years until the age of approximately 82 years old.

**Attorney Thomas Foley**
**November 26, 2018**
**Page - 9**
**Re:  Hunter v. Kennedy et al**

Ms. Hunter was working full time at age 51 years 9 months (51.75 years) old when she was injured on 5-16-16. The Social Security Administration states that individuals born after the year 1960 could expect to work until the age of 67 years old. At the age Ms. Hunter was injured she had a work life expectancy (per the U.S. Social Security Administration) of another 15.25 years up to age 67 years. However, in the current financial situation of our economy it is conceivable that individuals of Ms. Hunter's age would need to work beyond this SSA retirement age and up to age 70.

Ms. Hunter will stand to lose her annual lost wages of $51,926 over her work life expectancy up to age 67 ($51,926 x 15.25 years) = $791,871 or up to age 70 she would stand to lose $51,926 x 18.25 = $947,649.

Ms. Hunter does not have a high school diploma and does not have many additional employment skills outside of the construction field. Ms. Hunter, if she was able to return to employment most likely would only be able to perform a small number of unskilled or minimally skilled sedentary duty positions for her future employment. The United States Department of Labor and Statistics documents annual wages by job and geographical locale. As of the year 2016 this department produced statistics for the Binghamton, NY geographical locale. Some positions such as Electronic Assembler paying $29,290 annually, Information Clerk paying $27,960 annually and Cashier paying $21,480 annually are possible future positions for Ms. Hunter (See attached U.S. Dept. of Labor Wage Data Year 2016).  These positions pay an average annual wage of $26,243.

Ms. Hunter's most recent position paid a mean wage of $51,926 annually. If Ms. Hunter could someday return to work she stands to lose $25,683 ($51,926 - $26,243 = $25,683) annually due to her injury of 5-16-16. Ms. Hunter was 51 years and 9 months (51.75 years) old as of the day she was injured on 5-16-16.

In this scenario, Ms. Hunter has lost the annual wage of $25,683 up to age 67 or, more realistically, up to age 70 over the remaining years of her work life expectancy. This results in a wage loss of **$395,947 to $472,994** over Ms. Hunter's 15.25 years to 18.25 years of work life expectancy should she be able to return to work.

Of note is that these wage calculations are presented in present day dollar value and these wage calculations are not adjusted for inflation. These figures also do not consider annual increases in wages.

It is my opinion that Ms. Hunter has sustained the above cited current and future wage losses.

**Attorney Thomas Foley**
**November 26, 2018**
**Page - 10**
**Re:  Hunter v. Kennedy et al**

I present these opinions within a reasonable degree of vocational expertise certainty, and I reserve the right to review, analyze and comment on any additional documentation in this matter should developments warrant.

Sincerely,

Terence H. Walsh BA MSW CRC
Vocational Expert
PA Advocates Inc.

Enclosure:  U.S. Dept. of Wage Stats 2016

# ENCLOSURE #1

# US Department Of Labor Bureau of Wage Statistics

# May 2016 Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates

# Binghamton, NY

| Occupation title | Employment | Mean hourly wage | Annual mean wage |
|---|---|---|---|
| Electrical and Electronic Assemblers | 1060 | $14.08 | $29,290 |
| Receptionists and Information Clerks | 1010 | $13.44 | $27,960 |
| Cashiers | 2560 | $10.32 | $21,480 |

Desmond Elijah

# PA ADVOCATES INC.

Sean C. Hanahue, MA, CDMS, CRC, LPC, BCPC, ABVE/D
President-Director of Vocational Services

<u>Certified Expert Case Management</u>:
  *Civil Litigation
  *Medical Malpractice
  *Workers Compensation
  *Social Security Disability

**March 27, 2018**

**Attorney Thomas Foley**
**Foley Law Firm**
**538 Spruce St.**
**Suite 200**
**Scranton, PA 18501**

| | |
|---|---|
| **Re:** | **Hunter v. Kennedy et al** |
| **Plaintiff DOB:** | **8-19-64** |
| **Date of Loss:** | **5-16-16** |

## VOCATIONAL ASSESSMENT

Thank you for the referral of the above captioned matter.

This file was referred to Vocational Expert Mr. Terence H. Walsh BA MSW CRC of PA Advocates on 1-16-18 by Attorney Thomas Foley for the purpose of conducting a Vocational Assessment and Lost Wage Assessment regarding Ms. Margaret Hunter. The file was received and reviewed and contact was made with Attorney Foley's office to confirm the assignment.

Upon receipt of the case I immediately attempted to arrange to conduct a Vocational Interview with Ms. Margaret Hunter. This assessment was arranged to take place on 2-23-18. I traveled to Attorney Foley's office and interviewed Ms. Margaret Hunter on that date. I explained to Ms. Hunter that I would not have an ongoing client/counselor relationship with her, but that I would be conducting an assessment of her vocational and economic capabilities and a Lost Wage Assessment. She stated that she understood this. I presented her with my Professional Disclosure form and she read and did sign this form.

The assignment was to complete a vocational assessment, transferable skills analysis and to evaluate the impact of Ms. Hunter's physical abilities with regard to her current and future occupational and economic capabilities in the fields in which she was employed as well as related fields of work.

Accordingly, I was able to review available medical, financial and vocational documentation.

**Attorney Thomas Foley**
**March 27, 2018**
**Page - 2**
**Re: Hunter v. Kennedy et al**

In addition to my reviewing all available documentation during the course of my in person vocational assessment of Ms. Hunter, appropriate government resources and vocational materials have been utilized in developing this expert vocational opinion. Specifically, material utilized includes but is not limited to the PA Labor Force, the U.S. Dept. of Labor-Bureau of Wage Statistics, The Dictionary of Occupational Titles (DOT) and the O*Net.

## REVIEW OF RECORDS:

The following were records provided to me and reviewed by me in this case:

1. Plaintiff's Tax Records 2011-2015
2. Margaret Hunter's deposition 10-23-17
3. Medical Timeline notes
4. Medical Records and letters of Dr. Kelly Smith
5. Dr. Paul Medrek's Occupational Medicine Expert Opinion 5-22-17
6. Plaintiff's Workers Compensation Records
7. Plaintiff's Employment Records
8. Three Rivers Orthopedic Associates, Dr. Carl Hasselman's report of January 16, 2018
9. Moss Rehabilitation Records 2-2018
10. Health Source Chiropractic and Progressive Rehabilitation Records 2014, 2017
11. Dr. Grob's Evaluative Records
12. Ms. Hunter's 2016 Tax Records
13. Ms. Hunter's W-2 forms 2011 thru 2016
14. IME Report and Physical Capacities of Dr. Michael Wolk dated 3-20-2018.

## VOCATIONAL METHODOLOGY:

In developing my opinions within this assessment, I have utilized accepted vocational methodology which includes an in person vocational assessment, the completion of a Transferable Skills Analysis, utilization of vocational research material and my extensive review and evaluation of all available medical, vocational and financial documentation.

Documentation reviewed and resources utilized in developing this assessment are considered reliable and relevant information.

Vocational factors that are included in the assessment are an individual's education, work history, earnings history, general learning ability, transferable skills, and permanent employment status and labor market access.

Attorney Thomas Foley
March 27, 2018
Page - 3
Re:  Hunter v. Kennedy et al

### MECHANISM OF INJURY:

Ms. Hunter was an employee of Fahs Construction when she was involved in a fall from a ladder that kicked out from underneath her and she fell to the ground roughly 7-8 feet. She injured her right foot and also fractured her left foot. She was transported after her fall to a walk in clinic associated with Pocono Medical Center and was seen by Dr. Obeng. X-rays showed that she suffered a left foot sprain. She was given crutches and an air cast and told not to weight bear on the left foot and advised to follow up in one week. She followed up in one week and no x-rays were taken. Dr. Obeng advised her to start weight bearing. Ms. Hunter noticed a bruise down the bottom of her left foot, from the ball of the foot to the heel. Walking was extremely painful for Ms. Hunter.

Subsequent follow up with Dr. Obeng led to x-rays. The x-rays were not immediately reviewed and physical therapy was arranged. Ms. Hunter left the clinic and was called later that day and advised that she did in fact have a fracture and that she should perform no weight bearing. Given the distance from her home to the clinic she then went to Wilson Hospital Emergency Room in Binghamton, New York, which is closer to her home. The physician there knew immediately that there was a fracture based on the bruising pattern at the bottom of her foot. Podiatry was consulted and a CT scan was performed. Ms. Hunter followed up with the Podiatrist, Dr. Kelly Smith of the Foot Care Center and her foot was eventually casted. She was told it was too late for the usual fracture reduction procedure and that she would likely need rods and an external fixator in the foot.

### CURRENT MEDICAL HISTORY/MEDICAL STATUS:

Currently, she experiences extreme pain in the bottom of the left foot and up into her leg. Ms. Hunter "tires out" due to her injuries. She experiences numbness in both legs and feet bilaterally. She experiences this numbness "almost all of the time" in both legs. The pain that she experiences each day is up to a level "10" on its worst day. She takes Ibuprofen for pain. Walking and standing on her feet causes swelling and Ms. Hunter needs to elevate her feet until her feet "feel better."

Ms. Hunter can walk about 15 minutes before she needs to rest and elevate her legs. She thinks that after 5-10 minutes she can resume her walking activities. Ms. Hunter cannot run currently. She cannot crouch, bending is difficult and crawling is limited to "very little" if any. Ms. Hunter has trouble being on her feet for cooking and being on her feet for cleaning at her house.

Ms. Hunter has trouble attempting to play golf and volleyball due to her condition. Ms. Hunter also has difficulty playing with her grandchildren.

Attorney Thomas Foley
March 27, 2018
Page - 4
Re: Hunter v. Kennedy et al

Her work in her yard is limited to how long Ms. Hunter can stand to perform yardwork and how much she can do physically. Ms. Hunter can do laundry but needs help with grocery shopping at present.

Ms. Hunter currently does not see a physician for the injury. She has seen a chiropractor for back pain. She last saw Dr. Kelly Smith in November of 2017 and she was released from this doctor's care at that time.

**OVERVIEW:**

Ms. Hunter is a married, 53 year old Caucasian female and a United States citizen born on 8-19-64. She has 2 children and 7 grandchildren. Currently, she is covered by Fidelis Health/State of New York Insurance.

Ms. Hunter's cell phone number is 607 765-4889 and her house phone number she can be reached at is 607 467-2541. She lives at 84 Latham Rd., Deposit, NY 13754. She lives with her husband and her son.

Ms. Hunter is in possession of a valid New York Driver's License, which is a Class D license with glasses restrictions, and with no endorsements, and it is valid through 2025.

**EDUCATIONAL/TRAINING HISTORY**

1. **Deposit Central High School, Deposit, NY.** She attended but did not graduate from this school, having left school in the 9th grade in 1980. She left this school as she was engaged to be married to her current husband and had to move to North Carolina. She played field hockey, volleyball, softball and basketball in high school. She was not involved in any other extracurriculars while in high school. She was a "C" student there.

She is a certified Concrete Field Testing Technician in Pennsylvania. She is also certified by the state of New York to be a flagger and is certified to certify others in flagging. Ms. Hunter is also certified to train others in work zone traffic control competency, and to be a Supervisor in this field.

Ms. Hunter described no other formal education/training.

Attorney Thomas Foley
March 27, 2018
Page - 5
Re: Hunter v. Kennedy et al

Ms. Hunter described her reading abilities as "fair", writing as "good", spelling abilities as "terrible" and her math as "good."  She does not speak, read or write any other languages.

## MILITARY HISTORY:

She described no military service history.

## VOCATIONAL HISTORY:

1. **FAHS Construction Group,** Binghamton, NY, 1993-2016-Job, Title: Laborer/Traffic/Concrete Field Tester-she ran equipment such as a Backhoe, Dump Truck, Loader, Roller, Yuke Truck and Track Loader. She cannot drive these clutch vehicles currently due to her injury. She is certified to perform Concrete Field Testing. As of 11-21-2015 Ms. Hunter is certified by the State of Pennsylvania Department of Transportation as a certified Concrete Field Testing Technician. This certification is still intact as of the date of this evaluation. This work involves filling up containers with concrete and testing them. She needs to be able to lift and carry 50-70 lbs. in this work. She is capable of lifting and carrying up to 20 lbs. currently in her own mind. She was provided shares in the company as part of her income. She was employed for 3 weeks prior to the accident and her duties involved laying out a work chart for concrete cylinders. She ran a machine that broke up the concrete compression. She never used a computer in any of the work for FAHS. She was non-unionized for this company. She had dental insurance but no medical insurance in this company. She had a 401(k) with this company. She was paid for and she worked up to 50 hours per week. She thinks her wage was $38.00 per hour and 1.5 times this amount for overtime. She never used a computer in any of the work for FAHS. She had to take the money out of her 401(k) after her injury to live on. She thinks it was worth $9,000.

2. **Landcaster Development,** Deposit, NY 1989-92, Job Title; Flagger-She was a road flagger. She stood for up to 12 hours at one time in this job.

In her past work history, Ms. Hunter was a factory worker-book assembler. This was a heavy duty type of job.

Ms. Hunter described no other types of employment in the past.

**Attorney Thomas Foley**
**March 27, 2018**
**Page - 6**
**Re: Hunter v. Kennedy et al**

**TRANSFERABLE SKILLS ANALYSIS:**

As is customary with each vocational assessment, a transferable skills analysis was completed on behalf of Ms. Hunter. A Vocational Assessment of Residual Employability (VDARE) was utilized in developing the transferable skills analysis.

Resource materials utilized included the Dictionary of Occupational Titles and ONET. The following findings were developed during the course of the transferable skills analysis.

The transferable skills analysis was produced through an evaluation of Ms. Hunter. Her position of a Heavy Equipment Operator most closely be defined by the Dictionary of Occupational Titles as:

CODE: **859.683-010**
TITLE(s): **OPERATING ENGINEER (construction; mine & quarry) alternate titles: heavy-equipment** operator Operates several types of power construction equipment, such as compressors, pumps, hoists, derricks, cranes, shovels, tractors, scrapers, or motor graders, to excavate, move, and grade earth, erect structural and reinforcing steel, and pour concrete or other hard surface paving materials: Turns valves to control air and water output of compressors and pumps. Adjusts hand wheels and depresses pedals to drive machines and control attachments, such as blades, buckets, scrapers, and swing booms. Repairs and maintains equipment. May operate machinery on sales lot or customer's property to demonstrate saleable features of construction equipment and be designated Demonstrator, Construction Equipment (wholesale tr.).
**GOE: 05.11.01 STRENGTH: M GED: R3 M1 L2 SVP: 6 DLU: 82**

Her position of a Construction Flagger is most closely be defined by the Dictionary of Occupational Titles as:

CODE: **372.667-022**
TITLE(s): **FLAGGER (construction) alternate titles: traffic control signaler**

Controls movement of vehicular traffic through construction projects: Discusses traffic routing plans, and type and location of control points with superior. Distributes traffic control signs and markers along site in designated pattern. Directs movement of traffic through site, using sign, hand, and flag signals. Warns construction workers when approaching vehicle fails to heed signals to prevent accident and injury to workers. Informs drivers of detour routes through construction sites. Records license number of traffic control violators for police. May give hand marker to last driver in line up of one-way traffic for

**Attorney Thomas Foley**
**March 27, 2018**
**Page - 7**
**Re: Hunter v. Kennedy et al**

FLAGGER (construction) at opposite end of site, signaling clearance for reverse flow of traffic.
**GOE: 05.12.20 STRENGTH: L GED: R2 M1 L2 SVP: 2 DLU: 77**

Ms. Hunter's general education development (GED) was also evaluated within the transferable skills analysis. The GED level embraces those aspects of education both formal and informal, which are required of a worker for satisfactory performance. The GED scale is composed of three divisions including reasoning development, mathematical development, and language development. Ms. Hunter has experienced a level GED development which is considered medium at level 3 with regard to reasoning and a medium/low GED level with regard to language and math at level 2 and 1 respectively.

An SVP Level of 6 requires more than 12 months and up to 2 years of experience to achieve average knowledge, to learn the techniques, acquire the information and develop the ability to perform the position at an average level.

I have also evaluated Ms. Hunter's work history with regard to physical demands. Ms. Hunter's work history involves medium duty work involving lifting and carrying, walking, standing, driving and sitting.

Ms. Hunter's past work experience has also involved occasional to frequent reaching and handling.

**SKILLS/HOBBIES:**

Currently, Ms. Hunter is able to sew. She makes blankets on a sewing machine. She cannot do many of the hobbies she did previously such as sports with the kids and grandkids both.

She has a computer at her house and she gets on the Internet and she does e-mail. She can text and she gets the Internet on her phone. She is not capable of doing Excel, PowerPoint, Photoshop or any other types of computer programs.

**FINANCIAL:**

Ms. Hunter has Workers Comp benefits in New York state and she receives $978 weekly income. Mr. Hunter is a full time logger and he has his own business. He cuts trees and sells them to saw mills.

Ms. Hunter described no other personal forms of income at all.

Attorney Thomas Foley
March 27, 2018
Page - 8
Re: Hunter v. Kennedy et al

**IMPRESSIONS:**

Ms. Hunter was pleasant and cooperative throughout the interview. She was communicative and engaging.

**EARNING CAPACITY:**

Earning Capacity is defined as the level of income which an individual may reasonably be expected to earn from work given one's level of education, vocational history, transferable skills, attributes and abilities, physical ability, age and the availability of work in a given labor market relative to an individual's talents and abilities, etc. So earning capacity is both economic and non-economic in its scope.

**CONCLUSIONS:**

It is my opinion that based on all of the information I have reviewed and my vocational interview with Ms. Hunter that Ms. Hunter is not capable of resuming her duties of a Laborer/Heavy Equipment Driver/Flagger/Concrete Field Tester at FAHS Construction or at Landcaster Development.

Ms. Hunter earned an average of $46,018 over her last 4 full years of employment with the FAHS company (2011, 2012, 2013 and 2015). She also had the benefit of dental insurance with this company that she lost due to her injury of 5-16-16. Ms. Hunter also had to cash in her 401(k) valued at $9,000 to support herself after her injury.

I believe that the injury and associated medical conditions cited above would result in a loss of these above referenced wages since Ms. Hunter will not be able to pursue the career she has chosen.

The Social Security Administration United States statistics show that as of 2013, a female of Ms. Hunter's age of 51 years 9 months at the time of her injury would expect to live 31.24 more years until the age of approximately 82 years old.

Ms. Hunter was working full time at age 51 years 9 months (51.75 years) old when she was injured on 5-16-16. The Social Security Administration states that individuals born after the year 1960 could expect to work until the age of 67 years old. At the age Ms. Hunter was injured she had a work life expectancy (per the US Social Security Administration) of another 15.25 years up to age 67 years. However, in the current financial situation of our economy it is conceivable that individuals of Ms. Hunter's age would need to work beyond this SSA retirement age and up to age 70.

**Attorney Thomas Foley**
**March 27, 2018**
**Page - 9**
**Re: Hunter v. Kennedy et al**

Ms. Hunter will stand to lose her annual lost wages of $46,018 over her work life expectancy up to age 67 ($46,018 x 15.25 years) = $701,774 or up to age 70 she would stand to lose $46,018 x 18.25 = $839,828.

Ms. Hunter does not have a high school diploma and does not have many additional employment skills outside of the construction field. Ms. Hunter, if she was able to return to employment most likely would only be able to perform a small number of unskilled or minimally skilled sedentary duty positions for her future employment. The United States Department of Labor and Statistics documents annual wages by job and geographical locale. As of the year 2016 this department produced statistics for the Binghamton, NY geographical locale. Some positions such as Electronic Assembler paying $29,290 annually, Information Clerk paying $27,960 annually and Cashier paying $21,480 annually are possible future positions for Ms. Hunter (See Attached U.S. Dept. of Labor wage data year 2016) These positions pay an average annual wage of $26,243.

Ms. Hunter's most recent position paid a mean wage of $46,018 annually. If Ms. Hunter could someday return to work she stands to lose $19,774 ($46,018 - $26,243 = $19,774) annually due to her injury of 5-16-16. Ms. Hunter was 51 years and 9 months (51.75 years) old as of the day she was injured on 5-16-16.

In this scenario, Ms. Hunter has lost the annual wage of $19,774 up to age 67 or- more realistically-up to age 70 over the remaining years of her work life expectancy. This results in a wage loss of $301,563 to $360,875 over Ms. Hunter's 15.25 years to 18.25 years of work life expectancy should she be able to return to work.

Of note is that these wage calculations are presented in present day dollar value and these wage calculations are not adjusted for inflation. These figures also do not consider annual increases in wages.

It is my opinion that Ms. Hunter has sustained the above cited current and future wage losses.

I present these opinions within a reasonable degree of vocational expertise certainty, and I reserve the right to review and comment on any additional documentation in this matter should developments warrant.

Sincerely,

Terence H. Walsh BA MSW CRC
Vocational Expert
PA Advocates

# ENCLOSURE #1

# US Department Of Labor Bureau of Wage Statistics

# May 2016 Metropolitan and Nonmetropolitan Area Occupational Employment and Wage Estimates

# Binghamton, NY

| Occupation title | Employment | Mean hourly wage | Annual mean wage |
|---|---|---|---|
| Electrical and Electronic Assemblers | 1060 | $14.08 | $29,290 |
| Receptionists and Information Clerks | 1010 | $13.44 | $27,960 |
| Cashiers | 2560 | $10.32 | $21,480 |

Desmond Elijah

# PA ADVOCATES INC.

Sean C. Hanahue, MA, CDMS, CRC, LPC, BCPC, ABVE/D
Board Certified Vocational Expert
President-Director of Vocational Services

Certified Expert Case Management:
  *Civil Litigation
  *Medical Malpractice
  *Workers Compensation
  *Social Security Disability

**February 7, 2019**

**Attorney Thomas Foley Jr.**
**Foley Law Firm**
**538 Spruce St.**
**Suite 200**
**Scranton, PA 18501**

| | |
|---|---|
| **Re:** | **Margaret Hunter** |
| **Plaintiff DOB:** | **08-19-64** |
| **Date of Loss:** | **05-16-16** |

## ADDENDUM REPORT

I am in receipt of Vocational Evaluation reports completed by Mr. Terry P. Leslie dated July 10, 2018, August 17, 2018 and October 12, 2018. Additionally, I received and reviewed a return to work letter from Catalyst and one from Solomon Group. These letters refer to a job possibility for Ms. Hunter that pays $9.00 per hour when the minimum wage under the laws of the state of New York is $10.40/hr.

Ms. Hunter started a new employment position the week of January 11, 2019 that pays $10.40/hr. This information confirms my belief that Ms. Hunter is fit for an entry level type position only with her background, skill level and injury.

Having reviewed all of this information above, my opinions have not changed from my conclusions contained in my March 27, 2018 Vocational Assessment report.

Sincerely,

Terence H. Walsh BA MSW CRC
Vocational Expert
PA Advocates Inc.

6 Skyline Drive E. – Suite 200
South Abington Township, PA 18411-9097
Phone: (570) 586-3734  or  (570) 587-7042   Fax: (570) 586-8608
Email: paadvocates@aol.com