*Defense Medical Examination Attendance Report Summary*

Margaret Hunter

Wednesday, December 20, 2017 at 10:00am

Dr. Edward Zurad

On Wednesday, December 20, 2017, I accompanied, Margaret Hunter to her 10:00am scheduled defense medical examination with Dr. Edward Zurad located at 71 Hollow Crest Road, Tunkhannock, PA. The following is a summary of the evaluation.

**Arrival:** I arrived at the office at 9:50am and Margaret was already present in the waiting room upon arrival. Margaret was filling out forms in which I reviewed, and she had only completed demographic information and some information related to her reason for evaluation. At 9:57am, a defense attorney, Sarah Scarette arrived. At 10:00am, plaintiff attorney, Tom Foley arrived. Introductions were made. Dr. Zurad's nurse then came out and asked if Ms. Scarette wanted to meet with Dr. Zurad prior to the examination in which Ms. Scarette then left the waiting room for one minute from 10:11am to 10:12am and went back to the area where Dr. Zurad presumably was located. From then until approximately 10:17am, the attorneys discussed the paperwork that Ms. Hunter had completed which was reviewed by both attorneys. The nurse then shredded the paperwork per Attorney's Foley's direction and we all proceeded to the examination room.

**Examination Room:** At 10:18am, Dr. Zurad's nurse asked Ms. Hunter's age which she answered and the reason for her visit which was answered by the defense attorney. The nurse then obtained Ms. Hunter's vital signs. The nurse then printed a consent for the Independent Medical Examination. Both attorneys reviewed this document and Mr. Foley argued that it "went beyond treatment, and that the language used should be "Defense Medical Examination" versus "Independent Medical Examination" and he wrote in changes. Discussion between attorneys continued until approximately 10:29am. Ms. Scarette left the examination room and then returned at 10:31am stating that Dr. Zurad wanted the consent to be referenced as an Independent Medical Examination versus a Defense Medical Examination. They agreed that the examination via the consent could be documented as an "Independent Medical Examination as the request of the defendant" by 10:32am and Ms. Scarette reportedly made the changes and stepped back out of the examination room. At 10:33am, Mr. Foley stepped out of the examination room, and at Ms. Scarette returned at 10:34am and Mr. Foley followed shortly thereafter.

**Arrival of Dr. Zurad:** Dr. Zurad entered the examination room at 10:36am. Copies of the consent were provided to Ms. Scarette, Ms. Hunter and Mr. Foley. Dr. Zurad began his introduction and I asked for consent to begin the audio recording which all parties agreed. Dr. Zurad obtained Ms. Hunter's history, and this is available via the MP3 recording.

**Physical Examination:** Dr. Zurad requested that Ms. Hunter sit on the examination table at 10:49am and he began the physical examination portion. Dr. Zurad performed a head to toe examination. At 10:56am, Dr. Zurad asked Ms. Hunter to remove her shoes and socks and he left the room briefly for a pin. At 10:58am, Dr. Zurad began the examination of her feet. Dr. Zurad's examination discussion and findings are available on the MP3 recording. The physical

examination concluded at 11:04am.  Following, Dr. Zurad began asking additional questions of Ms. Hunter regarding her daily activities and functional ability.  This continued until 11:18am and is also available on the MP3 recording.

**Conclusion:**  At this time, all parties left the examination room.  Mr. Foley, Ms. Hunter and I exited out to the waiting area and then outside of the building and departed. Ms. Scarette remained behind.

Thank you for the opportunity to assist you with this matter.  If there are any questions, please contact me at (570) 840-1952 or by email at deana@dmkconsulting.net.

Respectfully submitted,

Deana M. Kilmer, MBA, MSN, CRNP, FNP-BC, CCM, CLCP