## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET T. HUNTER, and | : | Civil No. 3:17-CV-00007 |
| JOHN P. HUNTER, wife & husband, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD P. KENNEDY, M.D., *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court are four motions in limine filed by Defendants Pocono

Medical Center, Peter Obeng, M.D., Family Care Center, Inc., t/d/b/a PMC

Physician Associates and PMC Immediate Care Center (collectively, "PMC

Defendants" or "Defendants") seeking to preclude Plaintiffs from producing

certain evidence at trial.  (Docs. 141, 142, 144, 145.)  For the reasons that follow,

the motions will be denied.

### FACTUAL BACKGROUND[1]

On May 16, 2016, Plaintiff Margaret T. Hunter ("Plaintiff")[2] fell from a

ladder at her place of employment and injured her left foot.  Plaintiff's ankle

---

[1] The facts set forth in this brief background section are not in controversy.  Therefore, citations to the record have been omitted.

[2] Two plaintiffs are involved in this case, Margaret and John Hunter.  The main claim for medical negligence belongs to Margaret Hunter, whereas John Hunter has a derivative loss of consortium claim.  For the sake of convenience, and because she has the principal claim, the court will refer only to Plaintiff Margaret Hunter in this memorandum.

swelled, and she complained of extreme pain.  Her employer sent her to Defendant

PMC Immediate Care Center in Bartonsville, Pennsylvania, where Defendant Peter

Obeng, M.D. ("Dr. Obeng") examined her.  Dr. Obeng ordered x-rays of Plaintiff's

ankle, which were read by Defendant Richard P. Kennedy, M.D of Defendant

Monroe Radiology Imaging, P.C.   Plaintiff alleges that Defendants were negligent

in their examination and treatment of her injury in not recognizing that she had a

calcaneal fracture, that is a heel fracture.[3]  Her complaint seeks damages for pain

and suffering, loss of earnings, and loss of earning capacity.  The PMC Defendants

filed four motions in limine, which have either been fully briefed or the time to

oppose the motions has expired.  (Docs. 141, 142, 144, 145, 192, 193, 194, 208.)

The court will address each motion in turn.

## STANDARD OF REVIEW

Prior to trial, courts may rule on motions in limine involving the

admissibility of evidence.  Such motions "narrow the evidentiary issues for trial

and . . . eliminate unnecessary trial interruptions."  *Bradley v. Pittsburgh Bd. of

Educ.*, 913 F.3d 1064, 1069 (3d Cir. 1990).

Generally, relevant evidence is admissible at trial.  Fed. R. Evid. 402.

Evidence is relevant if: "(a) it has any tendency to make a fact more or less

---

[3] Plaintiff had fractured her calcaneus or heel bone.  (Doc. 32, ¶ 38).  The parties, at times refer
to it as a fracture or break of the ankle, but this representation appears to be factually inaccurate.

probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  The court, however, may preclude relevant evidence from trial where its "probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403. "The Federal Rules of Evidence embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact."  *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 780 (3d Cir. 1996) (internal quotation marks and citation omitted).

Bearing these standards in mind, the court turns to the PMC Defendant's motions in limine, which the court will discuss in the order in which they were filed.

## DISCUSSION

### A. Motion in limine to preclude testimony of Carl Hasselman, M.D. (Doc. 141)[4]

Plaintiff has submitted the curriculum vitae and expert report of Carl Hasselman, M.D. ("Dr. Hasselman"), in support of her cause of action.  (Docs. 181-1, 181-2.)  Dr. Hasselman opines as to the timeframe Plaintiff would have

---

[4] The remaining defendants, Richard P. Kennedy, M.D. ("Dr. Kennedy") and Monroe Radiology Imaging, P.C., have moved to join in this motion.  (Doc. 180).  The joinder motion will be granted.

recovered and returned to work had she elected to have surgery.  (Doc. 181-2, p. 4.)[5]  The Defendants argue that Dr. Hasselman has not rendered his opinion with the degree of certainty required of an expert medical witness.  (Doc. 141, pp. 22–24.)  Thus, they move to preclude Dr. Hasselman's testimony.  (*Id.*)  After careful review, the court will deny the Defendants' motion.

Rule 702 of the Federal Rules of Evidence provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  Courts have described the function of the district court in determining whether to admit expert testimony as a "gatekeeping" one.  The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  Thus, "[t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Further, "[i]t is to make certain that an expert, whether basing testimony upon professional studies or personal experience,

---

[5] For ease of reference, the court utilizes the page number from the CM/ECF header.

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in a particular field." *Id.* Generally, medical experts must testify to a reasonable degree of medical certainty. *See Holbrook*, 80 F.3d at 785.

Defendants claim that Dr. Hasselman's testimony should be precluded because he does not provide an opinion with the requisite degree of certainty, that is, to a reasonable degree of medical certainty as opposed to mere speculation. (Doc. 141, pp. 22–24.) The court disagrees.

First, the court notes that several reports were drafted by Dr. Hasselman. In the main report he drafted in January 2018, he specifically states: "[I]t is my opinion within a reasonable degree of medical certainty, that the "*standard of care*" was not met in the care and treatment of [Plaintiff's] calcaneus fracture on the left foot." (Doc. 141, p. 17) (emphasis in original). Further at the end of the report, Dr. Hasselman notes: "I state all of the above within a reasonable degree of medical certainty." (*Id.* at 18.) Defendants do not object to this main report. Rather, Dr. Hasselman drafted a short supplemental report in November 2018 which they find objectionable. This supplement provides as follows:

> Assuming the surgery was performed in a timely fashion, she would be off work from the day of the fracture and for 3 months after the surgery. She would be non-weight bearing on that leg with strict elevation from the day of the fracture and for 2 months following surgery. At two months after the surgery I would allow her to full weight bear and begin Physical Therapy. My usual patient would be allowed to return to work in a light duty fashion then for 2 months and then resume medium to heavy manual labor.

(Doc. 181-2, p. 4.)

The court finds no reason to preclude Dr. Hassleman's testimony.  The doctor's opinion with regard to breaching the standard of care, as set forth in the main report, is explicitly provided "within a reasonable degree of medical certainty."  (Doc. 193-1, p. 3.)  The report at issue is merely a supplement to the original report.  While, the supplement does not explicitly state a degree of certainty, the court may infer that this supplement to the original report is provided with the same degree of certainty as the original report.  Moreover, the parties may question the witness regarding the degree of certainty at trial.  Therefore, based upon Dr. Hasselman's opinion as a whole, and the fact that the Defendants merely challenge a short supplemental report, the court will deny the motion in limine and Dr. Hasselman will not be precluded from testifying at trial.

## B. Motion in limine to preclude testimony of Paul Medrek, M.D. (Doc. 142)[6]

In support of her lawsuit, Plaintiff also submitted the curriculum vitae and expert reports of Paul Medrek, M.D. ("Dr. Medrek").  (Doc. 181-4.)  The Defendants seek to preclude Dr. Medrek's testimony.   Defendants set forth three arguments: (1) Dr. Medrek's opinions are based on a "negligent documentation" cause of action which is not recognized in Pennsylvania; (2) Dr. Medrek provides

---

[6] The remaining Defendants, Richard P. Kennedy, M.D. and Monroe Radiology Imaging, P.C., have moved to join in this motion.  (Doc. 179).  The joinder motion will be granted.

speculative opinions; and (3) Dr. Medrek inappropriately adopted Kelly Ann Smith, D.P.M.'s expert opinions.  (Doc. 142, pp. 89–93.)  The court finds no merit to Defendants' arguments.

First, Defendants argue that Dr. Medrek's testimony advances or supports a "negligent documentation" theory of medical malpractice, which is not cognizable under Pennsylvania law.[7]  (Doc. 142, pp. 89–91.)  Neither the PMC Defendants' motion, nor their brief, provides any citation to law for this proposition.  (*See* Doc. 142.)  Even if Defendants' statement of the law regarding "negligent documentation" claim is correct, the court finds that this assertion does not justify precluding the evidence.  Failure to properly document the treatment of the patient, even if it is not a cause of action in and of itself, may certainly go toward establishing a breach of the relevant standard of care.  *See, e.g.*, *Green v. Dolsky,* 685 A.2d 110, 118 (Pa. 1996) (indicating that failure to maintain proper medical records is a permissible medical malpractice claim).

Second, the PMC Defendants argue that Dr. Medrek's opinions are speculative.  (Doc. 142, pp. 91–92.)  The court again disagrees.  A review of the record and Dr. Medrek's reports reveal that he has provided sufficient certainty for

---

[7] It is unclear, and appears doubtful, that Plaintiffs are seeking to proceed solely on a "negligent documentation" theory.  Rather, the failure to properly document is only a part of the facts that make up the medical malpractice claim.  Regardless, whether a cause of action exists under Pennsylvania law is not an evidentiary issue.  It is a legal issue, which is an inappropriate topic for a motion in limine.

his opinions.  He indicates that he reviewed the medical records and has provided

his opinions "to a reasonable degree of medical certainty."  (Doc. 181-4.)  If at trial

he does not testify as to a reasonable degree of medical certainty, Defendants may

object.  However, no cause exists for precluding the evidence at this point.  Dr.

Medrek's opinions may best be challenged through vigorous cross examination or

presenting counter-evidence.

Lastly, the PMC Defendants complain that Dr. Medrek improperly relies

upon the opinion of another doctor, Dr. Kelly Smith ("Dr. Smith).  The court finds

no merit to this position.  Dr. Smith was one of Plaintiff's treating physicians and

Defendants have cited no authority to establish that it is objectionable that Dr.

Medrek relied on her records for the factual background of Plaintiff's treatment.

The court finds no merit to any of the Defendant's arguments regarding the

testimony of Dr. Medrek.  Accordingly, the motion in limine to preclude him from

testifying at trial will be denied.

### C. Motion in limine to preclude testimony of Guido A. LaPorta, DPM (Doc. 144)

Plaintiff has further produced the curriculum vitae of Guido A. LaPorta

("Dr. LaPorta"), Doctor of Podiatric Medicine.  (Doc. 181-14.)  Dr. LaPorta

provides opinions on the medical standard of care and causation.  (Doc. 181-15.)

Defendants contend that the issue in this case relates to emergency medical care

and Dr. LaPorta, as a podiatrist, is not qualified to render opinions as to emergency care. (Doc. 144, pp. 20–21.)

The PMC Defendants rely on Pennsylvania's Medical Care Availability and Reduction of Error Act ("MCARE") for the proposition that an expert must be board-certified in the "same or similar approved board" as the defendant. *See* 40 Pa. Stat. § 1303.512(c)(3). Here, Defendant Obeng specializes in Occupational Medicine, and evidently provided emergency care on the day in question, whereas Plaintiff's proposed expert, Dr. LaPorta, is a podiatrist. The court is not convinced by the PMC Defendants' argument. MCARE explicitly permits an expert to testify against a doctor of a different subspecialty if the two subspecialties have a "similar standard of care for the specific care at issue." 40 Pa. Stat. § 1303.512(c)(2). The issue of this case involves care of Plaintiff's foot. The PMC Defendants have presented no evidence that the standard of care with regard to Plaintiff's foot would be different for Defendant Obeng or a podiatrist, and, in fact, such a finding would be counterintuitive. Moreover, the PMC Defendants have presented their own podiatric experts, Joseph Daley, D.P.M. ("Dr. Daley") and Dr. Keith Wapner, M.D. ("Dr. Wapner"). According to Plaintiff, Dr. LaPorta is listed merely as a rebuttal witness to these two doctors.

The court finds no reason to preclude Dr. LaPorta's testimony. He is a podiatrist and he opines that Defendants Obeng and Kennedy misdiagnosed

Plaintiff and provided improper treatment with regard to her foot, which is clearly within his area of expertise. (Doc. 181-15.)  Dr. LaPorta also indicates that he disagrees with, and can possibly rebut, defense experts Dr. Daley and Dr. Wapner, who will testify as to podiatric care.   Accordingly, the court will deny this motion in limine.

### D. Motion in limine to preclude cumulative opinions of the Plaintiff's experts (Doc. 145)

In discovery, Plaintiff presented reports from two podiatrists, Dr. LaPorta and Dr. Smith.  (Doc. 181-15; Doc. 181-6.)  The PMC Defendants seek to preclude one of these experts from testifying, as the evidence provided would be unnecessarily cumulative.  The law provides that the court may preclude relevant evidence if its probative value is substantially outweighed by "needlessly presenting cumulative evidence."   Fed. R. Evid. 403.

Plaintiff has not filed a brief in opposition to this motion.  A review of Plaintiff's pretrial brief, however, reveals that there is a difference between the testimonies of Dr. LaPorta and Dr. Smith.  Dr. Smith was Plaintiff's treating podiatrist.  (Doc. 181, p. 10.)  Dr. LaPorta is a retained expert who Plaintiff might use to rebut the testimony of two of Defendants' expert witnesses.  (*Id.* at 16.) Due to the different status of these witnesses, one a treating expert witness and one a retained expert to be used for rebuttal, the court finds that this evidence will not be merely cumulative evidence, and the court will deny this motion in limine.

## CONCLUSION

For the reasons stated herein, the PMC Defendants have not provided any reason to preclude the evidence that Plaintiff seeks to present at trial.  Accordingly, their motions in limine will be denied.  An appropriate order will issue.


<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  July 14, 2020