**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARGARET T. HUNTER, and JOHN P. HUNTER, wife and husband, | : : : | Civil No. 3:17-CV-00007 |
| Plaintiffs, | : : | |
| v. | : : | |
| RICHARD P. KENNEDY, M.D., *et al.*, | : : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court are Plaintiff Margaret T. Hunter and John P. Hunter's nineteen motions in limine.  (Docs. 138–140, 143, 146–160.)  For the reasons that follow, the court grants several of the motions and denies several of the motions.

### FACTUAL BACKGROUND[1]

This case involves allegations of medical malpractice.  (*See* Doc. 32.)  On May 16, 2016, while working as a laborer for a construction company, Plaintiff Margaret T. Hunter ("Plaintiff")[2] suffered an injury to her foot.  She fell while descending a ladder when the base of the ladder gave out.  She landed on her feet, and she rolled her left ankle.  Plaintiff's ankle swelled, and she complained of

---

[1] The facts set forth in this brief background section are not in controversy.  Therefore, citations to the record have been omitted.

[2] Two plaintiffs are involved in this case, Margaret and John Hunter.  The main claim for medical negligence belongs to Margaret Hunter, whereas John Hunter has a derivative loss of consortium claim.  For the sake of clarity, and because she has the principal claim, we will refer only to Plaintiff Margaret Hunter in this memorandum.

extreme pain.  Her employer sent her to Defendant PMC Immediate Care Center in Bartonsville, Pennsylvania, where Defendant Peter Obeng, M.D. ("Dr. Obeng") examined her.  Dr. Obeng ordered x-rays of Plaintiff's foot, which were read by Defendant Richard P. Kennedy, M.D. ("Dr. Kennedy").

Plaintiff alleges that Defendants were negligent in their examination and treatment of her foot injury in that they did not recognize that she had a fractured calcaneus, or heel bone.  The amended complaint names two sets of defendants. The first is the medical center she initially visited and the doctor who examined her there: Pocono Medical Center; Dr. Obeng; Family Care Centers, Inc. t/d/b/a PMC Physician Associates; and PMC Immediate Care Center (collectively, "the PMC Defendants").  The second set of defendants is comprised of the doctor who read her x-rays, Dr. Kennedy, and Monroe Radiology Imaging, P.C. (collectively, "MRI Defendants").  Plaintiff's amended complaint seeks damages for pain and suffering, loss of earnings and loss of earning capacity.  In advance of the pretrial conference, Plaintiff filed nineteen motions in limine, which have been fully briefed or the time to do so has expired.  (Docs. 138–140, 143, 146–160, 166–168, 170–176, 184–188, 196–199, 205–207, 209, 222, 223.)  The court will address each motion in turn.

## STANDARD OF REVIEW

Prior to trial, courts may rule on motions in limine involving the admissibility of evidence.  Such motions "narrow the evidentiary issues for trial and . . . eliminate unnecessary trial interruptions."  *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.3d 1064, 1069 (3d Cir. 1990).

Generally, relevant evidence is admissible at trial.  Fed. R. Evid. 402. Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  The court, however, may preclude relevant evidence from trial where its "probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403. "The Federal Rules of Evidence embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact."  *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 780 (3d Cir. 1996) (internal quotation marks and citation omitted).

Bearing these standards in mind, the court turns to Plaintiff's motions in limine, which the court will discuss in the order in which they were filed.

## A. Motion to preclude cumulative opinions of Defendants' purported experts (Doc. 138)

Defendants identified several expert witnesses they intend to use in their defense at trial. These experts include: Joseph Daley, DPM ("Dr. Daley"); Keith Wapner, M.D. ("Dr. Wapner"); Edward Zurad, M.D. "(Dr. Zurad"); and Robert Mauthe, M.D. ("Dr. Mauthe"). (Doc. 138.) Dr. Wapner and Dr. Daley are experts in foot surgery, and Dr. Zurad and Dr. Mauthe are experts in physical and occupational medicine. (Doc. 138, ¶ 33.) Plaintiff seeks to preclude two of these witnesses on the basis that having two experts on each topic is needlessly cumulative. (*Id.* ¶ 32–33.) In other words, Plaintiff seeks to limit Defendants jointly to one expert foot surgeon and one expert in physical and occupational medicine. Defendants oppose the motion. (*See* Doc. 196.)

As noted above, Federal Rule of Evidence 403 allows for the exclusion of needlessly cumulative evidence. Defendants' position is that the expert witnesses are not cumulative, although a certain amount of overlap will necessarily occur. (Doc. 196, pp. 10–12.)[3] Dr. Daley is a board-certified podiatrist and Dr. Wapner is a board-certified orthopedic surgeon. Dr. Zurad is board-certified in family medicine with a focus on geriatric and occupational medicine, and Dr. Mauthe is board-certified in physical medicine and rehabilitation. (*Id.* at 11.) Each of the

---

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

experts will address causation issues from the perspective of their respective specialties. (*Id.*) Defendants also point out that Plaintiff herself has identified four expert witnesses. (*Id.* at 12.)

After careful review, the court finds it unnecessary to rule that these witnesses cannot testify at trial. The court accepts at this juncture that the testimony of these witnesses will not be unduly cumulative, especially in light of the fact that Plaintiff has the same number of witnesses. If, however, at trial, it appears that the testimony is cumulative, it may be limited at that time pursuant to Rule 403. Accordingly, this motion in limine will be denied.

### B. Motion to preclude reference to Dr. Michael Wolk (Doc. 139)

Plaintiff retained Dr. Michael Wolk as an expert witness regarding the injury she sustained. He produced two expert reports, which Plaintiff served on all parties. (Doc. 139-3, 139-4.) Several of Defendants' witnesses relied upon Dr. Wolk's report in producing their expert reports. (Doc. 139, ¶ 12.) Plaintiff moves to preclude her own expert from testifying and to preclude the Defendants' experts from referencing Dr. Wolk or his reports. (*See* Doc. 139.) The parties agree that Pennsylvania law applies to this issue. (*See* Doc. 139; 196, pp. 12–13.)

Plaintiff's position has several layers. First, she claims that Dr. Wolk has a right not to testify. (Doc. 139, ¶¶ 13–15.) If he does not testify, then his reports are inadmissible hearsay. (*Id.* ¶ 16.) Further, Defendants are not entitled to his

reports as they are covered by the work product privilege and are not discoverable. (*Id.* ¶¶ 17–27.)  Defendants, however, point out that the reports have already been provided to them.  (Doc. 196, pp. 12–13.)  Thus, Plaintiff has waived any work product privilege.  (*Id.*)  Their experts relied on the reports in developing their opinions.  (*Id.*)  They are allowed to rely on such matters, and thus, to the extent their experts relied upon them, they can testify regarding them.  (*Id.*)  After a careful review, we agree with Defendants.

The parties agree that Dr. Wolk has a right to not testify, and we concur.  *See Boucher v. Pa. Hosp.*, 831 A.2d 623, 632 (Pa. Super. Ct. 2003) ("We are mindful of the rule expressed and applied by the courts of this Commonwealth that one party may not compel an expert for the opposing party to divulge his expert opinion.  Thus, one party may not subpoena the testimony of an expert for another party.")  The question then becomes whether Dr. Wolk's reports are covered by the work product privilege and are not discoverable.  This issue, however, is moot as Plaintiff has already provided the reports to the defense.  "[T]he work product doctrine is waived when the work product is shared with an adversary or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it."  *Bousamra v. Excela Health*, 210 A.3d 967, 978 (Pa. 2019).  It is undisputed here that Plaintiff has already provided the reports to Defendants, thus Plaintiff has waived the work product privilege regarding Dr.

Wolk's reports.  The *Boucher* court indicated: "Moreover, it often will be within the control of the party who retained the expert—to whom the expert provided his report and from whom the expert presumably received compensation—to avoid the issue entirely through judicious disclosure of any expert reports to experts who may be called to testify."  *Boucher*, 831 A.2d at 632.

The defense experts relied upon these reports, and thus, the issue becomes whether the experts can testify regarding the reports or whether the reports are inadmissible hearsay.  The law provides that:

> It is well-established that an expert may express an opinion which is based on material not in evidence, including other expert opinion, where such material is of a type customarily relied on by experts in his or her profession.  *Collins v. Cooper*, 746 A.2d 615, 618 (Pa. Super. 2000); *Primavera v. Celotex Corp.*, 415 Pa. Super. 41, 608 A.2d 515 (1992).  Such material may be disclosed at trial even though it might otherwise be hearsay (e.g., where the material is the opinion of a treating physician or other expert and that expert does not testify).  Such hearsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness: "The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes."  *Primavera*, 608 A.2d at 520.

*Boucher*, 831 A.2d at 628.

Thus, the reports at issue are not hearsay to the extent that the defense experts relied upon them in formulating their opinions.  Accordingly, the court finds that Plaintiff has waived any privilege with regard to Dr. Wolk's expert

reports and Defendants' experts may refer to Wolk's reports to the extent that they relied upon them.[4]  Plaintiff's motion in limine will be denied.

### C. Motion to preclude evidence regarding whether Plaintiff set up the ladder (Doc. 140)

This case alleges medical malpractice regarding treatment of Plaintiff's injured foot, which she injured by falling off a ladder.  The alleged facts surrounding the fall are as follows:  Plaintiff, a laborer, was on a worksite where her job was to assist a foreman load a container onto a forklift, which required her to climb up onto the container.  (Doc. 140, ¶ 6.)  She placed a ladder against the container in order to climb on top of it, and successfully did so.  (*Id.* ¶ 7.)  While on top of the container, she had to move the ladder – moving it from the top and hitting it into the ground to make sure it was secure.  (*Id.*)  In descending, she fell seven or eight feet to the ground, and sustained the injury at issue in this case.  (*Id.*)  Plaintiff seeks to preclude evidence of the manner in which the fall occurred.  (*Id.* ¶ 8.)  Specifically, she does not want the fact that she moved the ladder after climbing it to the top of the container mentioned at trial.  (*Id.*)  Plaintiff alleges that this evidence is irrelevant, prejudicial, and will confuse the issues.  (*Id.* ¶¶ 8–14.)  Additionally, the cause of the accident is not at issue in this case.  (*Id.* ¶ 9.)  Rather,

---

[4] The MRI Defendants indicate in their brief that an adverse inference charge may be sought if Plaintiff does not present Dr. Wolk's testimony at trial.  They indicate, however, that it would be premature to address this issue now; therefore, the court will not rule on this issue at this time.

it is the treatment that Plaintiff received after the incident which is the subject of this lawsuit.  (*Id.* ¶¶ 11–14.)

Defendants, on the other hand, argue that the evidence is relevant.  (Doc. 196, pp. 13–15.)  Without an explanation of the manner in which the accident happened, they assert, it would be impossible for them to explain the reasoning for the doctors' course of action.  (*Id.*)

After a careful review, we find merit to Plaintiff's motion.  As set forth above, the Federal Rules of Evidence generally provide that relevant evidence is admissible at trial.  Fed. R. Evid. 402.  "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action."  *Id.*  Relevant evidence may be precluded from the trial, however, if its probative value is outweighed by the danger of unfair prejudice, potential to mislead the jury, the danger of needlessly presenting cumulative evidence, prospective to confuse the issues or the possibility of under delay or waste of time.  FED. R. EVID. 403.  Here, Plaintiff's actions in setting up or re-adjusting the ladder are not an issue in the case.  The issue is not whether it was the Plaintiff's fault that she fell, but whether Defendants negligently treated her injury.  The accident can be explained without any reference to the fact that Plaintiff set the ladder up herself at the work site, and specifically, that she moved it from her position atop the container.  Such evidence would tend to

demonstrate contributory negligence on her behalf in causing the fall, which is not
an issue in this medical malpractice case and would be confusing to the jury and
unduly prejudicial.  Accordingly, Plaintiff's motion will be granted to the extent
that the parties may not submit evidence as to Plaintiff moving the ladder from
atop the container.

### D. Plaintiff's motion in limine to preclude Defendants from offering testimony on the standard of care or Plaintiff's intervening negligent acts or comparative fault (Doc. 143)

Plaintiff deposed Dr. Kennedy in September 2017.  (Doc. 204.)  Plaintiff's
counsel indicates that he asked Dr. Kennedy about the "standard of care" of a
radiologist and defense counsel directed Dr. Kennedy not to answer.  (Doc. 143,
¶¶ 1, 4.)  Plaintiff argues that Defendants should not be permitted to elicit
testimony from Dr. Kennedy, or any expert regarding the standard of care of a
radiologist.  (*Id.* ¶ 5.)  Similarly, Plaintiff argues Dr. Kennedy's counsel directed
him not to answer questions regarding whether Plaintiff may have been negligent
or responsible for her own harm and intervening negligent acts.  (*Id.* ¶ 8.)

Defendants argue that the evidence should not be precluded.  (Doc. 196, pp.
15–17.)  First, he argues that rather than being asked about the standard of care
generally, he was asked whether his co-defendant, Dr. Obeng, violated the standard
of care and it was appropriate not to answer such a question.  (*Id.* at 16.)  The court
agrees with regard to questions about Dr. Obeng.  A review of the deposition

transcript reveals that Plaintiff's counsel asked Dr. Kennedy about whether Dr.

Obeng violated the standard of care.  For example, he asked: "In your opinion, are

you contending that on May 31 Dr. Obeng deviated from the standard of care when

he released Margaret Hunter back to work without waiting for the results of her X-

rays?"  (Doc. 204, p. 16.)  Defense counsel directed Dr. Kennedy not to answer.

(*Id.*)  The law provides that a defendant in a malpractice action cannot be

compelled to opine on whether a co-defendant committed negligence.  *Jistarri v.*

*Nappi*, 549 A.2d 210, 218 (Pa. Super. Ct. 1988).  The fact that Dr. Kennedy

properly refused to answer the question regarding whether Dr. Obeng violated the

standard of care does not provide a basis to preclude standard of care testimony

generally.

The questioning proceeded at the deposition, and despite Defendants' claim

to the contrary, Plaintiff's counsel asked Dr. Kennedy the standard of care

regarding radiologists.  (Doc. 204, p. 16.)  Defense counsel instructed Dr. Kennedy

not to answer, and he did not.  (*Id.*)  Because he did not answer the question at the

deposition, Plaintiff argues that Dr. Kennedy cannot testify as to the radiology

standard of care at trial.  (Doc. 143, ¶ 5.)  After a careful review, the court agrees.

A physician defendant may generally testify as an expert witness at his own

trial, even without providing an expert report.   The Pennsylvania Superior Court

has explained:

> Our court has held that a physician who is also a defendant may testify as a fact witness on his own behalf without the filing of an expert's report.  Fact testimony may include opinion or inferences so long as those opinions or inferences are rationally based on the witness's perceptions and helpful to a clear understanding of his or her testimony.  Additionally, an expert may base his or her opinion on facts learned by listening to testimony at trial.

*Brady v. Ballay, Thornton, Maloney, Med. Associates, Inc.*, 704 A.2d 1076, 1082

(Pa. Super. Ct. 1997) (internal citations omitted); *see also Lykes v. Yates*, 77 A.3d

27, 32 (Pa. Super. Ct. 2013).

Therefore, it appears that a testifying expert defendant who has not issued an

expert report may not testify as to the standard of care generally.  Because he has

not filed a report and because he did not discuss the standard of care at his

deposition, Dr. Kennedy will be precluded from discussing the standard of care at

trial.  He may, however, testify as to opinions or inferences rationally based upon

his perceptions.  This ruling does not affect whether Defendants' retained expert

witnesses can discuss the standard of care.

Additionally, at the deposition Plaintiff's counsel asked: "Is there something

you believe Margaret Hunter did or failed to do which caused or contributed to her

injuries after her fall of May 16, 2016?" (Doc. 204, p. 16.)  Dr. Kennedy's counsel

again instructed him not to answer, and the parties, at Plaintiff's counsel's request,

went off the record.  (*Id.*)  The attorneys picked up with a different topic after

being off the record for one minute.  (*Id.*)  Like the issue regarding standard of

care, Dr. Kennedy will be precluded from discussing Plaintiffs' contributory negligence at trial. This ruling, however, does not apply to other expert witnesses.

Accordingly, Plaintiff's motion will be granted as Dr. Kennedy refused to answer questions at his deposition calling for an expert opinion regarding the radiological standard of care and contributory/comparative negligence, and he will be precluded from providing such expert testimony at trial. Merely because Dr. Kennedy did not discuss these issues, however, does not warrant precluding Defendants from presenting evidence from other experts regarding standard of care or contributory negligence. Accordingly, the Plaintiff's motion will be granted in part and denied in part.[5]

---

[5] The MRI Defendants argue that Plaintiff's argument should be foreclosed because she never filed a motion to compel the deposition testimony regarding the questions Dr. Kennedy refused to answer. (Doc. 196, pp. 16–17.) In support of their position, they cite to a case from the Eastern District of Pennsylvania, *Birdline v. City of Coatesville*, 225 F.R.D. 157 (E.D. Pa. Aug. 11, 2004). The MRI Defendants are correct that the short order in *Birdline* does support their position that if an attorney instructs a witness not answer a question at a deposition, then the questioning attorney should file a motion to compel. This rule, however, does not appear to be rule generally applied to depositions or provided for in the Federal Rule of Civil Procedure. In fact, the Federal Rules of Civil Procedure provides that: "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Otherwise, when an objection is made to a question, the deponent should answer the question subject to a latter ruling on the objection. *Id.* At the time that the deposition at issue took place, however, Judge James M. Munley was assigned to this case. It had been Judge Munley's practice, in accordance with the Federal Rules of Civil Procedure, that when objections arose during depositions that the parties contact the court, so that the court could make a ruling and the deposition could proceed. If the court could not be reached, then the witness would be instructed to answer the question on the record and the court would review the objection at a later date and strike the answer from the deposition if necessary. No motions to compel were required and scarce judicial resources were saved by not having to deal with numerous motions to compel. In sum, the court will not penalize Plaintiff for failing to follow a rule imposed by a court in the Eastern District of Pennsylvania.

### E. Plaintiff's motion to preclude evidence related to worker's compensation benefits (Doc. 146)

Plaintiff moves to preclude evidence of workers' compensation, specifically, any records of the Pennsylvania Bureau of Workers' Compensation, the New York State Workers' Compensation Board, or the workers' compensation carrier's attempt to establish funded employment for the plaintiff.  (Doc. 146.)

Plaintiff relies upon the "collateral source" rule to preclude the evidence. (*Id.*)  The Third Circuit Court of Appeals has indicated that district courts apply the state's collateral source rule.  *Lomax v. Nationwide Mutual Ins. Co.*, 964 F.2d 1343, 1345 (3d Cir. 1992) (applying Delaware's collateral source rule).  The collateral source rule provides that evidence of a plaintiff's recovery for damages from a collateral source, such as worker's compensation, is generally inadmissible at trial.  *Gallagher v. Pa. Liquor Control Bd.*, 883 A.2d 550, 557 (Pa. 2005). However, exceptions exist to the general rule of inadmissibility if the evidence of the recovery is material to an issue in the case.  *Id.*

The PMC Defendants[6] argue that the worker's compensation is relevant to another issue in the case, namely mitigation of damages.  (Doc. 188, pp. 9–10.) They claim that Plaintiff was offered employment but refused to take it.  (*Id.* at 10.)  The court will discuss this issue of mitigation evidence below as Plaintiff has

---

[6] The MRI Defendants do not oppose the motion and seek only to use the evidence if Plaintiff opens the door to such testimony at trial.  (Doc. 196, pp. 17–18.)

filed a separate motion regarding the employment which was offered to her.  But the court will generally grant the motion in limine with regard to evidence regarding worker's compensation based upon the collateral source rule.

### F. Plaintiff's motion in limine to preclude any mention of unemployment benefits (Doc. 147)

Plaintiff's next motion involves preclusion of evidence regarding unemployment benefits based upon the collateral source rule.  (Doc. 147.) Pennsylvania law provides that evidence of unemployment benefits are considered payment from a collateral source and are inadmissible at trial.  *Labick v. Vicker*, 186 A.2d 874 (Pa. Super. Ct. 1962).  Accordingly, Plaintiff moves for the preclusion of evidence of her application for and/or receipt of unemployment compensation benefits or to any records of the Pennsylvania Unemployment Bureau or the New York State Unemployment Bureau.  (Doc. 147.)

The PMC Defendants filed no opposition to Plaintiff's motion.  The MRI Defendants indicate that they have no intention of introducing such evidence. (Doc. 196, p. 18.)  However, the MRI Defendants point out that such evidence may be admissible if Plaintiff "opens the door" at trial.  *See Miller v. N. Belle Vernon Boro*, No. 8-1435, 2011 WL 691810 (W.D. Pa. Feb. 18, 2011).  But the issue of Plaintiff opening the door to such evidence cannot be determined until the time of trial.  Thus, Plaintiff's motion will be granted, subject to revisiting this ruling if Plaintiff opens the door at trial.

### G. Plaintiff's motion to preclude evidence of "sham" funded employment set up by the worker's compensation carrier (Doc. 148)

In June 2018, Catalyst R.T.W. advised Plaintiff of an employment opportunity within the guidelines set by Robert Grob, D.O, the independent medical examination physician of Plaintiff's worker's compensation carrier.  (Doc. 148, ¶ 2.)  It appears that the job was some sort of desk/telephone position whereas Plaintiff has worked as a laborer for most of her life.  (*Id.* ¶¶ 4–5, 11.)  Plaintiff indicates that with her limitations she could not have performed the job.  (*Id.* ¶ 7.)  On the advice of counsel, plaintiff rejected the job offer.  (*Id.* ¶ 10.)  Based on inferences, Plaintiff believes that Defendants intend to use her rejection of the job offer as evidence that she has no desire to obtain employment.  (*Id.* ¶ 8.)

The parties discuss in some detail whether this job offer was a "sham" and used as a tactic from the worker's compensation carrier to limit its liability to the Plaintiff.  (Doc. 173, pp. 12–14; Doc. 196, pp. 19–21.)  However, the court need not decide that issue.  To discuss the job offer and the circumstances surrounding it, Plaintiff will necessarily have to discuss her worker's compensation carrier.  As set forth above, evidence of worker's compensation is precluded from the case under the collateral source rule.  Because discussion of this job offer will include discussion of worker's compensation, it too will be precluded.  Accordingly, Plaintiff's motion to preclude discussion at trial of the job offer set up by her worker's compensation carrier will be granted.

16

### H. Plaintiff's motion in limine to preclude reference to her union status (Doc. 149)

At the time of her injury, Plaintiff belonged to a labor union.  (Doc. 149, ¶ 1.) Plaintiff no longer belongs to the union, and she seeks to preclude evidence at the trial that she is no longer a member of the union or that she may have worked for a non-union employer.  (*Id.* ¶¶ 1–5.)  Defendants indicate that they do not intend to introduce such evidence.  (Doc. 168, p. 10; Doc. 196, p. 21.)  Thus, Plaintiff's motion will be granted.[7]

### I. Plaintiff's motion to preclude expert opinion in radiology and foot surgery by Robert Mauthe, MD., a physiatrist (Doc. 150)

Defendants seek to produce as an expert witness Robert Mauthe, M.D., a physiatrist, that is a doctor specializing in physical medicine and rehabilitation. Plaintiff seeks to preclude Dr. Mauthe's testimony.  (Doc. 150.)  She claims that Defendants seek to present expert standard of care opinion testimony from Dr. Mauthe regarding emergency room physicians, foot surgeons and radiology, all of which are outside of his area of expertise.  (*Id.*)  Defendants argue that Dr. Mauthe is not offered to provide standard of care opinions, but to testify from his extensive experience with regard to fractures, specifically calcaneal fractures.  (Doc. 196, pp. 21–23.)  In the alternative, if the court finds that Dr. Mauthe does offer

---

[7] Defendants argue that the evidence should be admitted at trial if it becomes relevant and if Plaintiff opens the door to such evidence.  (Doc. 168, pp. 10–11; Doc. 196, p. 21.)  If this occurs at trial, the court can revisit its decision.

standard of care testimony, Defendants argue that his testimony is admissible as he is permitted to opine on the standard of care as long he is substantially familiar with the applicable standard of care or if he is trained in the diagnosis and treatment of the condition.  (*Id.*)  Defendants argue that at the very least, ruling on this motion in limine should be reserved for trial after Dr. Mauthe presents his qualifications.  (*Id.* at 22–23.)

Rule 702 of the Federal Rules of Evidence provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony "if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702.  Courts have described the function of the district court in determining whether to admit expert testimony as a "gatekeeping" one.  The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  Thus,

> [t]he objective of that requirement is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in a particular field.

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Generally,

medical experts must testify to a reasonable degree of medical certainty.  *See*

*Holbrook*, 80 F.3d at 785.

Plaintiff relies upon Pennsylvania's Medical Care Availability and

Reduction of Error Act (hereinafter "MCARE") for the proposition that an expert

must be board-certified in the "same or similar approved board" as the defendant.

*See* 40 PA. STAT. Ann. § 1303.512(c)(3).  Here, Plaintiff argues that Dr. Mauthe,

unlike the doctor defendants, is not an emergency room physician, foot surgeon or

radiologist.  (Doc. 150, ¶¶ 10, 12–16.)  He is a physical medicine and rehabilitation

specialist.  (*Id.* ¶ 14.)

The opinion provided by Dr. Mauthe, about which plaintiff complains, is as

follows:

> Although I am not an emergency room physician, in my 30 years of
> experience, it is not unusual for initial x-rays to be read as negative,
> only later fractures to be discovered.  However, my experience having
> treated many calcaneal fractures, is that the initial treatment if
> nondisplaced is always conservative.  It is very rare that surgery is ever
> performed for a calcaneal fracture unless it is, in fact, displaced;
> therefore, I do not believe that the delay in diagnosing the fracture in
> any way effected [sic] the outcome.

(Doc. 196-6, p. 8.)  Plaintiff first complains that this opinion is factually inaccurate

as it applies to a nondisplaced calcaneal fracture; whereas, here all the doctors

agree that the calcaneal fracture at issue was at least minimally displaced.  (Doc.

150, ¶ 3.)  The court finds, however, that Plaintiff may attack the factual basis of

the opinion through of cross-examination and it need not be precluded on this basis.

Next, the plaintiff complains that Dr. Mauthe is not qualified to provide opinions on radiology, emergency room medicine or causation.  Defendant argues that a decision as to Dr. Mauthe is premature and should not be made until after he testifies as to his qualifications, and after those qualifications are subject to cross-examination by the plaintiff.  The court agrees.  While, MCARE generally prohibits doctors of one subspecialty regarding a doctor of another subspecialty, it explicitly permits an expert to testify against a doctor of a different subspecialty if the two subspecialties have a "similar standard of care for the specific care at issue."  40 PA. STAT. Ann. § 1303.512(c)(2).   If after testifying as to his qualifications, it appears that his subspecialty has a similar standard of care for the radiology, emergency room care and/or surgical physicians at issue, he may be able to testify.   Plaintiff's motion in limine will be denied, but final decision on the admissibility of Dr. Mauthe's testimony will be reserved for trial.

### J.  Plaintiff's motion to preclude evidence of income from Two Brothers Logging (Doc. 151)

Plaintiff John P. Hunter along with his brother operated a business called "Two Brothers Logging" during the time relevant to this lawsuit.  (Doc. 151, ¶ 2.) Plaintiff Margaret T. Hunter has no interest in the partnership and is not involved in its operation.  (*Id.* ¶¶ 3–4.)  On the Plaintiffs' joint tax return, they declared

passive income for the money John Hunter received from the logging business. (*Id.* ¶ 4.)  Plaintiff seeks preclusion of the Two Brothers Logging income as it is irrelevant, prejudicial, and immaterial as to Margaret Hunter's earning capacity. (*Id.* ¶ 9.)  The defense vocational expert, Terry Leslie, discusses the income, and Plaintiff argues that he should be precluded from referencing it at trial.  (*Id.*)

Defendants argue that the evidence is relevant as to earning capacity as it relates to any decision plaintiff may make as to returning to employment and mitigation of damages.  (Doc. 185, pp. 9–11; Doc. 196, pp. 23–24.)  The court agrees.

Plaintiff's argument is merely one of relevance.  One of the points at issue in this case is Plaintiff's damages and her return to employment and lost earning capacity.  Evidence that Plaintiff has income from another source may indicate that Plaintiff would not have returned to work.  She will have the opportunity to address this income in her testimony and the effect, if any, it had on her mitigation of damages or return to employment.  Plaintiff also argues that the jury may misuse the evidence.  (Doc. 151, ¶ 10.)  Plaintiff does not fully develop this issue, and the court finds it lacks merit.  Accordingly, Plaintiff's motion to preclude reference to income from Two Brothers Logging will be denied.

### K. Plaintiff's motion to limit the scope of Defendants' expert testimony (Doc. 152)

Defendants have produced the expert reports of Joseph Daley, DPM, Leslie Terry, Robert Mauthe, M.D., Keith Wapner, M.D. Edward Zurad, M.D. and Chad Staller. (Doc. 152, ¶ 2.) Plaintiff seeks to preclude these experts from testifying at trial beyond the scope of their reports. (*Id.* ¶ 5.) The parties agree on the general rule that an expert witness is not permitted to testify beyond the fair scope of his or her expert report. *See* Fed. R. Civ. P. 26(a)(2)(B) (requiring experts to provide a written report); Fed. R. Civ. P. 37(c)(1) (prohibiting an expert from testifying beyond the scope of his or her report unless the failure to include the information in the report "was substantially justified or is harmless."). It is impossible to rule upon testimony, however, which has not yet been presented. Thus, these issues will best be resolved during trial through objections if Plaintiff determines that an expert is testifying beyond the scope of his or her report. The court will, of course, impose the appropriate rule.[8] Accordingly, the motion to limit the scope of Defendants' experts will be granted to the extent that the limitations on expert testimony will be observed, however, no pretrial ruling on any specific testimony with regard to this issue will be rendered.

---

[8] For example, the PMC Defendants argue that their experts should be allowed to testify beyond the scope of their reports if Plaintiff presents certain evidence in her case-in-chief that they need to rebut pursuant to *Daddona. v. Thind*, 891 A.2d 786, 807 (Pa. Commw. Ct. 2006). (Doc. 170, pp. 10–11.) A determination on such an issue, if it arises, must wait until trial.

### L. Plaintiff's motion in limine to limit the testimony of defense expert witness Terry Leslie (Doc. 153)

Defendants intend to present a vocational expert, Terry Leslie ("Leslie"), at trial.  In her twelfth motion in limine, Plaintiff raises eighteen issues regarding Leslie's testimony.  (*See* Doc. 153.)  Ten of the issues involve whether Leslie should not be permitted to discuss matters which were the subject of other motions in limine.  (*Id.* ¶¶ 1–4, 7–8, 10, 13, 16, 18.)  The court agrees.  Defendants are directed to instruct Leslie with regard to the court's rulings on the motions in limine and ensure that he not testify with regard to any evidence that has been precluded.

The remainder of the Plaintiff's objections raise issues such as relevancy, hearsay, immateriality and prejudice.  (*Id.* ¶¶ 5–6, 9, 11–12, 14–15, 17.)  Plaintiff's motion is not convincing and does not warrant an issue by issue analysis of the portions of the reports which she claims are hearsay, immaterial and prejudicial.  Plaintiff may address these issues through vigorous cross-examination, objections during trial, argument to the jury, and presentation of her own vocational expert during trial.

Accordingly, plaintiff's motion in limine to exclude testimony from the Defendants' vocational expert Terry Leslie will be granted to the extent that he will not be permitted to discuss matters which have been precluded pursuant to other motions in limine.  It will be denied in all other respects.

### M. Motion in limine to preclude reference to Plaintiff's motor vehicle (Doc. 154)

At plaintiff's deposition, she revealed that she drives a leased 2015 Mercedes E350 automobile.  (Doc. 154, ¶ 1.)  Plaintiff anticipates that Defendants will attempt to elicit the make of Plaintiff's vehicle during cross-examination.  (*Id.* Plaintiff suspects that defense counsel will do so to imply that Plaintiff is wealthy and thus prejudice her to the jury.  (*Id.* ¶ 2).  At the time of her injury, Plaintiff drove a Volkswagen Jetta and any evidence regarding the make of automobile she drove after the accident is irrelevant, immaterial, and prejudicial.  (*Id.* ¶¶ 3–4.) Thus, Plaintiff moves to prohibit Defendants or their witnesses from referring to the 2015 Mercedes E350.  (*See* Doc. 154.)

Defendants' indicate that they do not intend to introduce evidence of the type of automobile that Plaintiff drives.  (Doc. 196, pp. 29–30.)  If, however, it should become relevant after Plaintiff testifies, then they may seek to present such evidence.  (*Id.*)  Thus, they argue that the motion should be denied as premature. (*Id.* at 30.)

The court will grant the motion as unopposed.  If, however, for some reason the evidence becomes relevant at trial, Defendants may ask the court to reconsider its ruling.  *See Tillery v. Children's Hosp. of Phila.*, 156 A.3d 1233, 1243 (Pa. Super. Ct. 2017) ("Importantly, if a party presents evidence about a certain issue,

then they open the door to rebuttal evidence that may not otherwise have been admissible").

### N. Plaintiff's motion in limine to preclude evidence regarding her pre-existing medical conditions (Doc. 155)

Plaintiff had certain medical conditions and/or issues which predate the incident at issue.  She seeks to preclude these conditions and/or issues from trial as irrelevant.  (Doc. 155.)  Plaintiff does not indicate exactly what these medical conditions are, but the PMC Defendants' brief discusses "past chiropractic records, prior hernia surgery and other past medical issues."  (Doc. 166, p. 14.)  Plaintiff argues that medical conditions or treatment received prior to the injury at issue are irrelevant as to the Defendants' negligence and their failure to properly diagnose and treat her fractured calcaneus.  (Doc. 155.)

Defendants appear to agree that any prior medical treatment is irrelevant as to whether they were negligent.  They argue, however, that such evidence is relevant as to damages.  (Doc. 166, pp. 13–15; Doc. 196, pp. 30–33.)  Defendants argue that Plaintiff seeks millions of dollars for medical expenses, past and future, wage loss, and loss of future earnings capacity.  (Doc. 196, pp. 31–32.)  Defendants argue that they must be able to rebut and explore Plaintiff's allegations for damages.  (Doc. 166, pp. 13–15; Doc. 196, pp. 30–33.)  They assert that her prior medical issues may have played a role in her accident, injuries and healing here.  (Doc. 166, pp. 13–15; Doc. 196, pp. 30–33.)  Defendants, however, have

cited to no evidence, expert or otherwise, tying the plaintiff's medical history to the accident, injuries or healing. Thus, this evidence appears to be irrelevant.[9] To the extent that it might be slightly relevant to the issue of damages, its probative value is outweighed by undue delay and confusing the issues. The time it would take to discuss all of Plaintiff's past medical history would unduly delay the trial, which even without this evidence portends to be a lengthy trial, and confuse the issues before the jury. Therefore, Plaintiff's motion will be granted.

### O. Plaintiff's motion in limine to exclude testimony from Dr. Daley and Dr. Wapner on potential success of surgery (Doc. 156)

Defendants have retained two medical expert witnesses, Dr. Joseph Daley and Dr. Keith Wapner, to testify regarding, in part, the potential success of early surgical intervention on Plaintiff's injured foot. Plaintiff moves to exclude such testimony. (Doc. 156.) First, Plaintiff argues that it is irrelevant whether Dr. Wapner or Dr. Daley could have performed the surgery because they were not referred to Plaintiff at the time. (*Id.* ¶¶ 3–4.) Plaintiff argues that the only relevant issue is whether she utilized ordinary care in selecting Dr. Kelly Smith. (*Id.* ¶¶ 6–7.) Plaintiff consulted with Dr. Smith, who is not a party to this case, and after

---

[9] Defendants' cite to the Pennsylvania Standard Jury Charge on life expectancy to support their argument. This charge indicates that the jury should consider, *inter alia*, Plaintiff's health prior to the accident in determining her life expectancy. Pa. Stand. Jury Instruction 7.240. They make no argument, however, as to how Plaintiff's prior health issues would affect her life expectancy.

considering her consultation, Plaintiff decided to proceed with conservative

treatment rather than with surgery.  (*Id.* ¶¶ 10–11.)

Plaintiff's motion misses the mark with regard to the testimony of Dr.

Wapner and Dr. Daley.  They do not opine that she should have sought treatment

from them.  Rather they indicate that, to a medical degree of certainty, Plaintiff's

prognosis would have improved had she not deferred surgery.  (Doc. 187, pp. 17–

22, 78–84.)  This evidence with regard to the success of surgery, which Plaintiff

decided not to undergo, is relevant and admissible.  It relates both to causation and

Plaintiff's contributory negligence.  Such evidence is typical of a medical

malpractice action and Plaintiff can counter it through vigorous cross-examination

of the witnesses and presentation of her own witnesses.  Plaintiff provides

absolutely no reason to preclude this evidence, and her motion will be denied.[10]

---

[10] In this case, the court ordered that motions in limine be filed within fourteen days of the
pretrial conference and opposition briefs of no more than six pages were due seven days prior to
the pretrial conference.  (Doc. 116.)  The pretrial conference was originally scheduled for June 5,
2019.  (*Id.*)  At Plaintiff's request, the court rescheduled the pretrial conference for June 20,
2019.  (Docs. 117, 119.)  Defendants filed an uncontested motion to continue the pretrial
conference.  (Doc. 120.)  Plaintiff then filed a motion for partial summary judgment, despite the
deadline for filing dispositive motions having passed.  (Doc. 121.)  The court subsequently
cancelled the pretrial conference.  (Doc. 122.)  Plaintiff then moved to withdraw the partial
motion for summary judgment, which the court granted.  (Docs. 123, 124.)  The court scheduled
the pretrial conference for February 5, 2020, and again included in the order the rules pertaining
to motions in limine.  (Doc. 125.)  Plaintiff then requested a telephone conference in order to
discuss rescheduling the pretrial conference.  (Doc. 126.)  The court rescheduled the pretrial
conference to February 18, 2020.  (Doc. 128.)

  Prior to the date of the pretrial conference the parties filed and briefed voluminous
motions in limine.  The pretrial conference was again rescheduled on February 12, 2020 to April
6, 2020.  (Doc. 183.)  The court's order indicated that as the motion in limine deadline had
passed, no extensions to that deadline would be granted.  (*Id.*)  Despite the briefing deadline

### P. Plaintiff's motion in limine to exclude evidence from Dr. Gibson (Doc. 157)

Plaintiff retained Dr. Douglas Gibson as an expert witness regarding the x-rays taken on the day of Plaintiff's injury.  (Doc. 157, ¶ 10.)  He provided an expert report which Plaintiff disclosed to all parties.  (*Id.*)  Plaintiff is not presenting Dr. Gibson at trial.  (*Id.* ¶ 13.)  The reports of Defendants' experts refer to Dr. Gibson's report and Plaintiff seeks to preclude the Defendants' experts from referring to Dr. Gibson at trial.  (*Id.* ¶ 14.)

With regard to this motion in limine, Plaintiff makes the same arguments as she did with regard to her motion in limine to preclude evidence regarding non-testifying expert Dr. Michael Wolk.  As set forth above in section B, the court found that the motion in limine with regard to Dr. Wolk should be denied.  For the same reasons, the court will deny the motion in limine to exclude evidence from Dr. Gibson.

---

having passed, there being no provision in the court's order for "reply" or "sur-reply" briefs, and the page limitation provided by the court, Plaintiff has continued up through May 19, 2020, to file briefs regarding the motions in limine.  For example, on March 10, 2020, Plaintiff filed a twenty-page reply brief regarding the instant motion.  (Doc. 209.)  This brief was filed twenty-two days after the last filed opposition brief regarding this motion.  Plaintiff did not seek leave to file a reply brief, to file a reply at such a late date, or to exceed the page limitation.  Similarly, Plaintiff filed a forty-five-page reply brief on May 20, 2020, regarding her motion in limine on evidence of smoking/contributory negligence.  (Doc. 223.)  Out of consideration of the parties, the court has reviewed the briefs.  However, Plaintiff is instructed to follow further orders of the court.  Any further documents filed in derogation of court orders will not be considered.

## Q. Plaintiff's motion to preclude evidence of smoking (Doc. 158)[11]

Plaintiff has a history of smoking which Defendants intend to include

evidence of at trial.  (Doc. 158.)  Plaintiff has filed a motion in limine to exclude

any evidence of smoking as irrelevant.  (*Id*.)  With regard to the medical

malpractice at issue, Plaintiff argues that the two-week delay in diagnosing her

calcaneal fracture caused several problems, including the loss of the window of

opportunity to have surgery.  (*See id.*)  Defendants, however, point out that the fact

that Plaintiff is/was a smoker is relevant as to the window of opportunity to

undergo surgical repair of her foot injury.  (Doc. 196, pp. 38–44.)  Generally,

surgery is held off until the swelling of the area has gone down, and swelling

purportedly takes longer to reduce in smokers.  (*Id.* at 40–41.)  Plaintiff's own

physician, Dr. Smith, even testified that smoking could create a delay in the

reduction of swelling.  (Doc. 196-7, pp. 13–14.)  Smith also testified, as did Dr.

Medrek, that smoking could generally cause healing problems.  (*Id.* at 13–14, 20–

21.)

Moreover, plaintiff seeks damages for a permanent injury.  When a

permanent injury is at issue, the jury, if it awards damages, must consider the

---

[11] The Plaintiff's seventeenth motion in limine raises the issue of preclusion of smoking and preclusion of contributory negligence.  (Doc. 158).  The Plaintiff's eighteenth motion in limine involves solely the issue of contributory negligence.  (Doc. 159).  To maintain an orderly resolution of the motions and avoid repetition, we will address the seventeenth motion only as it pertains to smoking and then address the issue of contributory negligence with regard to the eighteenth motion in limine.

Plaintiff's life expectancy. *Klaus v. Taylor*, 710 A.2d 1142, 1143–44 (Pa. Super. Ct. 1998). Plaintiff's life expectancy may be affected by the fact the she is a smoker. (Doc. 196, pp. 42–44.) Thus, the evidence that Plaintiff is a smoker is relevant. Plaintiff claims that the evidence is overly prejudicial, but she does not develop this argument or provide any reason why it would be overly prejudicial. In fact, the law provides for admission of evidence of a plaintiff's arguably more prejudicial evidence such as drug and alcohol abuse in determining life expectancy. *Klaus*, 710 A.2d at 1145. Accordingly, Plaintiff's motion to exclude evidence that she was or is a smoker will be denied.

### R. Plaintiff's motion in limine to exclude reference to contributory negligence (Doc. 159)

Defendants raise comparative negligence as a defense in their answers to the amended complaint. (Doc. 45, p. 11; Doc. 46, p. 8.) Plaintiff seeks to exclude from trial any reference to contributory negligence. (Doc. 159.) The court finds no merit to Plaintiff's motion.[12]

The Pennsylvania Comparative Negligence Law provides:

In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendant against

---

[12] This discussion of comparative negligence is as it pertains to the Plaintiff's medical care and the healing from her injury. Comparative or contributory negligence with regard to the manner in which Plaintiff fell is not at issue in this case.

whom recovery is sought, but any damages sustained by plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa. Cons. Stat. § 7102.  The Third Circuit Court of Appeals has explained as follows: "Under Pennsylvania law, which is applicable here, if there is any evidence of contributory negligence in a medical malpractice case, the court must submit the issue to the jury, even if the evidence to the contrary is strong." *Alexander v. Univ. of Pittsburgh Med. Ctr. Sys.*, 185 F.3d 141, 146 (3d Cir. 1999).

Plaintiff presents no cogent reasoning as to why evidence of contributory negligence should be precluded.  Plaintiff's motion in limine will be denied as the law clearly supports Defendants' position.  Moreover, the comparative/ contributory negligence issues do not cleanly fit into the motion in limine procedure.  This issue is mainly one to be decided after trial.  If Defendants present evidence of contributory negligence, then the jury should be instructed on it; if not, then such an instruction would be inappropriate.

### S.  Plaintiff's motion in limine to preclude mention at trial of Robert B. Grob, D.O. (Doc. 160)

Robert B. Grob, D.O. ("Dr. Grob") examined Plaintiff on July 13, 2017, in relation to Plaintiff's worker's compensation claim.  (Doc. 160, ¶ 2.)  Dr. Grob had been retained to support the defense of that claim and issued a report on July 28, 2017.  (*Id.*)  Plaintiff seeks to preclude Dr. Grob's report from trial as he will not be a testifying witness.  (*Id.* ¶ 4.)

The MRI Defendants indicate that they do not intend on referring to Dr. Grob's report at trial.  (Doc. 196, p. 46.)  However, the PMC Defendants expert witness, Dr. Mauthe, relied upon Dr. Grob's report in formulating his opinion, and they oppose the Plaintiff's motion in limine.  (Doc. 175, pp. 13–14.)

A review of Plaintiff's motion reveals that the arguments are very similar to those discussed above with regard to excluding Dr. Michael Wolk.  (*See* Doc. 160.) As set forth above, in section B, the court found that the motion in limine with regard to Dr. Wolk should be denied.  For the same reasons, the court will deny the motion in limine to exclude evidence from Dr. Grob.  Any mention, however, of worker's compensation that may be included in the report is excluded from trial, consistent with the court's decision above, *see* section E, regarding the motion in limine to preclude evidence of the Plaintiff's workers' compensation claim.  Thus, the motion in limine will be denied and Dr. Mauthe will be permitted to refer to Dr. Grob's report to the extent that he relied upon it in formulating his opinions. However, any mention of worker's compensation is precluded.

## CONCLUSION

For the reasons set forth in detail herein, several of Plaintiffs' motions in limine will be granted, and numerous motions will be denied.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania


Dated: July 14, 2020