IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET T. HUNTER and JOHN P. HUNTER, w/h | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | MEDICAL NEGLIGENCE |
| | : | |
| RICHARD P. KENNEDY, M.D.; | : | JURY TRIAL DEMANDED |
| MONROE RADIOLOGY IMAGING, | : | |
| P.C.; POCONO MEDICAL CENTER, | : | |
| PETE OBENG, M.D., FAMILY CARE | : | |
| CENTERS, INC. t/d/b/a  PMC | : | |
| PHYSICIAN ASSOCIATES and | : | |
| PMC IMMEDIATE CARE CENTER | : | |
| | : | |
| Defendants | : | NO.  3:17-CV-00007 |

## PLAINTIFFS' MOTION FOR RECONSIDERATION OF SMOKING EVIDENCE

AND NOW comes Plaintiffs, Margaret and John Hunter, who hereby file

the instant Motion for Reconsideration of the Honorable Court's July 14,

2020 Order regarding Plaintiffs' Motions in Limine.  Plaintiff specifically

requests reconsideration of this Honorable Court's ruling regarding

potential admission of smoking evidence, and in support thereof aver the

following:

1.    The Plaintiffs respectfully request this Honorable Court reconsider

the issue of admissibility of smoking as it relates to window of opportunity,

comparative fault, and life expectancy. The Plaintiff understands that the

issues of comparative fault and life expectancy have not been decided but they are related.

2.    This Court exercises jurisdiction based on 28 USC §1332 (1982)(diversity of citizenship).

3.    A district court A district court "has the inherent power to reconsider prior interlocutory orders."  State Nat. Ins. Co. v. County of Camden, 824 F. 3d 399, 406 (3d. Cir. 2016); Byrd et al. v. Aarons, Inc. USDC W.D. Pa. Civ No. 11-101, March 7, 2018 Bisson, J.

4.    The federal courts have interpreted Federal Rule of Civil Procedure 54(b) provides that such an order may be revised at any time before an entry of a judgement adjudicating all the claim and all the parties' rights and liabilities.  The Court also can consider this motion under Federal Rules of Civil Procedure 59 and 60.

5.    This medical malpractice case involves a failure on May 16, 2016 of Dr. Kennedy and Dr. Obeng to diagnose Margaret Hunter's Saunders 2A calcaneal fracture (heel bone) that was described as comminuted, displaced, intraarticular and impacted.

6.    Dr. Kelly Smith testified that a 6/2/16 CT Scan showed a comminuted, displaced intraarticular subtenial fracture, based on her June 8, 2016 reading. (Smith, Kelly N.T.4/30/2018 P. 44 L. 16)

7.    Dr. Obeng failed to provide the clinical history of a fall from a ladder to Dr. Kennedy.

8.    There is no allegation that Mrs. Hunter did anything to contribute to the operative negligence of Dr. Obeng or Dr. Kennedy surrounding the failure to diagnose the calcaneal fracture on May 16, 2016.

9.    It is undisputed that Mrs. Hunter was not aware that she had sustained a calcaneal fracture until May 31, 2016.

10.  It is undisputed that no one discussed surgery with Mrs. Hunter until June 8, 2016, a procedure that was explained to her by Dr. Smith as difficult, risky and fraught with complications because of the delay in diagnosis. (Hunter N.T. P. 118-120)

11.  The Defendants seek to offer Mrs. Hunter's history, or antecedent conduct, of smoking to establish risks of surgery for a calcaneal fracture, a procedure not undertaken, because Dr. Smith warned Mrs. Hunter that the surgery would be complicated by a delay of more than three weeks, and

3

would be complicated, difficult and risky.  A tortfeasor takes his/her victim as he/she finds her.

12.  Defendants must establish that Plaintiff's conduct was unreasonable, in addition to establishing causation.  Expert testimony is required to establish causation of any comparative fault.  Pascal v. Carter, 436 Pa. Super 40, 647 A. 2d 231 (1994)

13.  There is no evidence or even allegation, that smoking is the sole cause of harm or condition.  Boushell v. J. H. Beers, Inc., 215 Pa. Super. 439, 258 A.2d 682, 1969 Pa. Super. LEXIS 1139; Pa. S.S.J.I. (Civ. 4th) §7.90 Concurring Causes Subcommittee Note

14.  Dr. Obeng admitted that although he may have intended to refer Mrs. Hunter to an orthopedic surgeon on May 31, 2016, Dr. Obeng testified that he delegated that responsibility to his staff.  (See Obeng N.T. P. 128-130) Dr. Obeng did not testify that he delegated the responsibility to Mrs. Hunter. (See Obeng N.T. P. 128-130) He apparently attempted to communicate with Travelers Insurance, the workers' compensation carrier, in order to set up an orthopedic exam. (Obeng N.T. P. 128-130)

15.   There is no evidence of record that Dr. Obeng's office successfully established any referral to an orthopedic surgeon. (See Obeng N.T. 128-130)

16.   In the absence of any referral, after speaking with her employer FAHS, Mrs. Hunter testified that she went on her own to the Emergency Room at Wilson Memorial Regional Medical Center in Binghamton where she was examined by a podiatry resident. (Hunter N.T. P 111 – 114)

17.   On June 2, 2016, in the Emergency Room of Wilson Memorial, the resident ordered a CT scan which confirmed the comminuted, impacted, intraarticular fracture of the calcaneus.

18.   The podiatry resident, Dr. Schow, referred Mrs. Hunter to Dr. Smith, a podiatrist.  The exam was scheduled for June 8, 2016.

19.   The first time the issue of surgery for the recently diagnosed calcaneal fracture was even discussed with Mrs. Hunter was on June 8, 2016.  Because of the difficulties occasioned by the delay, as explained to her by Dr. Smith, Mrs. Hunter decided not to undergo the procedure fraught with risk of failure given the delay in diagnosis and evaluation by a surgeon with operating privileges.  (Hunter N.T. P. 118-120)

20.  On examination by defense counsel, Sarah Charette, Dr. Kelly

Smith, Plaintiff's treating podiatrist, testified:

> Q:  - - can you kind of put for us in a timeframe of
> the heel healing, essentially, that when it starts to
> become problematic based on your experience?
>
> A:   Yeah.  I would say you want to try to catch it within
> the first one to two weeks.  And two weeks is kind of
> like you're -- you're getting towards the max of what
> you really want.
>
> (Smith N.T. April 30, 2018, p. 50, l. 1-3; 8-11)

21.  Earlier, Dr. Smith had explained to Attorney Charette:

> A:  …But the length of time that had passed was
> getting close to four weeks by that point. So it makes it
> -- it does make it challenging from a surgical
> standpoint.
>
> Q:  Okay. Can you describe to me what you mean by
> that?
>
> A:  The heel bone is really vascular. So shortly after,
> you know, an injury in the heel bone -- it will heal. It will
> heal. Now, it may not heal in the right position, but it
> will heal. And it starts -- everything starts getting very
> tricky and it makes it more challenging the longer that
> you wait.

22.  While Dr. Smith could not recall the precise conversation with

Margaret Hunter, (Smith N.T. April 30, 2018, p. 64, l. 15-18) Margaret

Hunter clearly remembered that conversation about the serious nature of

the surgery and its risk of failure.  Dr. Smith documented in her records that

6

after she discussed the problems caused by the delay, which included

increased risk associated with performing the delayed surgery and might

force her to perform a fusion operation, Margaret chose a conservative

approach given the risk and uncertainty caused by the negligence and

delay and the risk of a fusion surgery.  Margaret Hunter testified:

> Q.  …What did she say she would have done had she seen you sooner?
>
> A.     She could have operated and plated the bottom of my heel.
>
> Q.     Okay. And did she say that that could no longer be done?
>
> A.     It really wasn't much of an option at that point because the way she explained it to me -- the foot had started to heal so it was like gum. So, it would hard to put the bone back where it belonged. So, yeah, it really wasn't -- I don't think it was an option really at that point anymore.
>
> Q.     And what about the surgery for the fusion?
>
>  A. It wasn't a guarantee it was going to help it. It was too -- too much time had lapsed from when it had been broken fresh, you know.
>
> Q.     Did you have an understanding about whether she was saying that the fusion surgery 16 would have been a better option had she seen you sooner?
>
> A. Uh--
>
> Q.     Or that there wouldn't have been a guaranteed outcome even at that point?
>
> A.     No. She could have taken care of it if she had seen me a lot sooner. I mean being three and a half -- three weeks out, there wasn't much she could really do. I mean,

she could do the surgery, but she can't say it's going to
help any. You know, it could make it worse.

Q.  So what did she recommend to you?

A.  It had already started healing. There really -- unless --
the surgery really wasn't an option at that point I didn't
really think because there was no guarantee it was going
to work when you get in there.

Q.     Did she give you any kind of recommendation about
a future course of treatment whatever it might be?

A.  She said probably in the future that it would probably
have to be fused.

(Margaret Hunter N.T., pp. 118-120)

23.  Because of the delay unreasonably caused by the negligence of Dr.

Kennedy and Dr. Obeng, Dr. Smith testified that, "I was concerned that it

was going to be really challenging at that point."  (Smith N.T. April 30,

2018, p. 61, l. 11-12)

24.  Dr. Smith testified that she candidly explained to Margaret Hunter

the risks of surgery given the delay, (Smith N.T. April 30, 2018, p. 64, l. 19-

22), and that it might include making the situation worse.  (Smith N.T. p. 65

"you can be left off worse than where you started.")

25.  The Defendants, in response to motion in limine, asserted that Mrs.

Hunter was comparatively at fault for conduct unrelated to Dr. Kennedy's

misdiagnosis of May 16, 2016 and Dr. Obeng's failure to provide

appropriate clinical history, a well-recognized contributor to radiological

misdiagnosis as it can mislead radiologists' attention.  Unrelated conduct is not comparative fault.

26.  The Defendants claimed that Mrs. Hunter was negligent for the following reasons:

27.  (1)  Failure to see an orthopedic specialist between Dr. Obeng's phone call on May 31, 2016 and her examination at Wilson Memorial Hospital on June 2, 2016, approximately 50 hours later;

28.  No expert report or testimony establishes harm or causation for this theory.  Pascal v. Carter, supra.

29.  The allegation is directly refuted by Dr. Obeng's testimony. (Obeng N.T. P. 120 L 1-6, P. 127 L. 11 – P. 130 L. 20)

30.  No referral was ever made and no completed referral was reflected in Dr. Obeng's records.(See Obeng N.T. P. 120-130)

31.  Mrs. Hunter testified that she spoke with the employer FAHS in the absence of direction from Dr. Obeng and then went to the Wilson Memorial Emergency Room. (Hunter N.T. P. 111-114)

32.  Additionally, the Defendants failed to offer any expert report or testimony on breach of duty and causation on this issue.  Defendants have the burden of proof on either comparative fault or mitigation.

9

33. As such, the raised issues must be excluded.

34. (2) Defendants claim that Mrs. Hunter was a smoker which made her a poor surgical candidate.

35. This is not legally considered comparative fault as "A tortfeasor takes his victim as he finds her." Tabor v. Miller, 389 F. 2d 645 (3d Cir. 1968) cert. den. 291 US 915 (1968). Further, the Plaintiff's antecedent conduct in causing the physical presentation for medical treatment does not constitute comparative fault as a matter of law and is not admissible through the back door of causation. Richardson v. Labuz, 81 Pa. Cmwlth 436, 474 A. 2d 1181 (1984). (Plaintiff's antecedent conduct not admissible even to establish causation) This is true even if smoking complicated the presentation for treatment.

36. There is no evidence or expert report or testimony that Mrs. Hunter was aware that smoking might complicate healing of a calcaneal fracture, cause tissue healing problems, or violated any instructions from Dr. Obeng.

37. The defense assertion of comparative fault does not play any role or affect the Defendants' operative negligence – which is (1) failure to properly diagnose the radiology films by Dr. Kennedy on May 16, 2016 and (2) Dr.

Obeng's failure on May 16, 2016 to provide relevant clinical history of a high impact fall from a height to direct Dr. Kennedy.

38. The Defendants' claim that this smoking is relevant, "Mrs. Hunter's history as a longtime cigarette smoker made her a poor candidate for surgery due to the complication of increased risk of infection (Def. Obeng's response Doc. 171 P. 6). This antecedent conduct is not comparative fault as a matter of law. Richardson v. Labuz, 81 PA. Cmwlth 436, 474 A. 2d 1181 (1984). Both Dr. Wapner and Dr. Daley wrote in their reports that Plaintiff would have been fine even with the delay.

39. The jury cannot consider this evidence of antecedent conduct to reduce damages because a "tortfeasor takes his victim as he finds her and the physician must treat the patient a presented." Tabor v. Miller, 389 F. 2d 645 (3d Cir. 1968) cert. den. 291 US 915 (1968), Botek v. Mine Safety Appliance Corp., 611 A.2d 1174, 531 Pa. 160, (1992); Lebesco v. SEPTA, 251 Pa. Super. 415, 423 n. 2, 380 A. 2d 848, 852 (1977) Richardson v. Labuz, 81 PA. Cmwlth 436, 474 A. 2d 1181 (1984) Macosky v. Udoshi, 2019 Pa. Super. Unpub. LEXIS 2756, 220 A.3d 667; Palar v. Wohlwend, 2017 WL 423470 (Pa. Super 2017) allow of appeal denied Palar v. Wohlwend, (Pa. 164 WAL 2017 10/2/17);

40.  Also, this assertion was contradicted by Dr. Daley, defense podiatry expert, and Dr. Wapner, defense orthopedic expert, who wrote that even after a 3 ½ week delay, Mrs. Hunter would have recovered fine from the surgery.

41.  More importantly, the issue of smoking should be excluded because of an intersection of three longstanding principles

    a.  Antecedent conduct which either causes the need for medical care, or causes an underlying condition which makes treatment more difficult, is not admissible as comparative fault; Richardson v. Labuz, 81 PA. Cmwlth 436, 474 A. 2d 1181 (1984); Macosky v. Udoshi, 2019 Pa. Super. Unpub. LEXIS 2756, 220 A.3d 667; Lebesco v. SEPTA, 251 Pa. Super. 415, 423 n. 2, 380 A. 2d 848, 852 (1977), Boushell v. J. H. Beers, Inc., 215 Pa. Super. 439, 258 A.2d 682, 1969 Pa. Super. LEXIS 1139

    b. Conduct subsequent to the malpractice that is related only to damages does not constitute comparative fault but at best, potentially is evaluated under a mitigation standard under Pennsylvania Supreme Court authority; Bartunek v. Koch, 404

12

Pa. 1, 170 A.2d 563, (1961); James v. Ferguson, 401 PA. 92, 162 A. 3d 690, 694 (1960); and

c.  Undue prejudice under Fed. Rule of Evid. 403 must be evaluated.  Palar v. Wohlwend, 2017 WL 423470 (Pa. Super 2017) allow of appeal denied Palar v. Wohlwend, (Pa. 164 WAL 2017 10/2/17); Macosky, supra.

42.  Defendant Kennedy seeks to offer issue of smoking on comparative fault. Plaintiff submits that this Honorable Court should exclude smoking evidence for any purpose and reconsider its prior interlocutory determinations of allowing it because Dr. Smith's testimony that smoking might contribute to swelling.  Dr. Smith did not state that any smoking did in fact contribute to swelling.  No evidence that Mrs. Hunter had any knowledge that swelling might be caused by smoking so it doesn't prima facie establish comparative fault.  Absent evidence that it is the sole cause of swelling, it is irrelevant.  Boushell v. J. H. Beers, Inc., supra.

43.  Dr. Kennedy refused to answer questions on standard of care and whether he alleged that Plaintiff was comparatively negligent. See Doc. 196.  This alone should preclude Kennedy from offering any evidence of comparative fault.  The defense tactic insulated Dr. Kennedy from

13

discovery, and he seeks to profit from that by offering testimony of retained experts.

44.   Dr. Kennedy asserted that Mrs. Hunter's decision not to undergo surgery because of the complications occasioned by the delay should be considered comparative fault. (See Doc. 196 p. 42-43)

45.   Pennsylvania Supreme Court decisions which are precedential herein under the Erie doctrine, have analyzed this type of post negligence conduct as a **mitigation** issue, upon which the defendant bears the burden of proof. Bartunek v. Koch, 404 Pa. 1, 170 A.2d 563, (1961); James v. Ferguson,  401 Pa. 1, 170 A. 2d 563 (1961)(Eagen, J.) Further, Defendant Kennedy is seeking to offer the physical effects of "long term" smoking as a comparative fault issue. (See Doc 196 P. 43).  This constitutes antecedent conduct which is inadmissible under Richardson v. Labuz, supra.  The condition may be admissible but the conduct is inadmissible.

46.  The point Plaintiffs' counsel was getting at, and perhaps it was inartfully expressed, about Dr. Wapner and Dr. Daley not being present during the discussion of risks between Mrs. Hunter and Dr. Smith on June 8, 2016, is that their opinion about the potential success of surgery based on their experience is not the issue the jury must decide on mitigation.  The

jury must decide the issue of mitigation based upon what Dr. Smith told

Mrs. Hunter. The only person that has a recollection of that conversation is

Mrs. Hunter.  The mitigation issue is determined upon what Mrs. Hunter

understood Dr. Smith to say and the reasonableness of her decision in

response.  Bartunek v. Koch, 404 Pa. 1, 170 A.2d 563, (1961); James v.

Ferguson, 401 PA. 92, 162 A. 3d 690, 694 (1960). (Smith N.T. 4/30/2018

P. 50 L. 1-3, 8-11, P. 47 L. 9-25, p. 62 L. 11- P. 63 L. 6)(Hunter N.T. P.

118-120); See James v. Ferguson, supra. ("The physician testified that the

only possibility of relieving the pain was through surgery. While an

operation may correct this situation, we cannot, in view of the serious

nature thereof, say that his refusal to submit thereto should affect his right

to recovery.")

> "The test was again correctly stated in Kehoe v.
> Traction Co., 187 Pa. 474, 41 A. 310, where the
> following point for charge was approved by the Court
> (page 485): "(1) If they `believe that the surgical
> operation, necessary to relieve or cure the plaintiff was
> a serious or critical operation necessarily attended with
> some risk of failure, then the plaintiff was not bound in
> law to undergo a serious and critical surgical operation
> which would necessarily be attended with some risk of
> failure."

Bartunek v. Koch, 404 Pa. 1, 170 A.2d 563 (1961).

47.  Dr. Daley, the defense expert, demonstrates that there is no legitimate issue about the difficulty of the procedure.  Dr. Daley testified that "It's one of the hardest fractures to reduce and repair surgically regardless of who does it."(Daley N.T. P. 178 L. 11-19)

48.  Dr. Smith testified that "I was concerned that it was going to be really challenging at that point, three and ½ weeks after the injury."

49.  No defendant or defense expert has expressed any opinion that smoking caused swelling after the calcaneal fracture of May 16, 2016.

50.  Dr. Smith did not testify that Mrs. Hunter's history of smoking did, in fact, cause swelling in her foot after the May 16, 2016 calcaneal fracture. She simply stated that it's a possibility.

51.  More importantly, there is not a scintilla of evidence in the record that Mrs. Hunter was warned not to smoke after her fracture, at any time, to make such issue relevant on the issue of comparative fault.  The discussion about surgery and decision about surgery occurred on one date, June 8, 2016.

52.  Absent such evidence, the issue is merely a condition that the tortfeasor takes her victim as it finds her and is responsible for the indivisible harm.

16

53.  The relevant issues remain whether the Defendants were negligent and whether the Defendants' conduct caused or combed with other conditions in causing the harm to the plaintiff, Margaret Hunter.  Boushell v. J. H. Beers, Inc., 215 Pa. Super. 439, 258 A.2d 682, 1969 Pa. Super. LEXIS 1139

54.  Pennsylvania Superior Court decision have excluded evidence of smoking in medical malpractice actions centered on misdiagnosis of radiology studies.  Palar v. Wohlwend, 2017 WL 423470 (Pa. Super 2017) allow of appeal denied Palar v. Wohlwend, (Pa. 164 WAL 2017 10/2/17); (Court precluded plaintiff smoking history on issues of life expectancy, health and physical conditions prior to malpractice and on quality of information defendants possessed at time of misdiagnosis of x-rays in misdiagnosis of cancer case) Roxborough v. Memorial Hospital, 2013 WL 11250979 (Pa. Super 2013)(smoking evidence excluded on comparative fault issue as antecedent conduct.)  In Macosky v. Udoshi, 2019 Pa. Super. Unpub. LEXIS 2756, 220 A.3d 667, the Pennsylvania Superior Court affirmed the trial court's exclusion of evidence of heavy drinking allegedly causing alcohol related cardiomyopathy where Macosky's claims were

17

predicate on misdiagnosis and increase risk of harm in causing a heart condition. The cause of Mackosky's heart condition was not relevant.

55.  Even if the evidence is minimally or technically relevant, which is not conceded, the Pennsylvania Superior Court has ruled that any probative value of this type of smoking evidence can be highly prejudicial that could distract the jury and prevent it from impartially weighing the evidence under Pa. Rule Evid 403. Palar v. Wohlend, 2017 WL 423470 (PA. Super. 2017) allow. Den. Pa. No. 164 WAL 2017 10/2/2017.  Evidence of smoking should be excluded under Fed. R Evid. 403 because the probative value may be substantially outweighed by a danger of unfair prejudice, confusion of issues, misleading the jury, undue prejudice. Palar v. Wohlwend, 2017 WL 423470 (Pa. Super 2017) allow of appeal denied Palar v. Wohlwend, (Pa. No. 164 WAL 2017 10/2/17) Admission of this smoking evidence might suggest a decision on an improper basis or to direct the jury's attention away from its duty of weighing the evidence impartially.

56.  Mrs. Hunter was not advised of the calcaneal fracture until May 31, 2016.  The issue of surgery was not discussed with her until June 8, 2016 by Dr. Smith.  Mrs. Hunter declined surgery because of what Dr. Smith explained to her regarding the risk of failure of the surgery because of the 3

18

1/2 week delay occasioned by the misdiagnosis. (Hunter N.T. P. 118-120) There is no evidence that Mrs. Hunter was advised of any specific danger of smoking relevant to her calcaneal fracture prior to June 8, 2016, on or even after June 8, 2016.  Mrs. Hunter's antecedent conduct simply is not comparative fault as a matter of law. Richardson, supra., Macosky v. Udoshi, 2019 Pa. Super. Unpub. LEXIS 2756, 220 A.3d 667.  Whether Dr. Smith stated that smoking might affect swelling does not constitute comparative fault because there is no evidence that Mrs. Hunter was aware of this possibility, or expert report establishing causation in fact.  There is no expert report or testimony, including Dr. Smith, that this, in fact occurred, which is the Defendants' burden of proof.

57.  In Richardson v. LaBuz, the Commonwealth Court upheld a trial court decision refusing to allow the Commonwealth to introduce evidence of a plaintiff's conduct antecedent to the actionable negligence with regard to the circumstances of an accident.  The Commonwealth Court held that "the negligence of Richardson in causing the accident is irrelevant and the injuries he sustained in the accident are relevant only to determine what his physical state would have been but for the negligence of the doctors and hospital." Id.  The Court should employ this holding in this case.

19

58.  Under Pennsylvania law, it is well recognized that a plaintiff's antecedent conduct does not affect his/her right to recovery:

> [C]onduct on the part of the patient before coming under the physician's care does not bear on the issue of comparative negligence, because the health care provider is only liable prospectively, and the circumstances leading the patient to see the physician are irrelevant to the adequacy of the care received. Stated differently, the physician undertakes to render whatever services the patient needs upon presentation, and thus takes the patient as he finds him. Logically, the only relevant inquiry is the conduct of the physician and patient from that point.

See West's  Pennsylvania Practice. Torts: Law and Advocacy, § 7.24.; Richardson v. LaBuz, supra.

59.  In Sutch v. Roxborough Mem. Hosp., 2013 Pa. Super. Unpub. LEXIS 2824 , the Court was confronted with a similar issue.  In that case, the trial court granted Plaintiff's Motion in Limine to exclude evidence that the Plaintiff, a lung cancer decedent, was a smoker for approximately 50 years.  Id. at *6.  However, during trial at the trial court level, a defense expert improperly referenced smoking in violation of the trial court's ruling, and the trial court granted Plaintiff's post-trial motion for a new trial. Id. at 12.

20

60.  In holding that the trial court did not abuse its discretion in granting

Plaintiff's post-trial motion for a new trial, the Superior Court of

Pennsylvania stated:

> In the instant case, we discern no abuse of
> discretion by the trial court in granting Plaintiff's
> Motion in limine and entering the Preclusion Order.
> As the trial court properly reasoned, Plaintiff would
> suffer unfair prejudice if the jury discovered that
> Plaintiff's decedent was a smoker for approximately
> 50 years, in that this information might lead the jury
> to hold decedent accountable, to some extent, for
> contributing to the cause of her death, i.e., lung
> cancer. See Trial Court Opinion, 5/28/13, at 12. This
> highly prejudicial information could distract the jury
> and prevent it from impartially weighing the
> evidence. Furthermore, there was no probative
> value to this evidence. It is undisputed that evidence
> of decedent's smoking habit was irrelevant to the
> issue of causation, and this case was not bifurcated
> on the issues of liability and damages. Accordingly,
> the trial court properly precluded the parties from
> introducing any evidence pertaining to decedent's
> smoking history.

Sutch, 2013 LEXIS *19.

61.  The conduct of smoking should be legally irrelevant, which danger

of undue prejudice is substantially outweighed by any probative value on

the issue of life expectancy.  Fed. Rule Evid. 403.  The issue can be

address in a non-prejudicial manner by the data in the Life Expectancy

Tables set forth in the Appendix Pa. S.S. J. I. (Civ. 4th) Table A. which

include consideration of smoking related medical conditions such as chronic respiratory conditions (CLRD), lung cancer mortality, ischemic heart disease, etc.  Even if smoking is relevant to the issue of life expectancy as Defendants suggest, the evidence on life expectancy that a jury will consider, i.e. life expectancy tables, produced by actuaries, already take smoking into consideration by including the impact of smoking and disease attributed to smoking on life expectancy. Therefore, there is no need for the evidence as other evidence addresses Defendants'' concern.

62.  Smoking did not have any effect on Dr. Kennedy's May 16, 2016 misdiagnosis.

63.  Smoking did not have any effect on Dr. Obeng's failure to provide a proper history of a fall from a height to Dr. Kennedy on the x-ray requisitions form.

64.  There is no expert report establishing that Mrs. Hunter violated any instructions from Dr. Obeng.

65.  Finally, as alluded to above, Plaintiff will undoubtedly suffer undue prejudice should any reference to smoking be allowed for any reason, and specific to this motion, relative to contributory and/or comparative negligence for which it is not legally and/or logically relevant. See Fed. Rule

Evid. 403. Moreover, it would only serve to prejudice, confuse and mislead the jury as to the actual issues in the case, that is, the negligence on the part of the Defendants.  Id.

66.  Any limited probative value of smoking evidence is clearly outweighed by the high prejudicial impact.  Palar v. Wohlend, 2017 WL 423470 (PA. Super. 2017) allow. Den. Pa. No. 164 WAL 2017 10/2/2017 Certain jurors are prejudiced against smoking/smokers for personal reasons.

67.  As the Pennsylvania Superior Court stated in Palar, reviewing the trial court decision:

> "Palar's smoking would have focused on the degree to which she was to blame of developing cancer instead of whether Dr. Wohlwend should have noticed the cancerous lesion on her lung while resection was the only treatment that would have been necessary guarantee her a seventy-three percent chance of survival.  Any limited probative value the evidence may have had, therefore, was far outweighed by its potential to unduly prejudice." (Superior Court affirmed trial court decision to exclude smoking on life expectancy basis)

Palar v. Wohlwend, 2017 WL 423470 (PA. Super. 2017) allow. Den. Pa. No. 164 WAL 2017 10/2/2017

68.  This Honorable Court stated the issue of smoking may be relevant to the "window of opportunity" issue.  Dr. Wapner wrote on May 15, 2018

that "I feel that within a reasonable degree of medical certainty that the delay in treatment of this calcaneal fracture did not negatively impact Mrs. Hunters' long-term prognosis.  The defense expert Dr. Daley wrote in his report "Therefore any delay in diagnosis of the fracture did not impact Mrs. Hunter's treatment course." (Daley report May 15, 2019) Neither wrote that smoking caused a delay in swelling reduction, although they had an opportunity.

69.  Defendant has the burden of proof on comparative fault.  When medical causation is at issue, the defendants must offer expert testimony of causation. Pascal v. Carter, supra.  Defendants have offered no expert testimony or support that any injury related conduct of Mrs. Hunter contributed in fact to her harm including but not limited to any issue about going to an orthopedic surgeon after May 31, 2016.

70.  The document referencing orthopedics was attempted to be sent to Travelers Insurance not Margaret Hunter on May 31, 2016 at 4:36 p.m. The document states "Reason for Error" listing multiple reasons why the document could not be sent.

71.  The patient did not undergo surgery because of the complications caused by the misdiagnosis, as explained to her by the podiatrist, Dr. Smith

24

when Mrs. Hunter saw her for the first time on June 8, 2016.  There is no

evidence that Mrs. Hunter had any prior knowledge about any potential

healing problems related to calcaneal surgery prior to June 8, 2016. There

was no occasion for any surgical complications to be discussed with her.

Such evidence can only be considered prospectively, after the instructions

on the issue of comparative fault.

WHEREFORE, evidence of smoking should be excluded at trial for

any purpose a it is either not legally relevant or irrelevant for the proffered

purposes.  Fed. Rule Evid. 401-403.

Respectfully submitted,

FOLEY LAW FIRM

By:  Michael J. Foley
        Michael J. Foley, Esquire