

**User Name:** Laura Agostina
**Date and Time:** Friday, July 31, 2020 5:41:00 PM EDT
**Job Number:** 122385907

## Document (1)

1. *Sutch v. Roxborough Mem. Hosp., 2013 Pa. Super. Unpub. LEXIS 2824*
   **Client/Matter:** -None-
   **Search Terms:** Sutch v. Roxborough Mem. Hosp., 2013 Pa. Super. Unpub. LEXIS 2824
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

🅐 Neutral
As of: July 31, 2020 9:41 PM Z

# *Sutch v. Roxborough Mem. Hosp.*

Superior Court of Pennsylvania

November 4, 2013, Decided; November 4, 2013, Filed

No. 3246 EDA 2012, No. 3249 EDA 2012, No. 3255 EDA 2012, No. 3257 EDA 2012

**Reporter**
2013 Pa. Super. Unpub. LEXIS 2824 *

ROSALIND W. SUTCH, as Executrix of the Estate of Rosalind Wilson, Deceased, v. ROXBOROUGH MEMORIAL HOSPITAL, SOLIS HEALTHCARE, LP, ANDORRA RADIOLOGY ASSOCIATION, TENET HEALTHSYSTEM ROXBOROUGH, LLC, TENET, INC., TENET GROUP, LLC, ROXBOROUGH EMERGENCY PHYSICIAN ASSOCIATES, LLC, BARBARA ROBINS, M.D., JEFFREY GELLER, M.D., AND MELANIO AGUIRRE, M.D.; APPEAL OF: JEFFREY GELLER, M.D., AND ROXBOROUGH EMERGENCY PHYSICIAN ASSOCIATES, LLC, Appellants;ROSALIND W. SUTCH, as Executrix of the Estate of Rosalind Wilson, Deceased, v. ROXBOROUGH MEMORIAL HOSPITAL, SOLIS HEALTHCARE, LP, ANDORRA RADIOLOGY ASSOCIATION, TENET HEALTHSYSTEM ROXBOROUGH, LLC, TENET, INC., TENET GROUP, LLC, ROXBOROUGH EMERGENCY PHYSICIAN ASSOCIATES, LLC, JEFFREY BRUCE GELLER, M.D., BARBARA GOLDMAN ROBINS, M.D., MICHAEL DeANGELIS, M.D., ERIN O'MALLEY, M.D., MELANIO DOMINGO AGUIRRE, M.D., RITI PATEL, M.D., SULTANA J. AFROOZ, D.O., AND ROBERT E. DOMANSKI, M.D.; APPEAL OF: BARBARA GOLDMAN ROBINS, M.D., Appellant;ROSALIND W. SUTCH, as Executrix of the Estate of Rosalind Wilson, Deceased, v. ROXBOROUGH MEMORIAL HOSPITAL, SOLIS HEALTHCARE, LP, ANDORRA RADIOLOGY ASSOCIATION, TENET HEALTHSYSTEM ROXBOROUGH, LLC, TENET, INC., TENET GROUP, LLC, ROXBOROUGH EMERGENCY PHYSICIAN ASSOCIATES, LLC, BARBARA GOLDMAN ROBINS, M.D., ROBERT E. DOMANSKI, M.D., MICHAEL DeANGELIS, M.D., ERIN O'MALLEY, M.D., JEFFREY BRUCE GELLER, M.D., MELANIO DOMINGO AGUIRRE, M.D., RITI PATEL, M.D., AND SULTANA J. AFROOZ, D.O.; APPEAL OF: MELANIO DOMINGO AGUIRRE, M.D., Appellant;ROSALIND W. SUTCH, as Executrix of the Estate of Rosalind Wilson, Deceased, v. TENET HEALTHSYSTEM ROXBOROUGH, LLC, d/b/a ROXBOROUGH MEMORIAL HOSPITAL, ROXBOROUGH EMERGENCY PHYSICIAN ASSOCIATES, LLC, BARBARA GOLDMAN ROBINS, M.D., JEFFREY BRUCE GELLER, M.D., MELANIO DOMINGO AGUIRRE, M.D., AND SULTANA J. AFROOZ, D.O.; APPEAL OF: TENET HEALTHSYSTEM ROXBOROUGH, LLC, d/b/a ROXBOROUGH MEMORIAL HOSPITAL AND SULTANA J. AFROOZ, D.O., Appellants

**Notice:** NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

**Subsequent History:** Reported at *Sutch v. Tenet Healthsystem, 91 A.3d 1273, 2013 Pa. Super. LEXIS 5445 (Pa. Super. Ct., Nov. 4, 2013)*

Reported at *Sutch v. Roxborough Mem. Hosp., 91 A.3d 1273, 2013 Pa. Super. LEXIS 5146 (Pa. Super. Ct., Nov. 4, 2013)*

Reported at *Sutch v. Roxborough Mem. Hosp., 91 A.3d 1273, 2013 Pa. Super. LEXIS 5435 (Pa. Super. Ct., Nov. 4, 2013)*

Reported at *Sutch v. Roxborough Mem. Hosp., 91 A.3d 1273, 2013 Pa. Super. LEXIS 5285 (Pa. Super. Ct., Nov. 4, 2013)*

**Prior History:** [*1] Appeal from the Order entered on October 22, 2012 in the Court of Common Pleas of Philadelphia County, Civil Division, No. 0907-0901.

Appeal from the Order entered on October 22, 2012 in the Court of Common Pleas of Philadelphia County, Civil Division, No. 0907-0901.

Appeal from the Order entered on October 22, 2012 in the Court of Common Pleas of Philadelphia County, Civil Division, No. 0907-0901.

Appeal from the Order entered on October 22, 2012 in the Court of Common Pleas of Philadelphia County, Civil Division, No. 0907-0901.

[Sutch v. Roxborough Mem'l Hosp., 2013 Phila. Ct. Com. Pl. LEXIS 156 (May 28, 2013)](#)

## Core Terms

smoking, mistrial, prejudicial, curative, Memorial, lung, cancer, limine, smoker, pre-trial, cocaine, cure, waived, inadmissible, unequivocal, isolated, motorist, nodule, unfair

**Judges:** BEFORE: BENDER, P.J., DONOHUE and MUSMANNO, JJ. MEMORANDUM BY MUSMANNO, J.

**Opinion by:** MUSMANNO

## Opinion

MEMORANDUM BY MUSMANNO, J.

In these consolidated appeals, Jeffrey Geller, M.D. ("Dr. Geller"), Roxborough Emergency Physician Associates, LLC ("REPA"), Barbara Goldman Robins, M.D. ("Dr. Robins"), Melanio Domingo Aguirre, M.D. ("Dr. Aguirre"), Tenet Healthsystem Roxborough, LLC, d/b/a Roxborough Memorial Hospital, and Sultana J. Afrooz, D.O. ("Dr. Afrooz") (collectively "Defendants"), appeal from the Order granting the post-trial Motion for a new trial filed by Rosalind W. Sutch ("Plaintiff"), as Executrix of the Estate of Rosalind Wilson ("decedent"). We affirm.

> The trial court set **[*2]** forth the pertinent history of this appeal as follows:
> This medical malpractice action arises from Plaintiff's allegations that Defendants failed to inform Plaintiff's mother (decedent[]) that a chest x-ray performed at [] Roxborough Memorial Hospital on May 3, 2007, showed a suspicious nodule, which would have required further examination, including a follow-up CT scan. During [decedent's] overnight hospitalization, none of the physicians who cared for her advised her of this 2.3 [centimeter] nodule in her left lung[,] nor did they advise her to seek follow-up care regarding this finding. [Decedent] left the hospital the next day unaware of the existence of the nodule and did not discover its existence until twenty [] months later[,] when it was discovered that she had an 8 [centimeter] malignant nodule in her left lung[,] which had metastasized to other areas of her body. At that time, she was diagnosed with Stage IV lung cancer. [Decedent] died on July 21, 2009, [approximately] six [] months after she was diagnosed. Thereafter, [Plaintiff], as [E]xecutrix of [decedent's] estate[,] brought suit pursuant to the Wrongful Death and Survival Acts.

> Prior to jury selection[, the trial c]ourt heard **[*3]** extensive argument on numerous Pre-Trial matters and [M]otions. Most germane to this appeal was Plaintiff's Motion *in Limine* to preclude any mention of decedent's smoking history. After argument, the parties requested that [the trial c]ourt enter an Order by Agreement of all the parties that [g]ranted Plaintiff's Motion *In Limine* and thereby precluded [] Defendants from "presenting any evidence, testimony, and/or argument regarding decedent's smoking history." [Order, 5/16/12]. This [] Order [(hereinafter "Preclusion Order")] was entered as such on May 16, 2012. Thereafter, on May 18, 2012, a panel of twelve [] jurors and two [] alternates was selected and sworn in to hear the case.

> When trial commenced on May 21, 2012, the remaining named [D]efendants were the hospital (Roxborough Memorial [Hospital]), [REPA,] the emergency room physician (Dr. [] Geller), admitting physician (Dr. [] Aguirre), house physician (Dr. [] Afrooz), and radiologist (Dr. []Rob[]ins). Trial continued for the next eight [] days[,] until May 31, 3012[,] when counsel for [] Dr. Geller[] called [John] Kelly[, D.O. ("Dr. Kelly")], an expert in the field of emergency medicine, to testify on behalf of Dr. Geller. During direct examination, Dr. **[*4]** Kelly was asked whether [] decedent had any cardiac risk factors, to which Dr. Kelly responded by informing

the jury that decedent was a **smoker**.[1] Dr. Kelly completed his testimony, at which time [Plaintiff's counsel requested a sidebar,[2] and the trial c]ourt dismissed the jury and inquired of Dr. Kelly as to whether he was made aware by [] Dr. Geller's counsel[] of [the trial c]ourt's [P]reclusion Order. Dr. Kelly responded that he could not remember having had a discussion with counsel about the [c]ourt's [Preclusion] Order banning the mentioning of decedent's smoking.[3]

The next day, Friday June 1, 2012[,] and the following Monday, June 4, 2012, [the trial c]ourt heard argument as to what should be done in regard to Dr. Kelly's testimony regarding decedent being a smoker. During this time, Plaintiff's counsel made [a M]otion to declare a mistrial.[4] However, it was [the trial c]ourt's decision that a curative instruction would be given, and thus, [the trial c]ourt denied Plaintiff's request for a mistrial.

* * *

Accordingly, prior to any testimony commencing on June 4, 2012, [the trial c]ourt read the following to the jury as a curative instruction:

> I do have something that's very important to read to you. ... **[*5]** Ladies [and] gentlemen of the jury, I need to address you at this point. Lung cancer can be caused by many things. This case is not about its causes. The cause of [decedent's] specific type of lung cancer is not known. Further, smoking should not be considered in this case. Whatever may have caused the lung cancer has nothing to do with the issues of whether [D]efendant[]s breached their standard of care and caused the harm suffered by [decedent]. It has nothing to do with the issues you are considering in this case.
>
> For that reason[,] before I started this trial[,] I [O]rdered[,] and the parties agreed[,] that no party was allowed to discuss any potential reason for the cause of [decedent's] lung cancer. I instructed all counsel to advise their witnesses of the [c]ourt's [O]rder before taking the stand. Last Thursday afternoon[,] Dr. Geller and REPA violated the [c]ourt's Order through testimony introduced from Dr. Kelly. You are instructed to disregard that portion of Dr. Kelly's testimony because it is irrelevant and misleading.
>
> I am instructing you that you are to consider in your deliberations only[:] one, whether [D]efendants breached the standard of care by failing to advise [decedent], her family, or her family physician about **[*6]** the nodule on her lung[; t]wo, whether any such failure increased the harm to [decedent], or decreased her

---

[1] Specifically, following exchange occurred:

> Q. Did she [decedent] have any cardiac risk factors?
>
> A. The patient was a smoker. The patient was hypertensive. So, yes, I mean, those are big risk factors. And the patient had vascular disease, too. [Remainder of answer omitted]

N.T., 5/31/12, at 106-07.

[2] Though Plaintiff's counsel did not *immediately* object to Dr. Kelly's comment regarding decedent's smoking habit (hereinafter referred to as "the smoking reference"), counsel requested a sidebar very shortly thereafter. Furthermore, although the court reporter did not transcribe the sidebar discussion, the trial court states in its Opinion that Plaintiff's counsel "raised the issue of a mistrial" at sidebar. Trial Court Opinion, 5/28/13, at 7.

[3] Following the trial court's **[*7]** questioning of Dr. Kelly, Plaintiff's counsel stated that he had "really grave concerns about what just happened" and that counsel feared that any reference to decedent's smoking habit might "put us in a position of a mistrial." N.T., 5/31/12, at 116. However, Plaintiff's counsel did not specifically request a mistrial at that time. Rather, counsel stated to the trial court that "I ask that we have a chance to discuss it, reflect on it this evening with our clients[,]" and that "I think we need some time to reflect on this and consult with counsel and see if we think a mistrial is in order." *Id*. at 117, 121.

[4] In moving for a mistrial, Plaintiff's counsel stated, *inter alia*, as follows: "[W]e don't know what effect [the smoking reference] had on the jury, but we know it was mentioned and shouldn't have been. ... Under the circumstances, although I am hesitant to do so, I believe we are constrained to raise the issue and request a mistrial." N.T., 6/1/12, at 16. In response, the trial court acknowledged that the issue of whether to move for a mistrial was a "difficult" one, but instructed Plaintiff's counsel that he would have to make a "specific" request for a mistrial if he wished the court **[*8]** to rule upon the motion. *Id*. at 23-24. However, the trial court did not request an immediate response from Plaintiff's counsel; rather, the court specifically instructed Plaintiff's counsel that "I want you to think about it .... I want to know more specifically by Monday[, June 4, 2012, *i.e*., the next day of trial,] how your client feels about these issues and you make the request." *Id*. At the beginning of the next day of trial, the trial court inquired of Plaintiff's counsel whether he wished to "formally" move for a mistrial, to which counsel replied in the affirmative. N.T., 6/4/12, at 6.

> chance of survival[; a]nd three, the amount of damages caused by any such failure.
> And I am asking you to follow these instructions as I am giving them to you, and that's your sworn duty as jurors in this case.
> []N.T., [6/4/12,] at pp. 29-31[.]

Trial Court Opinion, 5/28/13, at 1-3, 9-10 (footnotes added, emphasis in original).

Following the trial court's curative instruction, the defense resumed its case-in-chief. Four days later, the jury returned a verdict in favor of Plaintiff and against only Dr. Aguirre and Roxborough Memorial Hospital, each being found to be 50% causally negligent. The jury assessed damages in the amount of $100,000 under the Survival Act, and $90,000 under the Wrongful Death Act. The jury exonerated the remaining Defendants of any liability.

Plaintiff timely filed post-trial Motions, arguing that she was entitled to a new trial, against all of the Defendants and on all issues, based upon the trial [*9] court's error in denying Plaintiff's Motion for a mistrial. By an Order entered on October 22, 2012, the trial court granted Plaintiff's Motion and ordered a new trial. In response, Defendants timely filed Notices of appeal.

On appeal, Defendants Dr. Geller and REPA raise the following issues for our review:

> I. Must the trial court's granting of a new trial be reversed where the basis upon which the new trial was granted was a violation of an Order on a Motion *in limine* where said Order was an abuse of discretion?
> II. Must the trial court's granting of a new trial be reversed, as an abuse of discretion, where Plaintiff's "request" for a mistrial (following an inadvertent, isolated and unsolicited reference to smoking[,] which was precluded by way of a pretrial Motion) was untimely, equivocal, and non-specific and, thus, ineffective as a matter of Pennsylvania law?
> III. Even assuming, *arguendo*, that Plaintiff's "request" for a mistrial was legally sufficient, should the trial court's granting of a new trial nevertheless be reversed, as an abuse of discretion, where the inadvertent, isolated and unsolicited smoking reference was not so inflammatory and prejudicial as to prevent Plaintiff [*10] from receiving a fair trial-especially where, as here, a "strongly worded" curative instruction cured any prejudice and the record is devoid of any evidence that said smoking reference had any effect on the jury or that Plaintiff suffered actual prejudice or was otherwise precluded from receiving a fair trial?

Brief for Dr. Geller and REPA at 3 (issues renumbered, capitalization omitted).

The remaining Defendants, *i.e.*, Dr. Afrooz, Roxborough Memorial Hospital, and Dr. Robins, have also filed appellate briefs.[5] However, aside from one separate issue raised by Dr. Robins, which we will address separately, the issues contained in the remaining Defendants' briefs are essentially identical to Dr. Geller and REPA's above-mentioned issues. ***See*** Brief for Dr. Geller and REPA at 3; Brief for Dr. Afrooz and Roxborough Memorial Hospital at 5; Brief for Dr. Robins at 4. Accordingly, we will not restate the remaining Defendants' issues herein.

Dr. Robins poses the following separate question for our review: "Should a party who is found not negligent be subjected [*11] to a new trial on the basis of alleged improper conduct committed on behalf of a co-defendant where the jury found other defendants negligent?" Brief for Dr. Robins at 4.

Dr. Robins asserts that "[w]hatever may have been the propriety of the award of a new trial, Dr. Robins should not have been made part of it, because a party who has been found not negligent in a case without error as to her, is entitled to the benefit of the verdict." *Id*. at 15 (footnote omitted). According to Dr. Robins, where, as here, "a party is found not negligent by the jury, and a new trial is awarded on a ground unrelated to the negligence finding, the exonerated defendant is not to be part of the new trial." *Id*. In support of this claim, Dr. Robins chiefly relies upon the Pennsylvania Supreme Court's decision in ***Stokan v. Turnbull**, 480 Pa. 71, 389 A.2d 90 (Pa. 1978)*. ***See*** Brief for Dr. Robins at 15-16.

In ***Stokan***, at the close of trial in a motor vehicle negligence action, the jury found motorist A to be negligent, exonerated motorist B, and awarded damages against motorist A. ***Stokan**, 389 A.2d at 92*. Following the filing of post-trial motions, the trial court ordered a new trial, *against motorist A only*, limited solely to the issue of damages. *Id*. On appeal, the Superior Court modified the trial [*12] court's order limiting the retrial and ordered a new trial on all issues and *against **all** parties*. *Id*. The Supreme Court reversed

---

[5] Dr. Aguirre chose not to file a separate brief, opting to join in the appellate brief filed by Dr. Afrooz and Roxborough Memorial Hospital.

this Court, holding that it was error to include motorist B in the new trial, since the jury verdict resolved the issue of liability in his favor. *Id. at 92-93*. In so holding, the Supreme Court stated that "[t]he granting of a limited retrial is within the [trial] court's discretion when the issue of liability has been determined by the jury ***in a trial free from error***, and the verdict is supported by the evidence." *Id. at 93* (emphasis added).

***Stokan*** is inapposite to the instant case, since, unlike in ***Stokan***, the trial in the instant case was *not* free from error, as we discuss in detail below.[6] If the trial court had granted Plaintiff's Motion for a mistrial concerning Dr. Kelly's smoking reference during the trial, which we hold was the proper course of action, then the case would have never proceeded to a verdict.[7] Furthermore, despite Dr. Robins's contention to the contrary, it is irrelevant that Dr. Kelly was not her witness. Accordingly, the trial court properly determined that Dr. Robins must be included in the retrial of this case.

Next, we address the claim raised by Dr. Geller and REPA[8] that the grant of a new trial was improper because (1) it hinged upon the propriety of the trial court's ruling on Plaintiff's Motion *in limine* that precluded the parties from introducing any evidence regarding decedent's smoking history;(2) the trial court's Preclusion Order constituted an abuse of discretion; and (3) therefore, any violation of the Preclusion Order cannot form the basis of a new trial. **See** Brief for Dr. Geller and REPA at 45. According to Dr. Geller and REPA, contrary to the trial court's statement that the Preclusion Order was entered "by agreement" of the parties, "[t]he trial transcript makes clear that, at no time, did [] counsel [for Dr. Geller and REPA] 'agree' to a blanket prohibition **[*14]** on [] decedent's smoking history ...." *Id.* at 46. Additionally, Dr. Geller and REPA contend that the Preclusion Order caused them unfair prejudice inasmuch as it precluded them from presenting *any* evidence of decedent's smoking habit, which evidence, Dr. Geller and REPA assert, was admissible because it was relevant and probative to the issue of decedent's life expectancy. *Id*. at 47-48.

Before we reach the merits of this claim, we must first address whether it has been properly preserved for our review. It is black-letter law that issues not raised in the trial court are waived and cannot be raised for the first time on appeal. *Pa.R.A.P. 302(a)*. Additionally,

> [i]n order to preserve a claim of error for appellate review, the party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings. Failure to raise such an objection results in waiver of the underlying issue.

*Law Office of Douglas T. Harris v. Phila. Waterfront Partners, LP, 2008 PA Super 222, 957 A.2d 1223, 1229 (Pa. Super. 2008)* (citations omitted).

Here, the trial court conducted a hearing on pre-trial Motions on May 16, 2012 (hereinafter "the Motions Hearing"), at which counsel for Plaintiff argued, in support of Plaintiff's Motion **[*15]** *in limine*, that "all evidence of smoking should be precluded from the case ...." N.T., 5/16/12, at 8. The trial court then inquired whether counsel for any of the Defendants had any argument in response to Plaintiff's Motion *in limine*. *Id*. at 8-9. Neither counsel for Dr. Geller and REPA (hereinafter "REPA/Geller defense counsel") nor counsel for any of the other Defendants responded, and the trial court moved on to address other pre-trial Motions. *Id*. at 9. Following the close of the Motions Hearing, the trial court entered the Preclusion Order, which expressly stated that Plaintiff's Motion *in limine* is granted "*by agreement of the parties*[,]" and that "Defendants are precluded from presenting any evidence, testimony, and/or argument regarding [d]ecedent's smoking history." Preclusion Order, 5/16/12 (emphasis added).

In order to preserve a challenge to the Preclusion Order, REPA/Geller defense counsel was obligated to either voice a specific objection at the Motions Hearing, when afforded the opportunity by the trial court, or file a written objection with the trial court challenging the Preclusion Order. REPA/Geller defense counsel did neither, thus waiving any challenge to the Preclusion Order **[*16]** on appeal.[9] See *Pa.R.A.P. 302(a)*

---

[6] Likewise, the other cases that Dr. Robins relies **[*13]** upon are inapposite and do not entitle her to relief. **See** Brief for Dr. Robins at 16.

[7] Additionally, we point out the trial court's observation in its Opinion that "the violation of [the Preclusion] Order barring [decedent's] smoking habit from trial, may have, in fact, had some impact on the jury's verdict finding [three] of the defendant doctors[, including Dr. Robins,] to be not negligent." Trial Court Opinion, 5/28/13, at 5.

[8] The remaining Defendants do not join in this claim.

[9] Additionally, we note that REPA/Geller defense counsel failed to challenge the Preclusion Order in counsel's response to Plaintiff's Motion for Post-Trial Relief. **See** *Pa.R.C.P. 227.1(b)(1)* (prohibiting the trial court from granting post-trial

2013 Pa. Super. Unpub. LEXIS 2824, *16

(providing that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

According to Dr. Geller and REPA, however, they properly preserved this issue for our review since, following the entry of the Preclusion Order, REPA/Geller defense counsel challenged the Preclusion Order on the first day of trial. *See* Brief for Dr. Geller and REPA at 5, 46. We disagree.

On the first morning of trial, prior to opening arguments, REPA/Geller defense counsel stated to the trial court that "I know Your Honor has already issued an [O]rder on the smoking issue, but it poses a problem for Dr. Geller in that smoking is something that Dr. Geller[,] as the [emergency room physician,] would necessarily have had to have considered in reaching his diagnosis." N.T., 5/21/12, at 22; *see also id*. at **[*17]** 23 (arguing that Dr. Geller "necessarily had to consider [decedent's] history, and a big part of that history ... would be smoking."). On appeal, Dr. Geller and REPA emphasize that, in response to counsel's above comments, the trial court stated, *inter alia*, that "I can revisit any pretrial order that ... I made for good reasons ...." *Id*. at 25; *see also* Brief for Dr. Geller and REPA at 46.

Although REPA/Geller defense counsel did, in fact, state, *several days after the entry of the Preclusion Order*, that the Order "poses a problem" for Dr. Geller, this mere assertion does not absolve counsel of her responsibility to make a timely oral or written challenge to the Preclusion Order, which she failed to do. Likewise, the fact that the trial court expressed that it had the authority to revisit its prior rulings on pre-trial motions for "good reasons" does not alter this conclusion. Finally, even if true, it is irrelevant that REPA/Geller defense counsel did not affirmatively state her agreement to the Preclusion Order.

Nevertheless, even if Dr. Geller and REPA had not waived this claim, we would find that it lacks merit.

> When assessing the propriety of a ruling on a motion *in limine*, this **[*18]** Court applies the standard applicable to the particular evidentiary matter under consideration. The admission or exclusion of evidence is a decision subject to the discretion of the trial court whose decision will not be disturbed absent a clear abuse of that discretion,

> or an error of law.

*Houdeshell v. Rice*, 2007 PA Super 406, 939 A.2d 981, 983 (Pa. Super. 2007) (citations omitted).

*Pennsylvania Rule of Evidence 402* provides that all relevant evidence is admissible, except as otherwise provided by law. *Pa.R.E. 402*. Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See Pa.R.E. 403*. The term unfair prejudice, as used in this rule, means a tendency to suggest a decision on an improper basis, or to divert the jury's attention away from its duty of weighing the evidence impartially. *See Pa.R.E. 403*, cmt. The exclusionary policy of *Rule 403* is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions of the case. *Commonwealth v. Page*, 2009 PA Super 20, 965 A.2d 1212, 1220 (Pa. Super. 2009).

In the instant case, we discern no abuse of discretion by the trial court in granting Plaintiff's Motion *in limine* and entering **[*19]** the Preclusion Order. As the trial court properly reasoned, Plaintiff would suffer unfair prejudice if the jury discovered that Plaintiff's decedent was a smoker for approximately 50 years, in that this information might lead the jury to hold decedent accountable, to some extent, for contributing to the cause of her death, *i.e.*, lung cancer. *See* Trial Court Opinion, 5/28/13, at 12. This highly prejudicial information could distract the jury and prevent it from impartially weighing the evidence. Furthermore, there was no probative value to this evidence. It is undisputed that evidence of decedent's smoking habit was irrelevant to the issue of causation, and this case was not bifurcated on the issues of liability and damages. Accordingly, the trial court properly precluded the parties from introducing any evidence pertaining to decedent's smoking history.

We next address the claim, raised by all of the Defendants, that since Plaintiff's counsel purportedly failed to make a timely, specific, and unequivocal request for a mistrial, Plaintiff waived the issue and there is thus no basis upon which a new trial may be awarded. *See* Brief for Dr. Geller and REPA at 24-33; Brief for Dr. Robins **[*20]** at 18-20; Brief for Dr. Afrooz and Roxborough Memorial Hospital at 29-32.

---

relief when relief was not sought during pre-trial proceedings, or at trial, at a time when the trial court could have corrected the problem).

Initially, we set forth our standard of review applicable to a challenge to a trial court's grant of a motion for a new trial, which is for an abuse of discretion. *Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1121 (Pa. 2000).

> The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings. Although all new trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

*Id.* at 1121-22 (citations omitted).

Here, Defendants' waiver claim has been concisely summarized by Dr. Geller and REPA as follows:

> Th[e] record makes clear that, upon the inadvertent, isolated and unsolicited reference to smoking by [Dr. Kelly], neither [P]laintiff nor her counsel timely, specific and unequivocal [*sic*] moved for a mistrial. Instead, [P]laintiff's counsel chose to seek lesser remedies and drafted a "strongly worded" curative instruction (which **[*21]** included a punitive admonition as against [Dr. Geller and REPA,] whose witness made the blunder), which clearly advised the jury to disregard the smoking testimony and reminded them of the pertinent issues to decide. Significantly, Pennsylvania law adheres to a "strict rule of issue preservation" whereby a failure to make an immediate, specific and unequivocal request for a mistrial is tantamount to a waiver. The law does not permit a party or her counsel to hold a motion for a mistrial in abeyance until after the verdict is announced, as requested by [P]laintiff's counsel here. There is no excuse or justification recognized under the law to avoid application of the strict rule of waiver. Nor is a trial court able to circumvent this rule by its own volition. [] [Plaintiff] is bound by the strategic decisions of her counsel and has no legal basis to seek a new trial.

Brief for Dr. Geller and REPA at 21; *see also id*. at 25 (citing, *inter alia*, *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595, 597 (Pa. 1981) (holding that "[t]o maximize our efficiency and to maintain and enhance the quality of our dispute resolution process, strict compliance with the procedures designed for issue preservation is essential.")).

In support of their waiver argument, Defendants chiefly **[*22]** rely upon the decision of the Pennsylvania Supreme Court in *Harman, supra.* *See* Brief for Dr. Geller and REPA at 24; Brief for Dr. Robins at 19; Brief for Dr. Afrooz and Roxborough Memorial Hospital at 30. However, Defendants' reliance upon *Harman* is misplaced as that case actually *undermines* their claim. In *Harman*, the trial court judge engaged in an improper off-the-record conversation with an expert defense witness in the presence of the jury, and, in response, the plaintiffs' trial counsel moved for a mistrial *one hour* after the event transpired. *Id. at 1126*. The trial court denied the mistrial motion and instead issued a curative instruction to the jury. *Id.* When asked by the trial court why plaintiffs' counsel did not take prompt action, counsel explained that he did not want to draw further attention to the improper off-the-record conversation. *Id.* The Supreme Court held that although the Court "can accept counsel's concern about further alerting the jury," counsel had no justification for failing to raise a timely objection. *Id*. Based upon counsel's failure, the *Harman* Court held that the plaintiffs had waived any challenge to the improper conversation, and the trial court thus properly **[*23]** denied the plaintiffs' motion for a new trial. *Id. at 1126-27*. In so holding, the Supreme Court stated that "*[t]he preferred course of action would have been for counsel to move for a prompt sidebar discussion* with the judge to alert the trial court to what he perceived as on-going prejudicial behavior." *Id. at 1126* (emphasis added).

In the instant case, although Plaintiff's counsel did not immediately object to the improper smoking reference, shortly thereafter, counsel requested a sidebar discussion with the trial judge and moved for a mistrial at that time. Counsel's actions comported with the "preferred course of action" recommended by the *Harman* Court. *See id.*[10]

Regarding Defendants' instant waiver claim, the trial court stated in its Opinion as follows:

> Defendants are correct that Plaintiff's [counsel was] somewhat equivocal in [his] request that a mistrial **[*24]** be declared, and so advised [the trial

---

[10] Additionally, the trial court in this case observed that Plaintiff's counsel's actions comported with the trial court's courtroom rules, stating: "[a]s counsel who try matters before this [c]ourt are aware, it has always been this [c]ourt's policy and practice that these issues be raised at an appropriate time out of the presence of the jury." Trial Court Opinion, 5/28/13, at 7.

c]ourt as to the significant monetary costs that had been outlaid to date, as well as the personal, monetary and emotional toll the trial had taken on [decedent's] numerous family members who were in attendance during the long [t]rial period. [The trial c]ourt was mindful of these costs and so granted all counsel, [for P]laintiff and [D]efendants, the opportunity to consider their respective positions and[,] in so doing, **specifically advised and directed [P]laintiff's counsel to take the weekend to once again consult with their client** and advise [the trial c]ourt on Monday, June 4, 2012[,] as to their decision to formally request a mistrial. [**See** N.T., 6/1/12, at 23-24.[11]] Given [the trial c]ourt's directive, Plaintiff's counsel cannot and should not be held accountable for [the trial c]ourt's attempts at reaching a well thought out decision with regard to the declaration of a mistrial.

Trial Court Opinion, 5/28/13, at 8 (emphasis and footnote added). The trial court's sound reasoning is supported by the record and the law.

Additionally, we are unpersuaded by Defendants' **[*25]** argument that the trial court, in granting a new trial, thereby improperly granted Plaintiff a "second bite at the apple." **See, e.g**., Brief for Dr. Geller and REPA at 26 (asserting that "the law does not permit a party or her counsel to 'hedge their bets'-effectively holding in abeyance a motion for a mistrial-until after the verdict is announced and decide, at that point, if the party finds the verdict satisfactory." (emphasis in original)); **see also** Brief for Dr. Afrooz and Roxborough Memorial Hospital at 32. As stated above, Plaintiff's counsel made a specific and unequivocal request for a mistrial at the precise time called for by the trial court judge, *i.e.*, prior to the trial recommencing on June 4, 2012. Contrary to Defendants' protestations, this is not a case wherein the trial court impermissibly permitted a party to "look behind" an unfavorable jury verdict and retry the case. Accordingly, there is no merit to Defendants' claim that Plaintiff waived her right to request a mistrial.

In their final issue, Defendants argue that even if Plaintiff's counsel had made a legally sufficient request for a mistrial, the trial court abused its discretion by granting a new trial because **[*26]** the "isolated" and "unsolicited" smoking reference by Dr. Kelly was not so inflammatory and prejudicial as to prevent Plaintiff from receiving a fair trial-particularly in light of the trial court's

"strongly worded" curative instruction, which, Defendants assert, cured any prejudice that Plaintiff might have suffered from the smoking reference. **See** Brief for Dr. Geller and REPA at 37-45; Brief for Dr. Robins at 20-21; Brief for Dr. Afrooz and Roxborough Memorial Hospital at 20-26.

Where, as here, a party's motion for a new trial pertains to allegedly prejudicial remarks made during trial, this Court has stated that "a new trial is to be granted where[] the unavoidable effect of the conduct or language was to prejudice the fact[-]finder to the extent that the fact[-]finder was rendered incapable of fairly weighing the evidence and entering an objective verdict." *Poust v. Hylton, 2007 PA Super 370, 940 A.2d 380, 385 (Pa. Super. 2007)* (citation omitted); **see also** *id. at 382* (stating that "where the remark is obviously prejudicial, it is an abuse of discretion for the court below to refuse a new trial." (citation omitted)). Additionally, we have observed that the decision of whether to grant or deny a motion for a mistrial based upon an allegedly prejudicial remark **[*27]** made during trial "must necessarily rest primarily in the discretion of the trial court. Absent a clear abuse of that discretion, an appellate court will not disturb the trial court's ruling." *Clark v. Hoerner, 362 Pa. Super. 588, 525 A.2d 377, 381 (Pa. Super. 1987)* (internal citation omitted). "Whether the trial court abused its discretion in [granting] a new trial will be determined by an examination of the remark made, the circumstances under which it was made and the precautions taken by court and counsel to remove its prejudicial effects." *Hill v. Reynolds, 384 Pa. Super. 34, 557 A.2d 759, 765-66 (Pa. Super. 1989)* (citation and quotation marks omitted).

Initially, Defendants argue that the trial court abused its discretion in ordering a new trial because there is no evidence that Dr. Kelly's isolated smoking reference had any effect on the jury, or that Plaintiff suffered *any* prejudice from the smoking reference. **See** Brief for Dr. Geller and REPA at 38-43; Brief for Dr. Afrooz and Roxborough Memorial Hospital at 21-24.

> In response to this claim, the trial court stated that
>
> it is [the trial c]ourt's determination that in a failure to warn medical malpractice matter involving a death from lung cancer, advising the jury that decedent was a smoker, when all parties agreed prior to trial to ban decedent's smoking history, is so egregious **[*28]** that there can be no cure to the resulting prejudice, other than a New Trial.
> * * *

---

[11] At the beginning of the proceedings on Monday, June 4, Plaintiff's counsel formally moved for a mistrial. N.T., 6/4/12, at 6.

Case 3:17-cv-00007-JFS   Document 233-1   Filed 07/31/20   Page 10 of 11

Page 9 of 10
2013 Pa. Super. Unpub. LEXIS 2824, *28

[F]ollowing Dr. Kelly's testimony wherein he advised the jury that decedent was a smoker, [] Plaintiff had no effective way of addressing the smoking issue with the jury or softening its impact. Plaintiff had already presented its case-in-chief and had rested. Other than the curative instruction, the jury was not provided with any other testimony or evidence that decedent's smoking history was absolutely irrelevant to their legal and factual determinations. Moreover, Plaintiff[] had no ability to gauge its effect on the jury. Given [the trial court's Preclusion] Order precluding any evidence of decedent's smoking, Plaintiff[] could not and did not[,] during *voir dire*[,] inquire as to the jury panel's potential biases toward smokers in general, and specifically, smokers who develop lung cancer in light of the warnings surrounding smoking being the number one cause of lung cancer.

Trial Court Opinion, 5/28/13, at 11 (citation, emphasis, and quotation marks omitted). Accordingly, the trial court held that Dr. Kelly's single smoking reference was so obviously prejudicial that it deprived Plaintiff from receiving a fair **[*29]** and impartial jury trial. *Id.* at 11, 14. Our review confirms that the trial court's foregoing rationale and holding is supported by the record and the law.

In support of the trial court's holding in this regard, the court relied upon the reasoning of this Court in ***Poust, supra.*** *See* Trial Court Opinion, 5/28/13, at 12-13. In ***Poust***, similar to the case at bar, the trial court judge[12] granted the plaintiff's pre-trial motion *in limine*, specifically precluding defense counsel from mentioning the word "cocaine" with reference to the decedent during the course of the jury trial. ***Poust, 940 A.2d at 382-83***.[13] During cross-examination of the plaintiff's expert witness, however, defense counsel specifically asked the witness a question referencing that the decedent had "a cocaine metabolite" in his system. ***Id. at 383***. Counsel for plaintiff immediately objected to this inadmissible comment, and the trial court sustained the objection. *Id*. At sidebar, plaintiff's counsel requested a mistrial. *Id*. Later that same day, the trial court denied the motion for a mistrial. ***Id. at 384***. Additionally, the court declined to give any curative instruction to the jury, fearing that any such instruction might have the unwanted effect of again calling the **[*30]** jury's attention to the word "cocaine." *Id*.

On appeal, a panel of this Court reversed, holding that the trial court had "clearly abused its discretion" by denying the plaintiff's motion for a mistrial, since defense counsel's uttering of the "obviously prejudicial" word "cocaine," and counsel's disregard of the trial court's order precluding any reference to this word, "tainted the entire judicial proceeding[,]" and "compromised the ability of [the plaintiff] to receive a fair trial." ***Id. at 385, 386***. In so holding, the ***Poust*** Court stated that

> [t]he grant of a mistrial was required in order to promote fundamental fairness, to ensure professional respect for the rulings of the trial court, to guarantee the orderly administration of justice, and to preserve the **[*31]** sanctity of the rule of law. Here,-it is abundantly clear that no curative instruction could have obliterated the taint of defense counsel's use of the word "cocaine" [during trial].

***Id. at 387***. Accordingly, this Court ordered the trial court to grant the plaintiff a new trial on the issues of both liability and damages. *Id*.

Contrary to Defendants' assertion, the case *sub judice* is closely analogous to ***Poust***, and ***Poust*** lends support to the trial court's grant of a new trial in this case. In both cases, the trial court entered a clear and unequivocal pre-trial order precluding the parties from referring to "cocaine" or "smoking" (respectively) and, in both cases, the order was violated at trial via testimony introducing the precluded language. Furthermore, the improper remark from Dr. Kelly that decedent was a "smoker," in a "failure to warn" medical malpractice action involving decedent's death from lung cancer, was, as in ***Poust***, highly prejudicial.

According to Defendants, however, ***Poust*** is distinguishable because, in that case, the Superior Court specifically found that defense counsel's use of the word "cocaine" was *intentional*, whereas, here, the trial court made no such finding, and the **[*32]** smoking reference was made by a defense witness, not defense counsel. *See* Brief for Dr. Geller and REPA at 44; Brief

---

[12] The trial court judge who presided at trial in ***Poust***, the Honorable Paul Panepinto, also presided over the trial in the instant case.

[13] In ***Poust***, the plaintiff's decedent was riding his bicycle when he struck and killed by a tractor-trailer operated by the defendant. ***Poust, 940 A.2d at 381***. Liability in that case was fiercely contested, as the defendant maintained that the decedent had negligently operated his bicycle, causing it to collide with the tractor-trailer. ***Id. at 381-82***.

for Dr. Afrooz and Roxborough Memorial Hospital at 27. Although it is undisputable that there are factual differences between *Poust* and the instant case, we nevertheless view the rationale and holding of *Poust* applicable to this case. The *Poust* decision did not hinge upon *which person* uttered the prejudicial remark, but, rather, on the fact that the "obviously prejudicial" remark was made at trial. Further, even assuming, *arguendo*, that Dr. Kelly's smoking reference was not intentional, this does not alter the result since the fact remains that the jury was exposed to the inadmissible and prejudicial smoking reference.

Finally, Defendants argue that the "strongly worded" curative instruction that the trial court gave to the jury, *see supra*, pgs. 6-7, was sufficient to cure any prejudice that may have resulted from the introduction of the smoking reference. *See* Brief for Dr. Geller and REPA at 35; Brief for Dr. Robins at 20; Brief for Dr. Afrooz and Roxborough Memorial Hospital at 27-28. We disagree.

Where, as here, a trial court determines that a new trial is necessary **[*33]** based upon the introduction of inadmissible, prejudicial evidence at trial, and that a curative instruction was insufficient to cure the prejudice caused by the introduction of the evidence, an appellate court "may only reverse in such a case if the trial judge is guilty of a gross abuse of discretion." *Boscia v. Massaro*, 365 Pa. Super. 271, 529 A.2d 504, 505 (Pa. Super. 1987). In **Boscia**, this Court stated that "[t]hough an appropriate charge may correct harmful error, improperly admitted evidence may be so prejudicial that a new trial is required." *Id. at 507*; *see also id.* (upholding the trial court's grant of a new trial, which was based upon defense counsel's introduction of inadmissible, prejudicial testimony at trial, and holding that the trial court did not err in finding that the curative instruction that it gave to the jury regarding the inadmissible testimony was insufficient to cure its prejudicial impact on the jury).

Here, although the trial court initially had determined, "with heavy hesitation," that a "strongly worded" curative instruction could have cured the prejudice to Plaintiff from the introduction of the smoking reference, upon reconsideration, the court opined that its initial determination was wrong. Trial Court Opinion, 5/28/13, at 13-14. Specifically, **[*34]** the trial court stated that

> after reflection and due consideration, [the court] does not believe that even a strongly worded curative instruction such as the one given to the jury in the instant matter could have cured the prejudicial effect that was created when they were told that [] decedent was[,] in fact[,] a **smoker**. As some legal minds have proffered, a curative instruction may unfortunately sometimes serve to highlight to the jury a fact (**decedent was a smoker)** that the [trial c]ourt was attempting to eradicate from their collective memory and thought process.

*Id*. at 10 (emphasis in original); *see also Commonwealth v. Spotz, 582 Pa. 207, 870 A.2d 822, 832 (Pa. 2005)* (observing that "[o]bjections sometimes highlight the issue for the jury, and curative instructions always do.").

Judge Panepinto, who issued the curative instruction and had observed the jury throughout the trial, was in the best position to judge the effect of both the smoking reference and the curative instruction on the jury, and we will not disturb his determination that no curative instruction could have removed the taint injected in the case by the obviously prejudicial smoking reference. *See Boscia, 529 A.2d at 508* (holding that "[w]e must afford the judge great discretion in making [a] decision [whether to order **[*35]** a new trial] because he too is present in the courtroom as the evidence is presented. As does the jury, he develops a feel for the human pulse of the case."); *see also Clark, 525 A.2d at 381* (stating that "[a] trial judge is in the best position to observe the atmosphere in which a trial is being conducted and to determine whether a statement in the heat of trial by ... a witness has had a prejudicial effect on the jury."); *see also Poust, 940 A.2d at 387* (holding that no curative instruction could have obliterated the taint introduced by defense counsel's use of the precluded word "cocaine" in reference to the plaintiff's decedent).

For the foregoing reasons, we hold that the trial court did not abuse its discretion in granting Plaintiff's post-trial Motion for a new trial, and we thus remand the matter to the trial court for a new trial on the issues of both liability and damages, and against all parties.

Order affirmed.

Judgment Entered.

Date: 11/4/2013

**End of Document**