## IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | |
|---|---|
| MARIA PALAR, AS EXECUTRIX OF THE ESTATE OF KATHERINE PALAR, DECEASED<br><br>v.<br><br>JOHN WOHLWEND, ARIS TELERADIOLOGY, KAMAL KHALAF AND PUNXSUTAWNEY AREA HOSPITAL<br><br>PETITION OF: JOHN WOHLWEND AND ARIS TELERADIOLOGY | : No. 164 WAL 2017<br>:<br>:<br>: Petition for Allowance of Appeal from<br>: the Order of the Superior Court |

## ORDER

**PER CURIAM**

    **AND NOW**, this 2nd day of October, 2017, the Petition for Allowance of Appeal is **DENIED**.

2017 WL 243470
Only the Westlaw citation is currently available.
**NON–PRECEDENTIAL DECISION—
SEE SUPERIOR COURT I.O.P. 65.37**
Superior Court of Pennsylvania.

Maria Palar, as Executrix of the
Estate of Katherine Palar, Deceased
v.
John Wohlwend, Aris Teleradiology, Kamal
Khalaf and Punxsutawney Area Hospital,
Appeal of: John Wohlwend and Aris Teleradiology

No. 530 WDA 2016
|
FILED JANUARY 20, 2017

Appeal from the Judgment entered March 23, 2016, in the Court of Common Pleas of Jefferson County, Civil Division, No(s): 123–2014 CV

BEFORE: DUBOW, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:

*1 John Wohlwend, M.D. ("Dr. Wohlwend"), and his employer, Aris Teleradiology ("Aris") (collectively, "Defendants"), appeal from the Judgment entered on March 23, 2016,[1] following a jury verdict in favor of Katherine Palar ("Palar"), deceased.[2] We affirm.

In 2009, Palar developed back pain. Palar's primary care physician sent her to Punxsatawney Area Hospital ("Hospital") for two MRIs of her spine: one on March 9, 2009, and another on April 13, 2009. Kamal Khalaf, M.D. ("Dr. Khalaf"), a radiologist at Hospital, obtained the MRI images, and sent them to Aris for review. Dr. Wohlwend reviewed the MRIs for Aris, and neither of his reports mentioned any lung abnormalities.

In 2010, Palar developed a cough, and was sent to Hospital for a chest x-ray. Dr. Khalaf reviewed the x-ray and reported that he found no significant pathology.

After suffering from continued bouts of coughing, Palar was sent to Hospital for another chest x-ray in 2012. Dr. Khalaf reviewed the x-ray and reported that he found no significant pathology.

In 2013, Palar received a chest x-ray for asthma. Dr. Khalaf reviewed the x-ray, and found a mass on Palar's right lung. Dr. Khalaf recommended that Palar undergo a computed tomography ("CT") scan. The CT scan revealed a 4.8 by 2.5 centimeter mass, which was subsequently identified as cancerous. Palar ultimately was diagnosed with unresectable Stage IIIA non-small cell lung cancer, metastatic to the lymph nodes. Palar subsequently underwent 33 radiation treatments and multiple rounds of chemotherapy.

In January 2014, Palar filed a Complaint against Dr. Wohlwend, Aris, Dr. Khalaf, and Hospital, asserting a medical malpractice theory of negligence. Palar claimed that her lung cancer diagnosis was delayed by four years because Dr. Wohlwend and Dr. Khalaf negligently failed to detect the mass when they reviewed her various MRIs and chest x-rays.

In November 2015, shortly before the start of trial, Palar began to have breathing issues, balance problems, dizziness and difficulty with memory. Palar's primary care physician ordered a CT scan, which took place on November 3, 2015. Palar's counsel sent a copy of the report from the CT scan to Defendants' counsel the same day. On November 5, 2015, Palar's oncology expert, Ronald H. Blum, M.D. ("Dr. Blum"), submitted a supplemental expert report, indicating that the CT scan revealed that Palar's cancer had metastasized to her brain, and that she would almost certainly die as a result of her cancer.[3]

*2 Prior to trial, Palar and Defendants filed several Motions in *limine*. Relevantly, Palar filed a Motion in *limine* to preclude evidence that she was contributorily or comparatively negligent by smoking; evidence of her history of smoking; and evidence of her prior diagnosis of depression. The trial court granted Palar's Motion. Defendants also filed Motions in *limine* to preclude any argument, testimony or evidence related to hearsay statements (specifically regarding Palar's conversations with her primary care physician or any other treating physician about her condition), as well as any evidence related to Palar's November 3, 2015 CT scan. The trial court granted Defendants' Motion in *limine* to preclude evidence of hearsay statements by any healthcare provider

regarding Palar's condition, but denied Defendants' Motion in *limine* to preclude evidence related to the November 3, 2015 CT scan. Defendants also filed a Motion to strike Dr. Blum's supplemental expert report, which the trial court denied. Dr. Khalaf and Hospital also filed a Motion in *limine* to preclude evidence regarding the November 3, 2013 CT scan, or, in the alternative, to continue the case to allow more time to prepare for trial. The trial court denied the Motion in *limine*.

On November 13, 2015, the jury returned a verdict in favor of Palar, and allocated liability equally among Dr. Wohlwend and Dr. Khalaf.[4] The jury awarded Palar a total of $3 million—representing lump sums of $1.5 million for past economic loss, and $1.5 million for future noneconomic loss—to be apportioned in accordance with the jury's allocation of fault.

Defendants filed post-trial Motions, requesting judgment notwithstanding the verdict, a new trial, a new trial on damages, or a substantial remittitur of the verdict. The trial court denied the Motions in its Order dated March 11, 2016. On March 23, 2016, Judgment was entered against Defendants in the amount of $1,546,808.88.[5]

Defendants filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Defendants raise the following questions for review:

> I. Whether the trial court erred and abused its discretion in failing to grant Defendants' [M]otion for [judgment notwithstanding the verdict] or a new trial in circumstances where [Dr. Khalaf] had a subsequent —and substantially better—opportunity to diagnose [Palar's] cancer such that his conduct, and not that of Defendants, was the actual, superseding cause of [Palar's] harm?
>
> II. Whether the trial court erred and abused its discretion in precluding evidence of [Palar's] history of depression where [Palar] placed her mental health at issue in connection with her claim for non-economic damages?
>
> III. Whether the trial court erred and abused its discretion by precluding evidence and testimony regarding [Palar's] smoking history in circumstances where this information was: (i) highly relevant to the issue of [Palar's] life expectancy, health and physical condition prior to her injuries[,] and (ii) directly relevant to the quality of information that the respective Defendants possessed at the time they reviewed [Palar's] MRIs and x-rays?
>
> IV. Whether the trial court erred and abused its discretion in denying Defendants' request for a new trial in circumstances where the trial court improperly precluded Defendants from cross-examining their co-defendant, Dr. Khalaf, about [Palar's] smoking history after Dr. Khalaf's counsel asked Dr. Khalaf whether he had testified about "all" he knew about the [Palar's] health condition and, hence, "opened the door" to testimony regarding the fact [that] Dr. Khalaf *actually* knew about [Palar's] long smoking history when he reviewed her x-rays?
>
> V. Whether the trial court erred and abused its discretion in allowing [Palar] and her expert to present hearsay testimony regarding information that [Palar's] treating physician (a non-witness in the case) purportedly conveyed to [Palar] regarding the alleged metastasis of the cancer to [her] brain, in circumstances where this eleventh-hour dramatic change in [Palar's] health was material to [Palar's] claims of causation[,] and caused Defendants severe prejudice?

*3 Brief for Defendants at 5 (issues renumbered, emphasis in original).

In their first claim, Defendants aver that they are entitled to judgment notwithstanding the verdict because Palar failed to prove causation. *Id.* at 40. Defendants argue that Dr. Khalaf's failure to diagnose Palar's cancer was a superseding, intervening cause of Palar's harm, which relieved Defendants of liability. *Id.* at 41. Defendants claim that if Dr. Khalaf had identified Palar's cancer in her May 9, 2010 chest x-ray, when Palar's cancer was "at virtually the same stage it was when Dr. Wohlwend interpreted the relevant imaging studies in 2009," the tumor was still resectable, and Palar would not have been required to receive chemotherapy. *Id.* at 41–42, 44. Defendants also contend, in the alternative, that they are entitled to a new trial because the jury should have been charged on the issue of superseding causes. *Id.* at 45.

"The entry of judgment notwithstanding a jury verdict to the contrary is a drastic remedy. A court cannot lightly

ignore the findings of a duly selected jury." *Neal v. Lu*, 530 A.2d 103, 110 (Pa. Super. 1987).

> There are two bases upon which a court may enter a judgment n.o.v.: (1) the movant is entitled to judgment as a matter of law, or (2) the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adversely to the movant, the law nonetheless requires a verdict in his favor; whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.
>
> * * *
>
> We have held that in reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a court should only enter a judgment n.o.v. in a clear case and must resolve any doubts in favor of the verdict winner. A trial court's grant or denial of a judgment n.o.v. will be disturbed only for an abuse of discretion or an error of law. In examining this determination, [this Court's] scope of review is plenary, as it is with any review of questions of law.

*Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 907–08 (Pa. Super. 2007) (citation and brackets omitted).

> To establish a *prima facie* case of medical malpractice, the plaintiff must prove that 1) the medical practitioner owed a duty to the plaintiff; 2) the practitioner breached that duty; 3) the breach was the proximate cause of, or a substantial factor in, bringing about the harm the plaintiff suffered; and 4) the damages suffered were the direct result of the harm. If the circumstances surrounding a claim of malpractice are beyond the knowledge of the average lay person, the plaintiff must present an expert to testify that the conduct of the practitioner deviated from good and acceptable medical standards, and that such deviation was a substantial factor in causing the harm suffered.

*\*4 Carrozza v. Greenbaum*, 866 A.2d 369, 379 (Pa. Super. 2004) (citations and quotation marks omitted).

Defendants' claim challenges the causation element of Palar's medical malpractice case. In a medical malpractice case, a plaintiff need not establish that the medical practitioner's negligence was the "but for" cause of her injuries. *See id.* at 380. Rather, liability may be established "where expert medical testimony is presented to the effect that [the practitioner's] conduct did, with a reasonable degree of medical certainty, increase the risk that the harm sustained by plaintiff would occur." *Hamil v. Bashline*, 392 A.2d 1280, 1289 (Pa. 1978); *see also id.* at 1286 (stating that "[o]nce a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm."); *Carrozza*, 866 A.2d at 380.

Further,

> [o]nce a plaintiff has established facts from which a jury could reasonably conclude that defendant's actions were a substantial factor in bringing about the harm, the fact that some other cause occurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence.

*Hamil*, 392 A.2d at 1285 (citation, quotation marks and ellipses omitted). "A superseding cause is defined as an act of a third person or other force which, by its intervention, prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Hall*, 788 A.2d at 399 (citation omitted). Additionally, "a super [s]eding cause must be an act which is so extraordinary as not to have been reasonably

foreseeable." *Krasevic v. Goodwill Indus. of Cent. Pa., Inc.*, 764 A.2d 561, 569 (Pa. Super. 2000) (citation omitted).

At trial, Dr. Wohlwend testified that when he reviewed Palar's 2009 MRIs, he was aware that Palar had a history of back and arm pain. *See* N.T., 11/12/15, at 45. Dr. Wohlwend testified that although he looked at the entire image "in a global sense," he did not conduct a dedicated search of the lungs. *See id.* at 67–68. Additionally, Dr. Wohlwend testified that he did not comment on Palar's lungs in his report because "this is what the lungs look like" in a majority of thoracic spine MRIs, and that "[y]ou have to take with a great skepticism something that you see in the lung MRI with thoracic spine." *See id.* at 59, 71. Dr. Wohlwend also attributed some of the apparent abnormality in the lung to "artifact," which are white striations that appear on the image, and which may be caused by respiratory, cardiac, or patient motion. *See id.* at 47–49, 51–53; *see also id.* at 54 (wherein Dr. Wohlwend testified that, when a thoracic spine image presents significant artifact in the lungs, "you have to be very careful calling lung pathology.").

*5 Michael Racenstein, M.D. ("Dr. Racenstein"), Palar's standard of care expert, testified via video deposition that if any abnormality is detected on an imaging study, the reviewing radiologist should report the abnormality to the patient's clinician, or, if it is unclear whether there is an abnormality, the radiologist should request additional imaging. *See* Racenstein Deposition, 11/4/15, at 22–24; *see also* N.T., 11/10/15, at 5 (wherein the video deposition was played for the jury during trial); N.T., 11/12/15, at 12 (wherein the deposition transcripts were admitted into evidence at trial). Dr. Racenstein testified that in interpreting a thoracic spine MRI, a reviewing radiologist should focus on the spine, but must view the entire dataset. *See* Racenstein Deposition, 11/4/15, at 28–29. Dr. Racenstein reviewed images of Palar's 2009 MRIs, and testified that no artifact was present on the images, but that the image reveals an irregular nodule on the posterior right apex of the lung. *See id.* at 36, 42, 49. Dr. Racenstein opined that Dr. Wohlwend's conduct fell below the standard of care because he did not not identify the lesion or recommend additional imaging studies. *See id.* at 43–44, 51, 54, 65. Further, Dr. Racenstein opined that Dr. Khalaf also deviated from the standard of care in interpreting Palar's 2010 chest x-ray by not identifying the abnormality or recommending additional imaging studies. *See id.* at 55–56, 66.

Dr. Blum testified that when Dr. Wohlwend reviewed Palar's 2009 MRIs, Palar's cancer would have been classified as Stage IA. *See* N.T., 11/10/15, at 50. Dr. Blum testified that, at that time, Palar would have had an approximately 73% probability of five-year survival, and the tumor could have been fully resected. *See id.* at 51–52, 81. Additionally, Dr. Blum testified that in 2010, when Dr. Khalaf reviewed Palar's first chest x-ray, Palar's cancer would have been classified as Stage IB. *See id.* at 53. Dr. Blum testified that, at that time, Palar would have had an approximately 58% probability of five-year survival, and that the treatment likely would have been surgical resection, although chemotherapy may have also been an option. *See id.* at 53–54, 56.

In its Opinion, the trial court considered Dr. Blum's testimony and observed the following:

> [b]y the time [Palar] had her first x-ray in 2010, [the cancer] had advanced to stage IB, thereby reducing chances of survival by fifteen percent and introducing the possibility that chemotherapy and its attendant complications would accompany the surgical resection. By itself, ... that testimony was sufficient to establish that Dr. Wohlwend's negligence was a legal cause of [Palar's] harm and that his culpability outlived Dr. Khalaf's subsequent negligence.

Trial Court Opinion, 3/11/16, at 4 (citations to the record omitted).

Upon review, we conclude that the evidence, viewed in the light most favorable to Palar as the verdict winner, established that Dr. Wohlwend's conduct deviated from the standard of care and increased Palar's risk of harm. *See Carrozza*, 866 A.2d at 381. In fact, the jury specifically found that the conduct of both Dr. Wohlwend and Dr. Khalaf was negligent, and that each doctor's negligence was a factual cause of Palar's harm.[6] *See* N.T., 11/13/15, at 83–84 (wherein the jury foreman read the jury's verdict slip on the record). Further, the jury's equal allocation of liability between Dr. Wohlwend and Dr. Khalaf necessarily indicates that Dr. Khalaf's negligence did not divest Dr. Wohlwend of liability. Discerning no abuse of

discretion or error of law by the trial court in denying Defendants' request for judgment notwithstanding the verdict on this issue, we will not disturb the result. *See Bugosh*, 932 A.2d at 908. Accordingly, Defendants are not entitled to relief on this claim.

**\*6** Defendants' remaining issues challenge the trial court's denial of their request for a new trial, on the basis that the trial court excluded relevant evidence.[7]

> Our review of a ruling on a motion for a new trial is limited to determining whether the trial court abused its discretion or committed an error of law. We view the evidence in the light most favorable to the verdict-winner in making this determination, and we must consider whether a new trial would likely produce a different verdict. Consequently, if there is any support in the record for a trial court's decision to deny the motion, we must affirm. ... We will not reverse the trial court's refusal to grant a new trial unless the court committed a clear abuse of discretion or an error in law which controlled the outcome of the case.

*Carrozza*, 866 A.2d at 382 (internal citations omitted). Additionally,

> if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment.

*Yacoub v. Lehigh Valley Med. Assocs.*, 805 A.2d 579, 586 (Pa. Super. 2002) (citation omitted).

"It is well-settled that a trial court's rulings on evidentiary questions are controlled by the sound discretion of the trial court, and the appellate courts of this Commonwealth will not disturb those rulings unless a clear abuse of discretion is shown." *Phillips v. Gerhart*, 801 A.2d 568, 572 (Pa. Super. 2002). "An abuse of discretion occurs where the trial court reaches a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill will." *Brady*, 111 A.3d at 1161 (citation and quotation marks omitted).

In their second claim, Defendants argue that the trial court erred by precluding evidence of Palar's history of depression. Brief for Defendants at 38. Defendants claim that Palar's history of depression is relevant to her claim of non-economic damages for anxiety, mental anguish and depression. *Id.* at 38. Defendants also assert that the evidence would not be unduly prejudicial, and that by precluding Palar's history of depression, the trial court "provided the jury with a misleading and sanitized version of [Palar] and her lifestyle...." *Id.* at 39.[8]

**\*7** At trial, Defendants argued that the following portion of Palar's testimony would allow Defendants to introduce evidence of her prior depression:

Q: Can you tell us how you feel about your condition now, emotionally?

A: I'm trying to improve my attitude. Friday I was devastated, you know, working through it.

\* \* \*

Q: What [e]ffect has this cancer had on your life?

A: I'm just disturbed over the whole situation. It's devastating. I don't know.

Q: Do you have any worries?

A: Yeah. Well, about me, I know what's going to happen to me. I worry about my kids.

Q: Thinking about them, how does that make you feel, your concerns?

A: Devastating. It's stressful.

N.T., 11/10/15, at 18. During a sidebar held on the record, the trial court reviewed the testimony, determined that Palar was referring to her emotional state at that time, and sustained the objection regarding evidence of her prior diagnosis. *See id.* at 19–20.

In its Opinion, the trial court considered Defendants' claim, and set forth the following reasons for denying Defendants' request for a new trial:

> During her deposition, [ ] Palar confirmed that she had once been diagnosed with depression but had not undergone treatment for it. Many years had since elapsed, however, and there was no evidence that it was ongoing or recurring. Its remoteness thus counselled for exclusion, as it would have been unduly prejudicial for the jury to have concluded from what little she revealed in her deposition that [ ] Palar's emotional trauma stemmed from a distant bout with depression.
>
> [ ] Palar's depression, moreover, was not Dr. Wohlwend's only outlet for mitigating that impact of her ... testimony regarding the emotional side effects of living with cancer. Rather, her other health issues were extensive and, by her own admission, debilitating, and Dr. Wohlwend effectively explored them during cross-examination, thereby giving the jury plenty of reason to conclude that her more recent emotional instability was not directly attributable to her lung cancer and, by extension, his negligence in failing to detect it. It is incomprehensible, therefore, that the Court, in excluding evidence that [ ] Palar had been diagnosed with depression more than a decade earlier, encouraged an unwarranted verdict on damages.

Trial Court Opinion, 3/11/16, at 8–9.

Viewing the evidence in the light most favorable to Palar as the verdict winner, we cannot conclude (and, in fact, Defendants did not argue) that a new trial would result in a different verdict, or that Defendants were harmed by the exclusion of this evidence. *See Carrozza*, 866 A.2d at 382; *see also Yacoub*, 805 A.2d at 586. Discerning no abuse of discretion by the trial court in excluding evidence of Palar's prior diagnosis of depression, we will not disturb the trial court's determination. *See Phillips, supra*. Accordingly, Defendants are not entitled to relief on this claim.

We will consider Defendants' third and fourth claims together, as each contains arguments regarding Palar's smoking history. In their third claim, Defendants argue that the trial court erred by precluding all evidence of Palar's history of smoking. Brief for Defendants at 19. Defendants assert that such evidence is directly relevant to Palar's pre-injury health and physical condition, as well as her life expectancy.[9] *Id.* at 19, 20. Defendants claim that because Palar asserted that her life expectancy was reduced by Dr. Wohlwend's negligence, as a matter of fairness, evidence of Palar's history of smoking must also be presented, as smoking may increase the risk of mortality. *Id.* at 20. Defendants also assert that such evidence is relevant because "the jury was specifically instructed to consider Palar's health and physical condition before the injuries in fashioning its award of non-economic damages, and returned an award of $3,000,000 to compensate her for her non-economic harm." *Id.* at 22–23. Defendants contend that, "[h]ad the jury been permitted to consider [Palar's] smoking history, it undoubtedly would have returned an award in a much lower amount." *Id.* at 23. Additionally, Defendants claim that the admission of Palar's smoking history would not be unfairly prejudicial to Palar, and that the potential prejudicial effect could be mitigated with an appropriate jury instruction. *Id.* at 25–26.

*8 In their fourth claim, Defendants assert that Dr. Khalaf had the benefit of viewing the requisition forms, and that he was therefore familiar with Palar's history of smoking prior to reviewing her chest x-ray. *Id.* at 30. Defendants argue that Palar's history of smoking is also relevant to the jury's assessment of fault between Dr. Wohlwend and Dr. Khalaf because the requisition forms Dr. Khalaf received in connection with his review of the 2010, 2012 and 2013 chest x-rays noted Palar's history of smoking. *Id.* at 23. Defendants contend that the exclusion of such evidence was prejudicial to Defendants, because they "would have used the [r]equisitions to demonstrate either that Dr. Khalaf had all the information necessary to arrive at the conclusion that [Palar] suffered from lung cancer in 2010, ... or that [Hospital] was negligent by failing to provide [Dr.] Khalaf with [Palar's] complete medical history." *Id.* at 24. Defendants point to the following portion of Dr. Khalaf's testimony to argue that he "opened the door" to cross-examination regarding Palar's history of smoking:

> Q: And the reason for this chest x-ray in July of 2012 was cough or congestion; is that correct?
>
> A: Yes.
>
> Q: So that's all you knew about [ ] Palar?
>
> A: Yes.

N.T., 11/12/15, at 105; *see also* Brief for Defendants at 29–30. Defendants argue that Dr. Khalaf's affirmation that "all he knew about Palar" was that she had a cough and congestion "gave the jury a false impression about what he actually knew." Brief for Defendants at 29–30.

Defendants' argument regarding the relevance of the requisition forms to the allocation of liability between Dr. Wohlwend and Dr. Khalaf suggests that the two doctors should have been held to a different standard of care based on their relative knowledge. However, no evidence was presented at trial to support such a position. *See Freed v. Geisinger Med. Ctr.*, 971 A.2d 1202, 1206 (Pa. 2009) (stating that "[e]xpert testimony generally is required in a medical malpractice action in order to establish the proper standard of care"). Moreover, there is no evidence that Dr. Khalaf read and reviewed the requisition forms prior to interpreting Palar's chest x-ray. Even if expert testimony had established that the two doctors should be evaluated under differing standards of care, without additional evidence that Dr. Khalaf reviewed the requisition forms prior to interpreting Palar's chest x-ray, we cannot say that the verdict would necessarily have been different if the requisition forms had been admitted at trial. *See Yacoub*, 805 A.2d at 586 (stating that "[e]videntiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment.").

In its Opinion, the trial court considered Defendants' third and fourth issues, and stated the following:

> One can always speculate, of course: Maybe Dr. Wohlwend would have been more alert to the images of the lungs had he known [ ] Palar smoked[,] or maybe the jury would have found him to be less negligent than Dr. Khalaf had it known that the 2010 and 2012 requisition forms reflected her decades-long habit. Yet such speculative "maybes" do not outweigh the very real possibility that the jury, had it learned about [ ] Palar's smoking, would have focused on the degree to which she was to blame for developing cancer instead of whether Dr. Wohlwend should have noticed the cancerous lesion in her lung while resection was the only treatment that would have been necessary to guarantee her a seventy-three percent chance of survival. Any limited probative value the evidence may have had, therefore, was far outweighed by its potential to unduly prejudice [ ] Palar.

Trial Court Opinion, 3/11/16, at 2 (footnote omitted); *see also id.* at 5 (stating that "it is most probable that any reduction stemming from evidence of [ ] Palar's smoking would have been a reflection of the jury's determination that someone who smoked somehow deserved[,] and should not be compensated for [,] the miseries associated with lung cancer. That result cannot be sanctioned."). Moreover, the trial court found that

> *9 [i]t is highly unlikely ... that the jury would have reached a different conclusion on the question of liability had its members known that Dr. Khalaf had access to the information that [ ] Palar presented as a forty-year smoker. They retired to the jury room knowing that the x-ray was better adapted to detecting lung abnormalities than was the MRI, that Dr. Khalaf was specifically looking for a lung issue based on [ ] Palar's reports of a cough and congestion, and that Dr. Wohlwend was specifically tasked with looking for potential causes of back pain. They also knew that she still had a fifty-eight percent chance of survival with surgical resection alone had Dr. Khalaf detected the opacity in 2010[,] and was still a candidate for resection following chemotherapy and radiation treatments after the 2012 x-ray. They were well aware, therefore, that the statistical probability that [ ] Palar would survive her lung cancer declined precipitously between 2010 and 2013 compared to its fifteen percent reduction between 2009 and 2010. It is fanciful, then, to posit that

> the jury's ultimate allocation of fault would have changed had it also known that Dr. Khalaf, but not Dr. Wohlwend, had access to the information that [ ] Palar was a smoker. The remote chance that it would have, moreover, was again outweighed by the risk of undue prejudice to the plaintiff.

*Id.* at 4–5.

Upon review, we agree with the trial court's determination that the potential prejudice that would result from admitting evidence of Palar's smoking history significantly outweighs the limited probative value of such evidence, where the relevant issue at trial was whether Dr. Wohlwend and Dr. Khalaf were negligent in failing to diagnose Palar's cancer. Discerning no abuse of discretion, we decline to reverse the trial court's decision to preclude evidence of Palar's smoking history and the requisition forms. *See Klein v. Aronchick*, 85 A.3d 487, 498 (Pa. Super. 2014) (stating that "[t]he function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value[,] and it is not for an appellate court to usurp that function.") (citation omitted); *see also Carrozza*, 866 A.2d at 382. Therefore, Defendants are not entitled to relief on this claim.

In their fifth claim, Defendants contend that the trial court erred by permitting the introduction of hearsay evidence regarding the metastasis of Palar's cancer to her brain. Brief for Defendants at 32. Defendants claim that the trial court improperly allowed Palar to testify, over Defendants' objection and without prior notice, that her treating physician told her that her November 3, 2015 CT scan showed multiple tumors on her brain. *Id.* at 32–33. Specifically, Defendants objected to the following portion of Palar's testimony:

> Q: Okay. Now, [ ] Palar, what is your understanding of your medical situation right now?
>
> A: I have (crying) three large tumors on my brain with a lot of little ones. One is the size of a lemon, and the prognosis is grim.
>
> Q: When did you find out all [of] that information?
>
> A: Friday.

N.T., 11/10/15, at 15; *see also* Brief for Defendants at 33. Additionally, Defendants challenge the following portion of Dr. Blum's testimony:

> [Palar's Counsel]: Now, on November 3rd, just last Tuesday, [Palar] had a CT scan of her brain performed in DuBois because she had been having headaches, blurred vision, and feeling out of it. And a tumor was discovered in her brain. After that, on Friday—we don't even have the report, but we heard her testimony. Her understanding is she had an MRI that showed multiple metastasis in her brain, and she started radiation therapy yesterday in Johnstown.
>
> [Defendants' Counsel]: I have to object.
>
> The Court: Let's have a sidebar.
>
> [Defendants' Counsel]: The basis for the objection is reference to the MRI. We've never seen, even as sitting here, a report of the MRI.
>
> [Palar's Counsel]: Neither have I. She testified to what it shows.
>
> * * *
>
> [Defendants' Counsel]: The CT scan demonstrates one lesion, I'm being told, and demonstrates three lesions. She's saying it's one hundred [percent] metastasized. I have no way to appropriately cross-examine that witness without that way [*sic*].
>
> * * *
>
> [The trial court overruled Defendants' objection, and Palar's Counsel continued to question Dr. Blum.]
>
> [Palar's Counsel]: Assuming the facts I told you are true, can you tell us what's going on now with [ ] Palar?
>
> *10 [Dr. Blum]: It's clear to me recurrence of her lung cancer with metastasis to the brain. The basis of this opinion is the CT scan report. First of all, the actual history.

N.T., 11/10/16, at 59–60, 63–64 (paragraph break omitted); *see also* Brief for Defendants at 33–34. Defendants assert that they were prejudiced by the introduction of this "eleventh hour" evidence, and were subject to a "trial by ambush," because they were not given an adequate opportunity to have their experts examine

the CT scan prior to trial. Brief for Defendants at 34–35, 38. Defendants also argue that, contrary to the trial court's determination that any prejudice resulting from the hearsay testimony was eliminated by Dr. Blum's "follow-up," Dr. Blum's "double hearsay testimony" exacerbated the prejudice to the Defendants. *Id.* at 35. Moreover, Defendants aver that the trial court's reasons for denying Defendants' request for a continuance were insufficient; that the disclosure of the CT scan two weeks before trial afforded Defendants sufficient time to review it with their expert; that Dr. Wohlwend could have secured his own expert's cooperation; that the trial court's schedule would not permit rescheduling for several months; and that Palar was in a dire medical state.[10] *Id.* at 36–37.

Under the Pennsylvania Rules of Evidence, "hearsay" is defined as "a statement that the declarant does not make while testifying at the current trial or hearing[,] and a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801. "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. Additionally, hearsay within hearsay, which Defendants refer to as "double hearsay," "is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Pa.R.E. 805.

Here, Dr. Blum's testimony regarding Palar's condition at the time of trial was limited to his review of the CT scan report and the history of the case. *See* N.T., 11/10/15, at 64; *see also id.* at 65 (wherein Dr. Blum testified that without an additional MRI, and only a CT scan, he would have the same opinion because "[i]t's the right clinical setting[,] and "the timing is right."). Dr. Blum testified that Palar was suffering from lung cancer with metastasis to the brain, and characterized the disease as "unrecoverable." *See id.* at 64–66. Because Dr. Blum did not repeat Palar's statements or rely on her testimony in formulating his expert opinion, the challenged portion of Dr. Blum's testimony does not constitute inadmissible hearsay within hearsay.

*11 The trial court acknowledged that Palar's testimony related what she had been told by medical personnel. *See* Trial Court Opinion, 3/11/15, at 6. However, the admission of Palar's testimony was harmless error, as her testimony was supported by, and substantially similar to, the testimony presented by Dr. Blum. *See Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa. 2005) (stating that "an erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless."); *see also id.* (stating that "harmless error exists where ... the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence") (citation omitted).

Regarding Defendants' argument that they were subject to a "trial by ambush" as a result of the late admission of evidence regarding the November 3, 2015 CT scan, the trial court concluded that Defendants did not suffer prejudice because Defendants learned about the scan nine days before the start of their case-in-chief; "there is no indication that [Defendants] even tried to prepare a rebuttal;" and, as a radiologist opposing a plaintiff with advanced stage, non-resectable lung cancer, Dr. Wohlwend "should have appreciated the potential ramifications." *See* Trial Court Opinion, 3/11/15, at 7–8. The trial court noted that, had it granted a continuance, the trial could not have been rescheduled for several months, and whether "Palar would live that long was far from certain." *Id.* at 7. Additionally, during a sidebar discussion held on the record (during which the trial court overruled Defendants' objection to Dr. Blum's testimony, and allowed Dr. Blum to testify based on a hypothetical), *see* N.T., 11/10/15, at 60–61, 64, the trial court stated that "as long as [Palar is] alive ... we're always going to have this because she's under continuing treatment. ... And, in essence, we can never try a case if I don't let this occur." *Id.* at 60.

Upon review, we agree with the trial court's determination that the circumstances of this case necessitated the admission of testimony regarding the November 3, 2015 CT scan. Additionally, we agree that Defendants' claim of prejudice is without merit, as "there is no indication that [they] even tried to prepare a rebuttal." *See* Trial Court Opinion, 3/11/15, at 7. Viewing the evidence in the light most favorable to Palar, as verdict winner, we cannot conclude that a new trial would result in a different verdict (particularly where a new trial would reveal that Palar died as a result of her cancer), or that Defendants were prejudiced by the admission of evidence regarding the November 3, 2015 CT scan. *See Carrozza*, 866 A.2d at 382; *see also Yacoub*, 805 A.2d at 586. Discerning no abuse of discretion by the trial court in admitting this evidence, we will not disturb the trial court's determination

on appeal. *See Phillips, supra.* Accordingly, Defendants are not entitled to relief on this claim.

Judgment affirmed.

**All Citations**

Not Reported in A.3d, 2017 WL 243470

Footnotes

1   Defendants purport to appeal from the March 11, 2016 Order denying Defendants' post-trial Motions. "However, an appeal properly lies from the entry of judgment, not from the denial of post-trial motions." *Hall v. Jackson*, 788 A.2d 390, 395 n.1 (Pa. Super. 2001). Because Judgment was entered on March 23, 2016, and Defendants filed a timely Notice of Appeal, there is no jurisdictional impediment to our review.
2   Palar died on April 22, 2016, shortly after filing the instant appeal. Maria Palar, as executrix of the estate of Katherine Palar ("the Palar Estate"), was thereafter substituted as Plaintiff.
3   Palar also underwent an MRI on November 4, 2015, which revealed several metastatic brain tumors. The MRI report was not available at the time of trial, but was enclosed with Palar's post-argument submissions.
4   Dr. Khalaf and Hospital settled with Palar prior to the jury verdict, and are not parties to the instant appeal.
5   The Judgment represents Defendants' $1.5 million share of the total verdict, based on the jury's finding that Dr. Wohlwend was 50% negligent, plus an additional $46,808.88 for delay damages.
6   The jury received an instruction regarding how to consider multiple factual causes of harm. The trial court's final instructions included, in relevant part, the following charge:
    > To be a factual cause, the conduct must have been an actual real factor in causing the harm or if even the result is unusual or unexpected. A factual cause cannot be an imaginary or a fanciful factor having no connection or only an insignificant connection to the harm. To be a factual cause, the Defendants' conduct need not be the only factual cause. The fact that some other causes can occur with the negligence of the Defendant or Defendants in producing an injury does not relieve the Defendants from liability as long as his own negligence is a factual cause of the injury. ... Sometimes a person's negligent conduct combines with other people's conduct to cause harm. When a defendant's negligent conduct combines with the conduct of other persons, the [d]efendant is legally responsible if his negligent conduct was one of the factual causes of the harm. In such a case, that defendant is fully responsible for the harm suffered by the [p]laintiff regardless of the extent to which the [d]efendant's conduct contributed to the harm.
    N.T., 11/13/15, at 67–69 (paragraph break omitted).
7   Under the Pennsylvania Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence[,] and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "Irrelevant evidence is inadmissible, and relevant evidence is admissible except as otherwise provided by law." *Brady v. Urbas*, 111 A.3d 1155, 1161 (Pa. 2015) (citing Pa.R.E. 402). However, "[t]he [trial] court may exclude relevant evidence if its probative value is outweighed by a danger of ... unfair prejudice...." Pa.R.E. 403. The term "unfair prejudice," as used in this rule, "means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id., cmt.*
8   We note that Defendants' argument, which contains only a short discussion of this issue, includes citations to the record, but lacks citation to relevant legal authority. *See* Pa.R.A.P. 2119(a) (providing that the argument section of an appellate brief must include "discussion and citation of authorities as are deemed pertinent."). Nevertheless, we will address Defendants' second claim on appeal.
9   Palar's counsel withdrew the request for a life expectancy instruction and accompanying actuarial tables prior to trial. *See* N.T., 11/9/15, at 20, 22–23
10  We note that Defendants did not file a Motion for continuance in this case. Rather, Defendants filed a Motion in *limine* to preclude evidence regarding the November 3, 2015 CT scan report, which did not include an alternative request for a continuance. Nevertheless, we will consider Defendants' claim regarding the late admission of the CT scan report, as it was preserved in their Motion in *limine*. *See Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1232 (Pa. Super. 2011) (stating that "a motion in *limine* may preserve an objection for appeal without any need to renew the objection at trial").

End of Document                                                     © 2017 Thomson Reuters. No claim to original U.S. Government Works.