IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET T. HUNTER and<br>JOHN P. HUNTER, w/h | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | MEDICAL NEGLIGENCE |
| | : | |
| RICHARD P. KENNEDY, M.D.; | : | JURY TRIAL DEMANDED |
| MONROE RADIOLOGY IMAGING, | : | |
| P.C.; POCONO MEDICAL CENTER, | : | |
| PETE OBENG, M.D., FAMILY CARE | : | |
| CENTERS, INC. t/d/b/a  PMC | : | |
| PHYSICIAN ASSOCIATES and | : | |
| PMC IMMEDIATE CARE CENTER | : | |
| | : | |
| Defendants | : | NO.  3:17-CV-00007 |

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
RECONSIDERATION OF SMOKING EVIDENCE

I.  HISTORY OF CASE AND STATEMENT OF FACTS

This medical malpractice case involves a failure on May 16, 2016 of

Dr. Kennedy and Dr. Obeng to diagnose Margaret Hunter's Saunders 2A

calcaneal fracture (heel bone) that was described as comminuted,

displaced, intraarticular and impacted.

Dr. Obeng failed to provide the clinical history of a fall from a ladder.

There is no allegation or proof that Mrs. Hunter did anything to contribute to

the operative negligence of Dr. Obeng or Dr. Kennedy surrounding the

failure to diagnose the calcaneal fracture on May 16, 2016.

The Defendants seek to offer Mrs. Hunter's history of smoking to establish a risk of surgery for a calcaneal fracture, a procedure not undertaken because Dr. Smith warned Mrs. Hunter that performing surgery would be complicated by delay – not smoking.  A tortfeasor takes his/her victim as he/she finds him.

Dr. Obeng admitted that although he intended to refer Mrs. Hunter to an orthopedic surgeon on May 31, 2016, Dr. Obeng testified that he delegated that responsibility to his staff.  (See Obeng N.T. P. 128-130) Dr. Obeng did not testify that he delegated the responsibility to Mrs. Hunter. (See Obeng N.T. P. 128-130) He apparently attempted to communicate with Travelers Insurance, the workers' compensation carrier, in order to set up an orthopedic exam. (Obeng N.T. P. 128-130) There is no evidence of record that Dr. Obeng's office successfully established any referral to an orthopedic surgeon. (See Obeng N.T. 128-130) In the absence of any referral, after speaking with her employer FAHS's insurance company, Mrs. Hunter testified that she went on her own to the Emergency Room Wilson Memorial Regional Medical Center in Binghamton where she was examined by a podiatry resident. (Hunter N.T. P 111 – 114)  She did so

2

within two days of being told of the misdiagnosis. This cannot be considered comparative fault as a matter of law.

In the Emergency Room of Wilson Memorial, the resident ordered a CT scan which confirmed the comminuted impacted intraarticular fracture of the calcaneus. The podiatry resident referred Mrs. Hunter to Dr. Smith, a podiatrist. The exam was scheduled for June 8, 2016. Mrs. Hunter attended the exam as scheduled. Dr. Smith discussed surgery for the first time on June 8, 2016. The parties agree that the surgery was discussed for the first time on June 8, 2016. Because of the complications explained to Mrs. Hunter by Dr. Smith, Mrs. Hunter decided not to undergo what was described as a difficult and risky procedure. In any event, the Plaintiff's antecedent conduct prior to the malpractice cannot be considered comparative fault.

Dr. Kelly Smith testified that a 6/2/16 CT Scan showed a comminuted, displaced intraarticular subtenial fracture. (Smith, Kelly N.T.4/30/2018 P. 44 L. 16)

The Defendants, in response to motion in limine, asserted that Mrs. Hunter was comparatively at fault for conduct unrelated to Dr. Kennedy's misdiagnosis of May 16, 2016 and/or Dr. Obeng's failure to provide

3

appropriate clinical history to the radiologist or give appropriate instructions to Mrs. Hunter.  There is no expert report establishing that Mrs. Hunter disobeyed any instructions from Dr. Obeng, and/or that such disobeyance caused any comparative harm.  This is a basic prerequisite for admissibility in a medical negligence case. There is simply evidence that Mrs. Hunter had a history of smoking prior to the injury and that prior smoking might complicate treatments.  This antecedent conduct is inadmissible.

Defendant Kennedy seeks to offer the issue of smoking history on the issue of comparative fault. Plaintiff submits that this Honorable Court should exclude smoking evidence for any purpose and reconsider its prior interlocutory determinations because the decisions are in error and the Court construed Plaintiffs' argument.

Dr. Kennedy refused to answer questions on standard of care and whether he alleged that Plaintiff was comparatively negligent. See Doc. 196.  This alone should preclude Kennedy from offering any evidence of comparative fault.  This defense tactic insulated Dr. Kennedy from discovery on a critical issue and he now seeks to profit from that by offering testimony of retained experts on the issues that Dr. Kennedy was insulated from testifying.  Dr. Kennedy's counsel asserted that Mrs. Hunter's decision

4

not to undergo surgery because of the complications occasioned by the

delay should be considered comparative fault. (See Doc. 196 p. 42-43)

Plaintiff submits that it is a mitigation issue, as it is unrelated to the

operative negligence of failure to diagnose.  Further, defense expert, Dr.

Daley, acknowledged, with respect to the calcaneal fracture: "It's one of the

hardest fractures to reduce and repair regardless who does it." (Daley N.T.

P. 178 l. 11-19)  There is no dispute that this is a difficult fracture to

address and more importantly, there is no dispute that Mrs. Hunter heard

Dr. Smith state this.

## II.  STATEMENT OF THE QUESTION PRESENTED

Whether this Honorable Court should reconsider the issue of
admissibility of smoking as it relates to comparative fault and life
expectancy?

 Suggested Answer:   Yes.

## III. ARGUMENT

## LEGAL STANDARD

The Plaintiff respectfully request hat the Honorable Court reconsider the

issue of admissibility of smoking as it relates to comparative fault and life

expectancy or window of opportunity.  This Court exercises jurisdiction

based on 28 USC §1332 (1982)(diversity of citizenship).

"A court may reconsider an interlocutory order "whenever 'consonant with justice to do so.'" <u>Qazizadeh v. Pinnacle Health Sys.</u> Civ. No. 14 cv 2037, 2016 WL 5787352 (M.D. Pa. Oct. 4, 2016) (quoting <u>St. Mary's Area Water Auth. V. St. Paul Fire & Marine Ins. Co.</u> 472 F. Supp. 2d 630 (M.D. Pa 2008( then quoting <u>United States v. Jerry,</u> 487 F2d 600, 605 (3d. Cir. 1973)) Motions for reconsideration may also be appropriate in instances "where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." <u>Reaves v. Pa. State Police,</u> Civ. No. 09-cv-2549, 2014 WL 486741 (M.D. Pa. Feb. 6, 2014)(quoting <u>Rohrbach v. AT&T Nassau Metals Corp.,</u> 902 F. Supp. 523, 527 (M.D. Pa. 1995)). Typically, a party seeking reconsideration must demonstrate one of the following bases for amending or altering a judgement: 1) an intervening change in the controlling law; 2) the availability of new evidence that was not available when the court granted the motion; 3) the need to correct a clear error of law or fact or to prevent manifest injustice. See <u>Max's Seaford Café v. Quineros,</u> 176 F. 3d 669, 677(3d Cir. 1999)"
<u>United States of America v. Rojas,</u> Crim No. 1:15 CR 00169 (M.D. Pa. Apr. 12, 2018, Rambo, J.)

A district court "has the inherent power to reconsider prior interlocutory orders." <u>State Nat. Ins. Co. v. County of Camden,</u> 824 F. 3d 399, 406 (3d. Cir. 2016); <u>Byrd et al. v. Aarons, Inc.</u> USDC W.D. Pa. Civ No. 11-101, March 7, 2018 Bisson, J.

Federal Rule of Civil Procedure 54(b) provides that such an order "may be revised at any time before an entry of a judgement adjudicating all the claim s and all the parties rights and liabilities.

6

There are three intersection legal principles which come into play which demonstrate that smoking should not be allowed.  1) the 'eggshell skull plaintiff rule", 2) the rule that plaintiff's antecedent conduct which either causes occasion for medical care or causes an underlying condition for which treatment is rendered, does not constitute comparative fault, or provide evidence of diminution of liability.

Further, Plaintiff's post negligence decision not to undergo surgery because of Dr. Smith's explanation of difficulty subsequent to Defendants' negligence, does not constitute comparative fault but rather is evaluated under a mitigation standard – such as the Plaintiff's decision not to pursue surgery given the difficulties resulting from delay in diagnosis.  Bartunek v. Koch, 404 Pa. 1, 170 A.2d 563, (1961); James v. Ferguson, 401 PA. 92, 162 A. 3d 690, 694 (1960);  Kehoe v. Travelers Co., 187 Pa. 474 (1898).

In this case, the Defendants' expert witness, Dr. Daley, established the difficulty of reducing a calcaneal fracture even without considering the issues of delay raised by Dr. Smith (Smith N.T. P. 6 L. 11-12) with the Plaintiff. (Daley N.T. P. 178 L. 9) (It's one of the hardest fractures to reduce and repair regardless of who does it.)  There is no dispute over this difficulty.

7

Finally, the issue of undue prejudice mandates that the issue of smoking be excluded.  Fed Rule Evid. 403, even if minimally relevant which is disputed.

Neither Dr. Wapner nor Dr. Daley did not opine that any smoking the Plaintiff did in the past caused the Plaintiff's swelling on June 8, 2016.  Dr. Smith did not testify that any swelling in Mrs. Hunter's leg was caused by smoking.  Dr. Smith merely raised the possibility that it possibly could. There is no legally sufficient evidence of causation. Pascal v. Carter, 436 Pa. Super 40, 647 A. 2d 231 (1994)  Further, the fact that Mrs. Hunter had antecedent smoking history is irrelevant.  Richardson v. Labuz, 81 PA. Cmwlth 436, 474 A. 2d 1181 (1984) See also Macosky v. Udoshi, 2019 Pa. Super. Unpub. LEXIS 2756, 220 A.3d 667; Palar v. Wohlwend, 2017 WL 423470 (Pa. Super 2017) allow of appeal denied Palar v. Wohlwend, (Pa. 164 WAL 2017 10/2/17);

The eggshell plaintiff rule comes into play when the plaintiff establishes that defendant is liable for wrongful conduct and that conduct is caused at least some injury to plaintiff.  At that point, the rule imposes liability for the full extent of those injuries not merely those that were foreseeable to the defendant. Boushell v. J. H. Beers, Inc., 215 Pa. Super. 439, 258 A.2d 682,

1969 Pa. Super. LEXIS 1139; <u>Majors v. Brodhead Hotel,</u> 205 A.2d 873, 416
Pa. 265, 1965 Pa. LEXIS 672; <u>Collins v. Cement Express, Inc</u>., 447 A.2d
987, 301 Pa. Super. 319, 1982 Pa. Super. LEXIS 4536.  See
<u>Subcommittee Note</u> to Pennsylvania Standard Jury Instructions §7.90 (Civ
4th)

    Any condition resulting from the Plaintiff's antecedent conduct is simply
a concurring cause.  Absent an instruction violation, which has not been
proven, at best the resulting <u>condition,</u> not the <u>conduct,</u> may be admissible
to explain the ultimate result.  The conduct is irrelevant as comparative fault
and the conduct excludable.  <u>Richardson v. Labuz,</u> 81 PA. Cmwlth 436,
474 A. 2d 1181 (1984) (Court rejected Plaintiff's conduct on causation of
the injury defense.)

    It is axiomatic that because "a tortfeasor must take the victim as he finds
him, the tortfeasor is liable for the full extent of the victim's injuries.  Thus, a
tortfeasor remains responsible of the victim's injuries, even if the victim's
particular sensibility resulted in more harm than the tortfeasor could have
foreseen." <u>Lebesco v. SEPTA</u>, 251 Pa. Super 415, 380 A.2d 848, n. 3
(1978) (citing <u>Tabor v. Miller</u>, 389 F. 2d (3d Cir.1968) cert. den. 391 US
915(1968); <u>Walsh v. Brody</u>, 220 Pa. Super 293, 286 A. 2d 666 (1971); <u>W.</u>

9

Prosser, Torts, §262 (41Ed. 1970).  The tortfeasor is responsible for the consequences of his/her injury.  Walters v. UPMC, 187 A.3d 314 (Pa. 2018).  See also Thompson v. Fox, 326 PA. 209.  This remains the case if the Plaintiff's drinking or smoking caused the reasons for medical treatment but resulted in the misdiagnosis.  See Richardson v. Labuz, 81 PA. Cmwlth 436, 474 A. 2d 1181 (1984); Macosky v. Udoshi, 2019 Pa. Super. Unpub. LEXIS 2756, 220 A.3d 667; Palar v. Wohlwend, 2017 WL 423470 (Pa. Super 2017) allow of appeal denied Palar v. Wohlwend, (Pa. 164 WAL 2017 10/2/17); Sutch v. Roxborough Memorial Hosp., 2013 WL 11250979 (Pa.Super. 2013),

   The Defendants have not offered a proper prima facie case, tied together with expert report establishing cause in fact, evidence of smoking is relevant on the issue of swelling. It is not relevant on comparative fault for the reasons stated in the Motion. There is no proof that the Plaintiff was ever advised by anyone that smoking might affect healing or swelling of a fracture at any time that is relevant in this case.  Absent such proof, the evidence is clearly irrelevant and highly prejudicial.  At best it creates an antecedent conditino that the physician must consider in treatment. Richardson v. Labuz, supra., Palar, supra., Macosky, supra. Any limited

relevance for any issue, including life expectancy, is substantially

outweighed for the reasons set forth in the Plaintiffs' Motion for

Reconsideration which is incorporated herein by reference as if fully set

forth at length.

IV. CONCLUSION

ACCORDINGLY, evidence of smoking should be excluded at trial for

any purpose a it is either not legally relevant or irrelevant for the proffered

purposes.  Fed. Rule Evid. 401-403.


Respectfully submitted,

FOLEY LAW FIRM

By:  Michael J. Foley
        Michael J. Foley, Esquire

11